UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATIE MILLIO, IRENE JOHNSON JANINE HELLER and TOMAYITA STEVENSON,<br>Plaintiffs,<br><br>v.<br><br>WHITMAN EDUCATION GROUP, INC. CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,<br>Defendants. | DOCKET NO.<br>04-30130-MAP<br><br>COMPLAINT<br>and<br>DEMAND FOR JURY<br><br>FILING FEE PAID:<br>RECEIPT # 30566 8<br>AMOUNT $ 150.00<br>BY DPTY CLK MGL<br>DATE 7/9/04 |

## INTRODUCTION

1.      Plaintiffs worked at Ultrasound Diagnostic School, in Springfield, Massachusetts, a school which purports to train its students for a career in the medical field including training in such fields as medical assistant training. Plaintiffs observed Defendants' illegal policies and practices aimed at enrolling unqualified students for profit, and then its failure to adequately train them for their roles as a medical professionals. During the course of their employment, Plaintiffs were also subjected to an ongoing campaign of gender and sexual harassment by their supervisor, Mr. Gianelli. Plaintiffs also suffered harm from a number of serious wage and hour violations whereby Defendants' practices and policies violated state and federal laws.

2.      Plaintiffs bring this action for equitable and legal relief against Defendants for: violations of the state and federal anti-discrimination laws by creating and fostering a

- 1 -

hostile work environment based on sex and gender, wrongful treatment and constructive discharge in violation of Massachusetts laws and public policy, and for compensatory and treble damages under the Massachusetts laws prohibiting untimely and non-payment of wages, G.L. c. 149 § 148, and under the Fair Labor Standards Act ("FLSA").

## PARTIES

3. Plaintiff Katie Milillo is a woman and a United States citizen residing in Feeding Hills, Massachusetts.

4. Plaintiff Irene Johnson is a woman and a United States citizen residing in Palmer, Massachusetts.

5. Plaintiff Janine Heller is a woman and a United States citizen residing in Indian Orchard, Massachusetts.

6. Plaintiff Tomayita Stevenson is a woman and a United States citizen residing in Springfield, Massachusetts.

7. At all times relevant to this complaint, Defendant Ultrasound Diagnostic School ("UDS") was a for profit school with a place of business located at 365 Cadwell Street, Springfield, Massachusetts.

8. At times relevant to this complaint, Defendant UDS was a "person" and "employer" within the meaning of M.G.L. c. 151B, § 1.

9. At times relevant to this complaint, Defendant UDS was an "employer" as defined in G.L. c. 149, §150.

10. At times relevant to this complaint, Defendant UDS was a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

11. At times relevant to this complaint, Defendant UDS was engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

12. At times relevant to this Complaint, UDS was an employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

13. At times relevant to this complaint, Defendant Whitman Education Group ("Whitman") ran a for profit school with a place of business located at 365 Cadwell Street, Springfield, MA.

14. At times relevant to this complaint, Defendant Whitman was a "person" and "employer" within the meaning of M.G.L. c. 151B, § 1.

15. At times relevant to this complaint, Defendant Whitman was an "employer" as defined in G.L. c. 149, §150.

16. At times relevant to this complaint, Defendant Whitman was a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

17. At times relevant to this complaint, Defendant Whitman was engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

18. At times relevant to this Complaint, Whitman was an employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

19. At times relevant to this complaint, Defendant Career Education Corporation ("CEC") ran a for profit school with a place of business located at 365 Cadwell Street, Springfield, MA.

20. At times relevant to this complaint, Defendant CEC was a "person" and "employer" within the meaning of M.G.L. c. 151B, § 1.

21. At times relevant to this complaint, Defendant CEC was an "employer" as defined in G.L. c. 149, §150.

22. At times relevant to this complaint, Defendant CEC was a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

23. At times relevant to this complaint, Defendant CEC was engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

24. At times relevant to this Complaint, CEC was an employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

25. At times relevant to this complaint, Defendant Gianelli was the President and Executive Director of UDS, Springfield and was an employer within the meaning of M.G.L. c. 151B, § 1.

26. At times relevant to this complaint, Defendant Gianelli was a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

## JURISDICTION AND VENUE

27. This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Fair Labor Standards Act, 29 U.S.C. § 203 as well as 28 U.S.C. § 1331, 1332 and 28 U.S.C. §§ 2201 and 2202. Supplemental jurisdiction also lies pursuant to 28 U.S.C. § 1367.

28. All conditions precedent have been complied with:

   a. A charge alleging discrimination by the defendant on the basis of gender discrimination was timely filed at the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory actions alleged in the charge.

   b. Plaintiffs received Notices of their Right to Sue from the EEOC.

   c. This complaint has been filed within 90 days of receipt of the Notices of Right to Sue.

   d. Plaintiffs received authorizations from the Commonwealth of Massachusetts Attorney General ("AG") to pursue a private right of action regarding their G.L. c. 149 § 148 claims.

29. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 630 insofar as all the discriminatory employment practices alleged in this complaint were committed within the County of Hampden in the Commonwealth of Massachusetts, the defendants conduct business and have substantial business contacts in the Commonwealth of Massachusetts.

## FACTS

30. Plaintiff Katie Milillo began her full time employment at UDS as the Medical Assisting Program Director, classified by Defendants as "exempt" for FLSA purposes, on or around January 2002.

31. Plaintiff Irene Johnson began her full time employment at UDS as an Instructor, classified by Defendants as "exempt" for FLSA purposes, in or around December 1999.

32. Plaintiff Janine Heller began her full time employment at UDS as the Business Office Manager, classified by Defendants as "exempt" for FLSA purposes, in or around July 2000.

33. Plaintiff Tomayita Stevenson began her full time employment at UDS in October 2001, as a lab assistant and was promoted to a Career Services Advisor classified by Defendants as "exempt" for FLSA purposes, in or around May 2002.

34. During the course of Plaintiffs' employment, they were subjected to an ongoing campaign of gender and sexual harassment by Defendant Gianelli, the corporate defendants' local President, Executive Director and Plaintiffs' supervisor.

35. Mr. Gianelli would repeatedly grab at his crotch in Plaintiffs' presence.

36. Mr. Gianelli would regularly and on an ongoing basis make offensive sexual comments, use offensive sexual and gender demeaning language toward Plaintiffs and other women, and would regularly circulate sexually suggestive e-mails.

37. Mr. Gianelli also made comments about finding students physically attractive, which offended Plaintiffs.

38. Several Plaintiffs complained first to Whitman and then to CEC corporate offices about the offensive incidents.

39. No one from the corporate offices addressed the situation and the offensive comments and conduct by Mr. Gianelli continued.

40. As a result of Gianelli's behavior, which went unremediated by the corporate defendants, the environment at UDS was a hostile environment based on gender and sex.

41. Gianelli and other members of management were aware of, endorsed and ratified this and other illegal and wrongful behavior at Defendants' school in Springfield.

42. Gianelli and other members of management knew, or should have known that, at least one member of the school's management regularly falsified potential students' high school equivalency documentation with the goal of enrolling a greater number of students and thereby increasing the amount of tuition to the school.

43. Gianelli and other members of management knew or should have known that management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses.

44. As a result of these actions at UDS in Springfield, which are in violation of public policy, many unqualified or sub-par students entered the medical profession, some of whom go on to work with young children or elderly patients, and are unequipped to perform even the most basic tasks, like taking a blood pressure reading.

45. Plaintiffs who were aware of these violations of law and public policy told Gianelli and other members of management that they intended to and did in fact notify the corporate office and the Department of Education.

46. When Gianelli and other members of UDS Springfield management were confronted by Plaintiffs with these violations of law and public policy, Mr. Gianelli and other members of management ignored or endorsed the behavior and threatened retaliation.

47. Throughout their tenure with Defendants, Plaintiffs were required to follow policies, procedures, scripts, and manuals set forth by Defendants in the performance of their duties with Defendants.

48. Plaintiffs did not author or prepare these policies, procedures, manuals, scripts, or other guidelines, nor set the business policy for Defendants, nor plan the long or short-term business objectives of Defendants.

49. Plaintiffs each had a job which was substantially non-physical and which did not require an advanced educational degree such as those anticipated under the FLSA exempt status.

50. Despite having an "exempt" status according to Defendants, Plaintiffs had partial days off from work deducted from their pay.

51. Several Plaintiffs were routinely required to work well in excess of 40 hours each week.

52. Those Plaintiffs did not receive overtime compensation for hours worked in excess of 40 hours each week in the manner and form required by 29 U.S.C. § 207(a)(1).

53. If Defendants had properly classified Plaintiffs as "nonexempt" employees, Defendants would have been required to compensate those Plaintiffs' overtime wages in addition to their salaried compensation.

54. Defendants' failure to properly characterize Plaintiffs under the FLSA was improper, willful and enabled Defendants to save money at the expense of Plaintiffs in violation of 29 U.S.C. §207(a)(1).

55. Gianelli also promised Plaintiffs and the other employees at UDS, Springfield a bonus of 5-10% of their yearly income based on their achievements in the year 2002.

56. When Plaintiffs and the other employees received their bonuses for 2002, none received the promised amount, and some received well under 1% of their yearly income.

57. Some of the Plaintiffs were told at the time they were denied their promised bonus that they are not exempt, management level employees.

58. Despite the threatened retribution, at various times Plaintiffs complained to Whitman and CEC corporate offices and to a number of public agencies including the DOE, AG, MCAD and EEOC about the wrongdoing and illegalities in the workplace set forth above.

FIRST CLAIM FOR RELIEF:
AS TO ALL PLAINTIFFS
AS TO ALL DEFENDANTS
DISCRIMINATION BASED ON SEX
IN VIOLATION OF
M.G.L. c. 151B, §§ 4(1) and (16A)

59. Plaintiffs repeat the allegations set forth in paragraphs 1 through 58 above, and incorporate those allegations as if fully set forth herein.

