UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN SECTION

| | |
|---|---|
| KATIE MILLIO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON,<br><br>*Plaintiffs,*<br><br>vs.<br><br>WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,<br><br>*Defendants.* | CASE NUMBER: 04-30130-MAP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
WHITMAN EDUCATION GROUP, INC., CAREER
EDUCATION CORPORATION, and ULTRASOUND
DIAGNOSTIC SCHOOL'S MOTION TO DISMISS
<u>WITH PREJUDICE COUNT FIVE OF THE COMPLAINT</u>**

I. **INTRODUCTION**

Defendants Whitman Education Group, Inc., Career Education Corporation, and Ultrasound Diagnostic School ("Defendants") submit this Memorandum in Support of their Motion to Dismiss with Prejudice Count V of the Complaint. Pursuant to Fed. R. Civ. P. 12(b)(6), Count V must be dismissed for failure to state a claim upon which relief can be granted. In Count V, Plaintiffs Katie Milillo (incorrectly named "Millio" in the caption of the Complaint) and Irene Johnson allege that Defendants and individual defendant Louis Gianelli constructively discharged them in violation of public policy after they complained about Ultrasound Diagnostic School's alleged admission and

grading policies. As discussed in detail below, the Plaintiffs have failed to identify a single law or regulation governing a private school's admission and grading policies. Nor have Plaintiffs articulated a non-statutory public policy violated by the alleged conduct. As such, Plaintiffs Milillo and Johnson have failed to state a claim. For these reasons, Count V must be dismissed with prejudice.

## II.     BACKGROUND

This litigation arises from the employment of Plaintiffs Katie Milillo, Irene Johnson, Janine Heller and Tomayita Stevenson with Ultrasound Diagnostic School ("UDS"). They held such positions as Medical Assisting Program Director, Instructor, Business Office Manager, and Career Services Advisor. (Compl. ¶¶ 30-33). Defendant Louis Gianelli was the Executive Director of UDS. (Id. ¶ 34). Initially, UDS was a sub-corporation of Whitman Education Group, Inc. and was ultimately purchased by Career Education Corporation.

On July 9, 2004, Plaintiffs filed a five-count Complaint in which they purported to assert claims for sexual harassment under the Massachusetts General Law (Count I), and under Title VII of the Civil Rights Act of 1964 (Count II), violation of the wage and hour provisions of the Massachusetts General Law (Count III), and of the Fair Labor Standards Act ("FLSA") (Count IV), and wrongful constructive discharge in violation of public policy (Count V).[1]

---

[1]   The five-count Complaint mistakenly labels both the fourth and the fifth causes of action as "Fourth Claim for Relief." For ease of reference, this Memorandum refers to the second listed "fourth claim" as the fifth count. Additionally, it is unclear which Plaintiffs are asserting Count Five. The Complaint's fifth count confusingly states both "As to Plaintiffs Milillo and Johnson" and "As to All Defendants." While the individual allegations listed under the fifth count refer only to Plaintiffs Milillo and Johnson, this Motion is intended to cover all claims by any and all Plaintiffs for wrongful constructive discharge in violation of public policy.

2

In Count V, two of the Plaintiffs, Milillo and Johnson, allege that they were constructively discharged in violation of public policy. (Id. ¶¶ 73-76). In particular, they allege that they were constructive discharged because they "reported illegalities and unsafe conditions in the UDS workplace to corporate and various public agencies." (Id. ¶ 74). They allege that Defendants engaged in two types of activities that allegedly violated public policy: (1) "Gianelli and other members of management knew, or should have known, that at least one member of the school's management regularly falsified potential students' high school equivalency documentation with the goal of enrolling a greater number of students and thereby increasing the amount of tuition to the school" (Id. ¶ 42); and (2) "Gianelli and other members of management knew or should have known that management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses." (Id. ¶ 43). Plaintiffs allege that they notified Mr. Gianelli, other members of management, the corporate office, and the Department of Education of these two types of activities. (Id. ¶ 45). Plaintiffs further claim that because of Defendants' actions, "many unqualified or sub-par students enter the medical profession, some of whom go on to work with young children or elderly patients, and are unequipped to perform even the most basic tasks, like taking a blood pressure reading." (Id. ¶ 44). As a result of reporting their concerns about the schools' grading and admission practices, Plaintiffs allege that they were "intimidated, and treated in a harsh and retaliatory way that no reasonable person could have tolerated and had no choice but to leave the UDS workplace." (Id. ¶ 75).

Unfortunately for Plaintiffs, their allegations fail to state a claim upon which relief can be granted.

### III. ARGUMENT

#### A. Standard of Review

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). This standard does not, however, preclude dismissal of Plaintiffs' claim. Rather, if it appears from the face of the complaint that the plaintiffs can prove no set of facts that would entitle him to relief, the court should dismiss the plaintiffs' claims. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

"In taking the plaintiff's allegation as true, the Court may eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Carvalho v. Town of Westport, 140 F. Supp. 2d 95, 97 (D. Mass. 2001) (internal punctuation and citation omitted). Moreover, a plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

#### B. Count V Must Be Dismissed Because Plaintiffs Have Failed To State A Claim For Wrongful Constructive Discharge In Violation Of Public Policy

At-will employees, like Plaintiffs, may be terminated "at any time for any reason or no reason at all." Upton v. JWP Businessland, 425 Mass. 756, 757 (1997). A narrow exception to this rule is that an at-will employee may not be terminated for "a reason that violates a clearly established public policy." Id. Critically, the public policy at issue must be "well-defined" and "important." Flynn v. City of Boston, 59 Mass. App. Ct.

