## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **KATIE MILILLO, IRENE JOHNSON JANINE HELLER and TOMAYITA STEVENSON,** <br> **Plaintiffs,** <br><br> **v.** <br><br> **WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANNELLI,** <br> **Defendants.** | **CIVIL ACTION NO. 04-30130-MAP** |

### DEFENDANT LOUIS GIANNELLI'S
### MEMORANDUM IN SUPPORT OF HIS MOTION
### TO DISMISS COUNTS II AND V OF THE PLAINTIFFS' COMPLAINT

Defendant Louis Giannelli submits this Memorandum in Support of his Motion to Dismiss with Prejudice Counts II and V of the Plaintiffs' Complaint. In Count II, Plaintiffs charge Mr. Giannelli individually with sexual harassment under Title VII. As a matter of law, Title VII provides no such claim against individual employees. In Count V, Plaintiff Katie Milillo and Irene Johnson allege that Mr. Giannelli constructively discharged them in violation of public policy after they complained about Ultrasound Diagnostic School's ("UDS") alleged admission and grading policies. As discussed in detail below, the Plaintiffs have failed to identify a single law or regulation governing a private school's admission and grading policies. Nor have the Plaintiffs articulated a non-statutory public policy violated by the alleged conduct. As such, Plaintiffs Milillo and Johnson have failed to state a claim. For these reasons, Count II and Count V must be dismissed with prejudice.

## i. Factual Background[1]

1.    The Parties.

Plaintiffs worked at Ultrasound Diagnostic School ("UDS") and held such positions as Medical Assisting Program Director, Instructor, Business Office Manager, and Career Services Advisor.   Mr. Giannelli was the Executive Director of UDS.   Initially, UDS was a sub-corporation of Whitman Education Group, Inc. ("Whitman") and was ultimately purchased by Career Education Corporation ("CEC").

2.    The Counts at Issue.

The Plaintiffs assert, among other claims, that Mr. Giannelli should be individually liable for sexual harassment under Title VII.  (*Id.* ¶¶ 62-64)  Two of the Plaintiffs, Ms. Milillo and Ms. Johnson, allege that they were constructively discharged in violation of public policy.  (*Id.* ¶¶ 73-76)  For the purposes of this Motion, these are the only claims at issue.

3.    The Relevant Allegations.

According to Ms. Millilo and Ms. Johnson, the Defendants engaged in two types of activities that they alleged violated public policy: (1) "Gianelli (sic)[2] and other members of management knew, or should have known, that at least one member of the school's management regularly falsified potential students' high school equivalency documentation with the goal of enrolling a greater number of students and thereby increasing the amount of tuition to the school" (*Id.* ¶ 42); and (2) "Gianelli (sic) and other members of management knew or should have known that management gave students passing grades when they failed to meet criteria for

---

[1]    For the purpose of this Memorandum only, Mr. Giannelli assumes arguendo the allegations in the Complaint to be true (except for the misspelling of his name).

[2]    Throughout their Complaint, the Plaintiffs failed to correctly spell Mr. Giannelli's name.  Defendant Giannelli nonetheless has responded to the substantive allegations, despite the apparent misnomer.

entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses." (*Id.* ¶ 43) Plaintiffs allege that they notified Giannelli, other members of management, the corporate office, and the Department of Education of these two types of activities. (*Id.* ¶45) Plaintiffs further claim that because of the Defendants' actions, "many unqualified or sub-par students enter the medical profession, some of whom go on to work with young children or elderly patients, and are unequipped to perform even the most basic tasks, like taking a blood pressure reading." (*Id.* ¶ 44) As a result of reporting their concerns about the schools' grading and admission practices, Plaintiffs allege that they were "intimidated, and treated in a harsh and retaliatory way that no reasonable person could have tolerated and had no choice but to leave the UDS workplace." (*Id.* ¶ 75).

## ii. **Argument**

A.    Count II Must Be Dismissed As to Mr. Giannelli Because Title VII Does Not
      Provide For Individual Liability.

Title VII prohibits "an employer to discharge an individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). "Employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person." 42 U.S.C. §2000e(b). Plaintiffs seek to hold Mr. Giannelli individually liable under Title VII as an "agent" of his employer. This claim fails as a matter of law because Title VII does not provide for individual liability.

While the First Circuit has not yet addressed this issue, eleven other circuits have held that individual employees, agents and supervisors are *not* liable under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2nd Cir. 1995); *Sheridan v. E.I. DuPont de Nemours & Co.*,

3

100 F.3d 1061, 1078 (3rd Cir. 1996); *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994); *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist.*, 121 F.3d 446, 446 (8th Cir. 1997); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir. 1993); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996); *Smith v. Lomax*, 45 F.3d 402, 403-404 n.4 (11th Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).