60. The actions and omissions of Defendants constitute and create a hostile work environment and unlawful discrimination, including discriminatory termination, constructive or otherwise against Plaintiffs based on their sex and gender in violation of M.G.L. c. 151B, §§ 4(1) and (16)A.

61. The discriminatory actions and omissions of Defendants have caused, continue to cause and will cause Plaintiffs to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

SECOND CLAIM FOR RELIEF:
AS TO ALL PLAINTIFFS
AS TO ALL DEFENDANTS
DISCRIMINATION BASED ON SEX
IN VIOLATION OF
42 U.S.C. § 2000e-2(a)(1)

62. Plaintiffs repeat the allegations set forth in paragraphs 1 through 61 above, and incorporate those allegations as if fully set forth herein.

63. The actions and omissions of Defendants constitute and create a hostile work environment and unlawful discrimination, including discriminatory termination,

constructive or otherwise against Plaintiffs based on their sex and gender in violation of Title VII of the 1964 Civil Rights Act, as codified at 42 U.S.C. § 2000e-2(a)(1)

64. The discriminatory actions and omissions of Defendants have caused, continue to cause and will cause Plaintiffs to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, emotional distress, the loss of enjoyment of life, and other nonpecuniary losses.

THIRD CLAIM FOR RELIEF:
AS TO ALL PLAINTIFFS
AS TO ALL DEFENDANTS
VIOLATION OF M.G.L. c. 149

65. The Plaintiffs repeat the allegations set forth in paragraphs 1 through 64 above, and incorporate those allegations as if fully set forth herein.

66. The Plaintiffs worked for the Defendants during the year 2002 and Defendants promised each of them a bonus of either 5- or 10% of their yearly income based on their achievements in the year 2002.

67. Despite each of the Plaintiffs demand of each of the Defendants for payment, the Defendants have failed to date to pay the Plaintiffs the earned, guaranteed and promised bonus in violation of the M.G.L. c. 149 s. 148, 150.

FOURTH CLAIM FOR RELIEF:
AS TO ALL PLAINTIFFS
AS TO ALL DEFENDANTS
VIOLATION OF 29 U.S.C. § 207(a)(1)

68. Plaintiffs repeat the allegations set forth in paragraphs 1 through 67 above, and incorporate those allegations as if fully set forth herein.

69. As set forth above, Plaintiffs and the work performed by them was neither administrative, executive, professional, nor supervisory in nature. Accordingly, The Plaintiffs are entitled to overtime wages under the FLSA.

70. In addition to their salary income, Plaintiffs were entitled to receive additional pay under a profit sharing type of bonus program based upon the overall performance of UDS, Springfield. The additional pay referenced in the previous sentence is based upon Plaintiffs' yearly income which, if Defendants had classified Plaintiffs as non-exempt employees, Plaintiffs would be entitled to additional pay because their yearly income, which would be inclusive of overtime pay, would be significantly higher.

71. The failure of defendants to pay Plaintiffs overtime violates of 29 U.S.C. § 207(a)(1). Accordingly, Defendants owe Plaintiffs unpaid overtime wages, and additional bonus pay based upon their yearly income recalculated to include overtime pay.

72. Defendants failure to pay Plaintiffs overtime compensation, consistent with the provisions of the FLSA, was neither reasonable nor in good faith and Plaintiffs are thus entitled to an equal amount of overtime compensation as liquidated damages.

### FOURTH CLAIM FOR RELIEF:
### AS TO PLAINTIFFS MILILLO and JOHNSON
### AS TO ALL DEFENDANTS
### WRONGFUL CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY

73. Plaintiffs Milillo and Johnson repeat the allegations set forth in paragraphs 1 through 72 above, and incorporate those allegations as if fully set forth herein.

74. Plaintiffs Milillo and Johnson reported illegalities and unsafe conditions in the UDS workplace to corporate and various public agencies.

75. Plaintiffs Milillo and Johnson refused to condone, adopt or adhere to the illegalities and unsafe conditions in the UDS workplace and, as a result were intimidated, and treated in a harsh, and retaliatory way that no reasonable person could have tolerated and had no choice but to leave the UDS workplace.

76. As a consequence of Defendants' actions, Plaintiffs Milillo and Johnson have suffered and continue to suffer damages, including but not limited to: loss of income, loss of employment benefits, loss of professional opportunities, loss of personal and professional reputation, loss of community standing, other financial losses, and emotional and mental distress.

## REQUEST FOR JURY TRIAL

PURSUANT TO FEDERAL RULE OF PROCEDURE 38(b) THE PLAINTIFFS SEEK A TRIAL BY JURY ON ALL QUESTIONS OF FACT AND ALL CLAIMS SO TRIABLE.

Dated: July 9, 2004

PLAINTIFFS KATIE MILLIO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON
By:

Their attorneys
Suzanne Garrow BBO# 636548
Joel Feldman BBO# 552963
Heisler, Feldman & McCormick, PC
1145 Main Street, Ste. 508
Springfield, MA 01103
Phone (413) 788-7988