4

490, 493 (2003). Whether there is a public policy, sufficiently defined, that precludes the termination of employees in violation of that policy is a question of law committed to the court. Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 474 (1992).

"Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Walter E. Fernald State Sch., 404 Mass. 145, 149-150 (1989). The Massachusetts Supreme Judicial Court ("SJC") "consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would convert the general rule into a rule that requires just cause to terminate an at-will employee." King v. Driscoll, 418 Mass. 576, 582 (1994) (internal quotation omitted). For instance, "the internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause." Id. at 583.

In Count V, Plaintiffs purport to state a claim for wrongful constructive discharge in violation of public policy. Specifically, Plaintiffs allege that they complained internally and to the Department of Education about the following alleged violations of law and "public policy": (1) school management falsified potential students' high school equivalency documentation (Compl. ¶ 42); and (2) school management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass courses. (Id. ¶ 43). Plaintiffs further allege that because of this conduct some students were not prepared to

5

perform such tasks as a blood pressure reading.[2] None of these allegations concern complaints regarding a "well-defined" or "important" public policy, as required by common law to state a claim.

Indeed, Plaintiffs have not identified any law or public policies allegedly violated, nor asserted that they impose criminal penalties. Nor have Plaintiffs identified the person(s) to whom they allegedly reported their concerns about the school's internal grading and admission practices. Absent this required detail, the wrongful termination claims cannot withstand Defendants' motion to dismiss. See, e.g., Wajda v. R.J. Reynolds Tobacco Co., 103 F. Supp. 2d 29, 32 (D. Mass. 2000) (when ruling on a motion to dismiss, "unsupported conclusions do not qualify as 'well-pleaded' facts and are of no assistance to a plaintiff in defeating a motion to dismiss."); Boudreault v. Chesapeake Biological Labs., 14 Mass. L. Rep. 235 (Mass. Super. Ct. Jan. 11, 2002) (dismissing wrongful discharge in violation of public policy claim where the plaintiff failed to articulate what policy he believed the defendant violated).

Plaintiffs' generalized complaints about amorphous alleged public safety concerns are insufficient to state a claim. Wright, 412 Mass. at 474-75 (discharge of director of nursing who reported on issues detrimental to health care is not a violation of well

---

[2] To the extent Plaintiffs claim they were constructively discharged because they voiced concerns about sexual harassment or unpaid wages, those claims fail as a matter of law. Claims of retaliation for complaining of sexual harassment and unpaid wages are covered by M.G.L. c. 151B (or Title VII) and M.G.L. c. 149 (or the FLSA) respectively. An at-will employee may bring a wrongful constructive discharge claim based on public policy "unless no common-law rule is needed because the Legislature has also prescribed a statutory remedy." Mello v. Stop & Shop Cos., Inc., 402 Mass. 555, 557 (1988). When a claim is covered by statute, the Plaintiffs may not seek identical relief through the common law claim of wrongful discharge in violation of public policy. Lohnes v. Darwin Partners, Inc., 15 Mass. L. Rptr. 157 (July 23, 2002) (M.G.L. c. 149 precludes common law claim of wrongful discharge in violation of public policy where "public policy" violated is the non-payment of wages); see also Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 512-14 (1985) (no wrongful discharge in violation of public policy claim in cases where comprehensive legislative remedy is available to the plaintiff).

established public policy); See <u>Dann v. WearGuard Corp.</u>, 1996 Mass. Super. LEXIS 4, at * 11-12 (Nov. 7, 1996) (proper administration of health care policies in day care centers to exclude children with infectious diseases does not rise to level of clearly established public policy).

Similarly, Plaintiffs' allegations concerning problems with UDS's admission and grading procedures concern the internal administration of UDS, and do not concern public policy. "[T]he internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception." <u>King</u>, 418 Mass. at 583. Even if Plaintiffs' complaints were motivated by genuine concern for the school's functioning, no public policy is implicated. See <u>Smith-Pfeffer</u>, 404 Mass. at 148-51 (no violation of well-established public policy by school for mentally retarded where employee was discharged for opposing restructuring plan after employee claimed restructuring would compromise service delivery to the residents and constitute a threat to the well being of the school and its residents.). "While the act performed by the plaintiff[s] [by complaining about such conduct] might be viewed by some as appropriate and socially desirable, it [falls] far short of the level of importance necessary to warrant a conclusion that her discharge violates public policy." <u>Mistishen v. Falcone Piano Co.</u>, 36 Mass. App. Ct. 243, 246 (1994). Accordingly, Count V fails to state a claim and must be dismissed.

### III. **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant its motion to dismiss Plaintiffs' fifth cause of action for wrongful constructive discharge.

<div style="margin-left: 50%;">

Respectfully submitted,
Attorneys for Defendants
WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, and ULTRASOUND DIAGNOSTIC SCHOOL

 /s/ Jeffrey E. Poindexter
Jeffrey E. Poindexter, Esquire
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Tel.  (413) 272-6232
Fax. (413) 272-6803


Edward S. Mazurek, Esquire
*pro hac vice application pending*
Jamie M. Kohen, Esquire
*pro hac vice application pending*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. (215) 963-5019/5472
Fax. (215) 963-5001

</div>

Dated:  October 22, 2004.