The majority of District Courts in the First Circuit have reached the same conclusion. *See, e.g.*, *Meara v. Bennett*, 27 F. Supp. 2d 288, 291-92 (D. Mass. 2000) (Ponsor, J.); *Healy v. Henderson*, 275 F. Supp. 2d 40, (D. Mass. 2003) (Tauro, J.); *Horney v. Westfield Gage Co.*, 95 F. Supp. 2d 29, 33 (D. Mass. 2000) (Neiman, M.J.), *reversed on different grounds*, 2003 U.S. App. LEXIS 20776 (1st Cir. 2003); *Danio v. Emerson Coll.*, 963 F. Supp. 61, 62 (D. Mass. 1997) (Young, J.); *but see Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1019, 1047-48 (D. Mass. 1995) (Gertner, J.) (finding individual liability).

The analysis followed by these courts is best summarized by the Court in *Healy* as follows:

> Statutory interpretation must begin and end with the plain language of the statute if the language "speaks with clarity to an issue." Upon first reading the statute at hand, the phrase "and any agent" might appear to signify that an employer and an agent may be separately liable under Title VII. The Supreme Court, however, has also stated, "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."
>
> . . .
>
> As noted in *Chatman [v. Gentle Dental Ctr. Of Waltham*, 973 F. Supp. 228, 237 (D. Mass. 1997)], "the language [of the definition of "employer"] is far from clear when read in conjunction with other provisions of Title VII." Title VII has several provisions that require employers to perform certain record-keeping

duties. If the definition of "employer" were to be read literally, agents, in addition to employers, would have to abide by these guidelines, a result that does not likely seem to have been intended by Congress.

...

Title VII's remedy provisions are also inconsistent with the notion that an "agent" is to be included in the definition of "employer." Title VII provides for such possible remedies as "reinstatement," and "backpay." Ordinarily, an agent has neither the capability nor the authority to provide such remedies, as such activities tend to be solely the responsibility of the employer.

...

The language of Title VII also manifests an intent to protect small employers, as it exempts companies with fewer than fifteen employees from liability. Several courts have deemed it "inconceivable" that Congress would want to protect small employers yet at the same time allow liability against individual agents.

....

[Thus,] the phrase "and any agent of such person," was intended by Congress to establish traditional respondeat superior liability. That is, "the phrase ... simply means that an employer is liable for acts of those employees acting within the scope of their employment, but does not extend liability beyond the employer to the individual harasser."

*Healy*, 275 F. Supp. at 44-45. For the reasons set forth in *Healy*, the Plaintiffs' Title VII claim against Mr. Giannelli individually must be dismissed with prejudice.

   B.   Count V Must Be Dismissed Because Plaintiffs Milillo and Johnson Have Failed to State A Claim for Wrongful Constructive Discharge In Violation of Public Policy.

The general rule in Massachusetts is that at-will employees, like the Plaintiffs, may be terminated "at any time for any reason or no reason at all." *Upton v. JWP Businessland*, 425 Mass. 756, 757 (1997). An exception to this rule is when an at-will employee is terminated for "a reason that violates a clearly established public policy." *Id.*

To state a claim of wrongful discharge in violation of public policy, the Plaintiffs must establish that they were terminated or constructively discharged. Plaintiffs Milillo and Johnson concede they were not terminated. (Complaint, Count V "wrongful constructive discharge in

violation of public policy"). While the Plaintiffs state the legal standard for constructive

discharge, Plaintiffs have not included any *factual* allegations to support a claim of constructive

discharge. *See* Complaint, ¶ 75 ("[plaintiffs] were intimidated, and treated in a harsh, and

retaliatory way that no reasonable person could have tolerated and had no choice but to leave the

UDS workplace"). The Complaint fails to include a single factual allegation as to how the

environment became unbearable, who created the environment, or when the events took place.

While the Complaint includes some allegations relating to the environment created by the

alleged sexual harassment, those allegations do not support this specific claim of constructive

discharge in violation of public policy based on the Plaintiffs' complaints about the school's

alleged grading and admission practices. Without such allegations, the Plaintiffs' claim must be

dismissed.

The Supreme Judicial Court, however, "consistently has interpreted the public policy

exception narrowly, reasoning that to do otherwise would convert the general rule into a rule that

requires just cause to terminate an at-will employee." *King v. Driscoll*, 418 Mass. 576, 582

(1994)(internal quotation omitted). The public policy at issue must be "well-defined" and

"important." *Flynn v. City of Boston*, 59 Mass. App. Ct. 490, 493 (2003). Whether a termination

violates public policy is a question of law. *Wright v. Shriners Hosp. for Crippled Children*, 412

Mass. 469, 474 (1992).

In Count V, Plaintiffs Milillo and Johnson purport to state a claim against Mr. Giannelli

for wrongful constructive discharge in violation of public policy. Specifically, Plaintiffs allege

that they complained internally and to the Department of Education about the following alleged

violations of law and "public policy": (1) school management falsified potential students' high

school equivalency documentation (Complaint, ¶ 42); and (2) school management gave students

6

passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass courses (*Id.* ¶ 43). Plaintiffs further allege that because of this conduct some students were not prepared to perform such tasks as a blood pressure reading.[3] Neither allegation rises to the level of a strong public policy as required to state a claim.

First, the Plaintiffs' allegations merely assert legal conclusions. Plaintiffs have not identified the laws or public policies allegedly violated with any specificity, nor asserted that they impose criminal penalties. Nor have the Plaintiffs identified the person(s) to whom they allegedly reported their concerns about the schools internal grading and admission practices. Absent this required detail, the wrongful termination claims cannot withstand Defendant's motion to dismiss. *See, e.g., Schaer v. Brandeis Univ.*, 432 Mass. 474, 477-78 (2000) (when ruling on a motion to dismiss, a court "do[es] not accept legal conclusions cast in the form of factual allegations," and the plaintiff may not "rest on subjective characterizations or conclusory descriptions") (internal quotations omitted); *Boudreault v. Chesapeake Biological Labs.*, 14 Mass. L. Rep. 235 (Mass. Super. Ct., 2002) (dismissing claim where plaintiff failed to articulate what policy he believes the defendant violated).

Second, even assuming, *arguendo*, that the Plaintiffs have adequately articulated the "public policy" at issue, the claim still must fail. Having construed this cause of action narrowly, Courts require that the public policy at issue be clearly established such as asserting "a legal right

---

[3]    Notably, this Count cannot include allegations that the Plaintiffs were constructively discharged because they voiced concerns about sexual harassment or unpaid wages. Claims of retaliation for complaining of sexual harassment and unpaid wages are covered by M.G.L. c. 151B (or Title VII) and M.G.L. c. 149 (or the FLSA) respectively. When a claim is covered by statute, the Plaintiffs may not seek identical relief through the common law claim of wrongful discharge in violation of public policy. *Lohnes v. Darwin Partners, Inc.*, 15 Mass. L. Rptr. 157 (July 23, 2002) (M.G.L. c. 149 precludes common law claim of wrongful discharge in violation of public policy where "public policy" violated is the non-payment of wages); *see also Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 512-14 (1984) (no wrongful discharge in violation of public policy claim in cases where comprehensive legislative remedy available to plaintiff).

(e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do what the law forbids (e.g., committing perjury)." *Smith-Pfeffer*, 404 Mass. at 151. Here, Plaintiffs have alleged no such conduct.

At most, Plaintiffs have attempted to create a tangential safety risk of the school's students inadequately taking blood pressure readings based on faulty training. (Complaint, ¶ 44). They have cited no regulation or statute creating such a public policy that would govern a private medical assistant school's admission and grading procedures. This tangential safety concern – if it even exists – is a far cry from the safety issues that rise to the level of a clearly established public policy. *Compare Hobson v. McLean Hospital Corporation*, 402 Mass. 413, 416 (1988) (employee whose responsibilities included enforcing fire department regulation concerning supervision of hospital patients while they cooked meals stated claim of wrongful discharge in violation of public policy) *with Dann v. WearGuard Corporation*, 1996 Mass. Super. LEXIS 4, at * 11-12 (Nov. 7, 1996) (proper administration of health care policies in day care centers to exclude children with infectious diseases does not rise to level of clearly established public policy); *Wright*, 412 Mass. at 474-75 (discharge of director of nursing who reported on issues detrimental to health care is not a violation of well established public policy); *Smith-Pfeffer*, 404 Mass. at 148-51 (no violation of well established public policy by employer who discharged employee for opposing restructuring plan where employee claimed restructuring would compromise service delivery to the residents and constitute a threat to the well being of the institution and its residents.). "While the act performed by the plaintiff[s] [by complaining about such conduct] might be viewed by some as appropriate and socially desirable, it [falls] far short of the level of importance necessary to warrant a conclusion that her discharge violates public policy." *Mistishen v. Falcone Piano Co.*, 36 Mass. App. Ct. 243, 246 (1994).

8

Nor have the Plaintiffs alleged the necessary causation between their alleged complaints and their alleged constructive discharge. The Plaintiffs have failed to allege *any facts* – not even the dates upon which each event occurred -- establishing a temporal proximity between their complaints and their alleged constructive discharge. Without such allegations, the claim must be dismissed for failure to state a claim.

For these reasons, Count V must be dismissed for failure to state a claim.

### iii. <u>Conclusion</u>

For the reasons set forth above, Counts II and V as to Mr. Giannelli should be dismissed with prejudice.

Respectfully submitted,

**LOUIS GIANNELLI**

By his attorneys,

Christopher R. O'Hara (BBO No. 548611)
Tricia A. Rice (BBO No. 633556)
TODD & WELD LLP
28 State Street - 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: October 29, 2004