UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
:
KATIE MILLIO, IRENE JOHNSON :
JANINE HELLER and TOMAYITA :
STEVENSON, : DOCKET NO. 04-cv-30130
      Plaintiffs, :
:
v. :
:
ULTRASOUND DIAGNOSTIC SCHOOL :
WHITMAN EDUCATION GROUP, :
CAREER EDUCATION CORP., :
and LOUIS GIANNELLI, :
      Defendants. :
_____:

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS
COUNT V OF THE PLAINTIFFS' COMPLAINT[1]**

**I.    INTRODUCTION**

Plaintiffs were employed by Ultrasound Diagnostic School ("UDS") (now known as Sanford Brown Institute), in Springfield, Massachusetts. UDS is a private, for-profit school, which purports to train its students for a career in the medical field. In their Complaint, the plaintiffs assert that they observed the defendants' wrongful and, at times, illegal policies and practices, including falsification of public records, aimed at enrolling unqualified students for profit. The defendants also failed to adequately train their students for their roles as medical professionals and hid this failure through the falsification of documents. Two of the plaintiffs, Ms. Milillo and Ms. Johnson, assert that they were

---

[1] In the plaintiffs' operative Complaint, counsel inadvertently labeled the plaintiff's claim of "wrongful constructive termination in violation of public policy", as the "Fourth Count" of the Complaint. Rather, it is the fifth count of the plaintiffs' Complaint and will be referred to as such for purposes of this Opposition to the Defendants' Motion to Dismiss.

constructively discharged when they failed to partake in, opposed and reported the defendants' wrongful and illegal practices, including the defendants' falsification of documents, to the school's corporate headquarters and to various public agencies, including the Massachusetts Department of Education.

The plaintiffs also assert other claims including claims of gender-based discrimination and sexual harassment in violation of the Massachusetts laws against discrimination, M.G.L. c.151B (First Count) and Title VII of the 1964 Civil Rights Act (Second Count). The plaintiffs also suffered harm from a number of serious wage and hour violations whereby the defendants' practices and policies violated Massachusetts laws prohibiting untimely and non-payment of wages, G.L. c. 149 § 148, and the Fair Labor Standards Act (Third Count and Fourth Count).

The defendants have moved to dismiss the fifth count of the plaintiffs' Complaint. The defendants do not seek dismissal of the remaining Counts.[2] For the reasons set forth below, the defendants' Motions to Dismiss the fifth count of the plaintiffs' Complaint should be denied. In the alternative, the Court should allow the plaintiffs leave to amend their Complaint and allow them additional time to assert additional facts in support of their claim.

## II. STANDARD OF REVIEW ON A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is only warranted where there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6); see Wagner v. Devine, 122 F.3d 53, 55 (1st

---

[2] Defendant Giannelli moved to dismiss the Second Claim for Relief against him. Plaintiffs take a voluntary, stipulated dismissal with prejudice of only that Claim, only against Defendant Giannelli, filed on this day.

2

Cir.1997).  In analyzing such a motion, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiffs. Albright v. Oliver, 510 U.S. 266, 268 (1994).  A court only grants a motion to dismiss a complaint if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Thus, even were this Court to conclude that the plaintiffs' Complaint was somehow lacking specificity, "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Id.

### III.  FACTS ALLEGED IN THE PLAINTIFFS' COMPLAINT

The relevant facts alleged by the plaintiffs' in their Complaint are, that the school's president, defendant "Louis Giannelli and other members of management were aware of, endorsed and ratified . . . illegal and wrongful behavior at Defendants' school in Springfield."  (Complaint ("Comp.")  ¶ 41.) They assert that "Giannelli and other members of management knew or should have known that at least one member of the school's management regularly falsified potential students' high school equivalency documentation with the goal of enrolling a greater number of students and thereby increasing the amount of tuition to the school.  (Comp. ¶ 42.)   The plaintiffs also assert that, "Giannelli and other members of management knew or should have known that management gave students passing grades when they failed to meet criteria for entry into the

3

program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses." (Comp. ¶ 43.)

The plaintiffs contend that, "as a result of these actions at UDS in Springfield, which are in violation of public policy, many unqualified or sub-par students entered the medical profession, some of whom go on to work with young children or elderly patients, and are unequipped to perform even the most basic tasks, like taking a blood pressure reading." (Comp. ¶ 44.) The plaintiffs further assert in their Complaint that "Plaintiffs who were aware of these violations of law and public policy told Giannelli and other members of management that they intended to and did in fact notify the corporate office and the Department of Education." (Comp. ¶ 45.) The plaintiffs further allege that "when Giannelli and other members of UDS Springfield management were confronted by Plaintiffs with these violations of law and public policy, Mr. Giannelli and other members of management ignored or endorsed the behavior and threatened retaliation." (Comp. ¶ 46.) Finally, the plaintiffs claim that, "despite the threatened retribution, at various times Plaintiffs complained to Whitman and CEC corporate offices and to a number of public agencies including the D[epartment] o[f] E[ducation], the A[ttorney] G[eneral] . . . about the wrongdoing and illegalities in the workplace," (Comp. ¶ 58), as set forth in their Complaint.

4

IV.   **ARGUMENT**

    A.   **The defendants wrongly seek to impose a heightened pleading standard on the plaintiffs.**

The plaintiffs meet the notice pleading standard and sufficiently plead the allegations of their Complaint to support a claim for relief. The Supreme Court has stated that:

> the decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . . Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

Conley, 355 U.S. at 48.

Plaintiffs Milillo and Johnson plead sufficient facts in support of the fifth count of their Complaint, constructive termination in violation of public policy. The defendants argue that "while the plaintiffs state the legal standard for constructive discharge, Plaintiffs have not included any *factual* allegations to support a claim of constructive discharge. . . . Without such allegation, the Plaintiffs claims must be dismissed." (Defendant Giannelli's Memorandum of Law in Support of his Motion to Dismiss ("Giannelli Mem.") at 6 and 9.)

Defendants appropriately do not challenge that a claim of constructive discharge in violation of public policy is a viable claim for relief. See GTE Products Corp. v. Stewart, 421 Mass. 22, 33-34 (1995). The defendants merely

assert that the plaintiffs did not plead specific facts, such as the dates upon which facts alleged occurred. However, the defendants cite to no authority requiring the specificity they suggest. In fact, the specificity sought by the defendants is contrary to the "short plain statement" required by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 8.

Suffice it to say, the facts alleged by plaintiffs Milillo and Johnson, that they were aware of illegal behavior, including the falsification of public records and other documents, (Comp. ¶ 42), "refused to condone, adopt or adhere to the illegalities and unsafe conditions in the UDS workplace and, *as a result were intimidated, and treated in a harsh, and retaliatory way* that no reasonable person could have tolerated and had no choice but to leave the UDS workplace," (Comp. ¶ 75), sufficiently sets forth a claimed nexus between plaintiffs Milillo and Johnson's observations of illegal and wrongful behavior, their reporting of same within the corporation and to public agencies and the harassment and intimidation they allege followed. Taking those facts as true, and drawing all reasonable inferences from those facts in favor of the plaintiffs, they have amply plead a claim of constructive discharge in violation of public policy.

**B.      The plaintiffs sufficiently plead the public policy at issue.**

The defendants' sole other argument is that the plaintiffs did not plead a "public policy" violated. (Giannelli Mem. at 7; Whitman, Career Education, and UDS' Memorandum of Law in Support of their Motion to Dismiss ("Def. Mem.") at 6.) However, the Massachusetts Supreme Judicial Court's definition of public policy is not as narrow as the defendants suggest to the Court. The SJC has

6

explicitly stated that, "our cases have not attempted in general terms to identify those principles of public policy that are sufficiently important and clearly defined to warrant recovery by an at-will employee who is discharged for engaging in ... particular conduct."  Mello v. Stop & Shop, 402 Mass. 555, 557 (1988).  To the contrary, there are various categories of conduct that fit the exception that are at the core of the plaintiffs' Complaint.

The defendants acknowledge that Massachusetts recognizes that it is illegal for an employer to wrongfully terminate an employee in violation of public policy.[3]  The defendants assert without authority that an employee has a claim of wrongful termination in violation of public policy only when they are terminated for asserting a legal right, performing a legal requirement or refusing to do what the law forbids.  The defendants attempt to limit claims to such a narrow set of circumstances is not supported by applicable case law.  (Def. Mem. at 5; Giannelli Mem. at 7-8.)  The defendants' view was rejected by the SJC when it found that employees also have a legally cognizable claim of a termination in violation of public policy when discharged for performing important "public deeds" or for doing what the law encourages.  See Flesner v. Technical Communications Corp., 410 Mass 805, 810-11 (1991).  See also Hinchey v. Nynex Corp., 144 F.3d 134 (1st Cir. 1998)(relying on Massachusetts law).

Applying Massachusetts law, the First Circuit Court of Appeals and other courts in the district of Massachusetts have determined that an employee is also

---

[3] Massachusetts' recognition of the viability of a claim for wrongful termination in violation of public policy is in accord with the substantial majority of other states.  See Common-Law Retaliatory Discharge Of Employee For Refusing To Perform Or Participate In Unlawful Or Wrongful Acts, William D. Howard, 104 A.L.R.5th 1, § 2 (2002-2004),

7

wrongfully terminated in violation of public policy when she is discharged for a refusal to perform or engage in illegal or *wrongful* acts.  Norris v. Lumbermen's Mut. Cas. Co., 881 F.2d 1144 (1st Cir. 1989) (applying Massachusetts law)(emphasis added); Hutson v. Analytic Sciences Corp., 860 F. Supp. 6 (D. Mass. 1994) (same); Devlin v. WSI Corp., 833 F. Supp. 69 (D. Mass. 1993) (same); Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278 (D. Mass. 1987) (same).

The SJC has further recognized that an employee is wrongfully terminated in violation of public policy when she is discharged for exposing such illegal or wrongful conduct within a workplace.  It is a recognized public policy to afford protection to employee "whistleblowers" who report, either internally or to external agencies, behaviors such as those set forth in the plaintiffs' Complaint.  An employee's "whistleblowing" regarding illegal or wrongful activity, such as exists in this case, can likewise provide a valid basis for the public policy exception, even if the employee does not complain to outside authorities. Mello, 402 Mass. at 560 n. 6.  See also Norris,  881 F.2d at 1153 (relying on Massachusetts law, finding that a plaintiff discharged after internal complaint of public safety hazard was a termination in violation of public policy); Smith v. Mitre Corporation, 949 F.Supp. 943, 951 (D. Mass.1997) (relying on Massachusetts law, finding reporting of fraud or false claims, even if only within the company, is sufficient to give rise to the public policy exception); Shea v. Emmanuel College, 425 Mass. 761, 762-763 (1997) (liability may be imposed on an employer for wrongful discharge of an at-will employee who made internal complaints about

8

suspected criminal activity emanating from internal procedures or policies). Cf. Flesner, 410 Mass. At 810-11 (employee discharged in violation of public policy when he cooperated with public authorities, even though the law did not require him to do so); Holden v. Worcester Housing Auth., 4 Mass. L. Rptr. 61, 1995 WL 809991, at * 1,2 (1995), (plaintiff discharged after reporting the defendant's improper activities to a public authority).

Finally, that a public policy be grounded in existing legislation, as the defendants seem to suggest, is not a requirement to setting forth a claim of wrongful termination in violation of public policy. King v. Driscoll, 418 Mass. 576, 583-584 (1994). In fact, defendants correctly assert that where the legislature has already provided an employee with a private right of action by enacting a comprehensive remedial statutory scheme, Massachusetts courts will not create a new, duplicative common law cause of action for a termination violation of the public policy. Melly v. Gillette Corp., 19 Mass.App.Ct. 511, 513 (1985); Grubba v. Bay State Abrasives, Div. of Dresser Indus., Inc., 803 F.2d 746 (1st Cir.1986). Accordingly, in cases such as this, where there is no statutory protection for plaintiffs and no comprehensive remedial scheme, common law affords the needed protection against wrongful termination for performance of an important public deed.

In their Complaint, the plaintiffs plead an important and recognized public policy. Encouraging the reporting of the falsification of public records is an important public policy, especially when such reporting may have an impact on public health and safety. Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416

(1988)(public policy recognized in employee fulfilling her duty to assure the employer's compliance with the law involving public safety); Joyce v, GF/Pilgrim, Inc., (17 Mass. L. Rptr. 13, 2003 WL 22481100 at *7 (Mass. Super. 2003)(health and safety of nursing home residents an important public policy); Rizzo v. Life Care Centers of America, Inc., 1999 WL 1203792, (Mass. Super. 2003), at *1; Patriarca v. Center for Living and Working, Inc., 10 Mass. L. Rptr. 486, 1999 WL 791888 (Mass. Super. Ct. 1999)(public policy in refusing to engage or participate in falsifying records or to make misrepresentations to the Division of Medical Assistance).

     The plaintiffs allege in their Complaint that Milillo and Johnson reported, internally and to public authorities, that management regularly falsified documents regarding students' qualification for the defendants' medical programs.  They also allege that Milillo and Johnson reported, both internally and to public authorities, the falsification of other documents to reflect that students received passing grades when they failed to meet even basic qualification.   By reporting the falsification of medical professional credentials internally and to public agencies, Milillo and Johnson furthered the important public policy of attempting to ensure public health and safety.

     There is also an important policy of generally reporting, internally or externally, wrongdoing, false claims and, more specifically, record falsification. See Flesner, 410 Mass at 810-11; Hutson v. Analytical Sciences Corp., 860 F. Supp. 6 (D. Mass. 1994)(termination in violation of public policy where an employee complained of false claims for payment); Smith, 949 F.Supp. at 951-52

(internal complaints of fraud and false claims sufficient public policy).  In their Complaint, the plaintiffs allege that Milillo and Johnson reported such wrongdoing and false claims.  They assert that they reported that documents were falsified by management to show as qualified students who were unqualified for admission and continuance in the defendants' medical programs.  The plaintiffs believe that evidence will show that the defendants' falsified records were submitted to federal student loan agencies to receive federally funded student loans and that the federal agencies relied on the falsified documents when awarding federal student loan monies.  The facts alleged by the plaintiffs thus support the previously recognized important public policy of reporting wrongdoing and false claims.

    **C.    The plaintiffs alternatively seek leave to amend to add more specificity to their Complaint.**

Although the plaintiffs strongly believe that they have pled sufficient facts on the fifth count of their Complaint, were the Court to find otherwise, the plaintiffs request leave to amend their Complaint to provide further specificity.

When a plaintiff seeks leave to amend her Complaint, Federal Rule of Civil Procedure 15(a) provides "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also Foman v. Davis, 371 U.S. 178, 182 (1962); see generally 6 Charles Alan Wright et al., Federal Practice and Procedure §§ 1473 & 1483 (2d ed.1990).  The liberal granting of motions for leave to amend reflects the notion that pleadings should allow a claim to be heard on its merits. See Foman, 371 U.S. at 181-82.  No prejudice will result given that the defendants are aware of the contours of the plaintiffs' fifth count of their Complaint.  An

amendment to set forth more specific facts will engender no delay as discovery and trial preparation have not commenced. Moreover, a litigation schedule has not yet been set by the Court. The plaintiffs will receive a determination of the merits of their Complaint and justice will be served by allowing the filing of an amended complaint.

**V.     CONCLUSION**

For the foregoing reasons, the Court should deny the defendants Motions to Dismiss the fifth count of the plaintiffs' Complaint. In the alternative, if the Court finds that the plaintiffs should set forth more specific facts in support of the fifth count of their Complaint, the Court should allow the plaintiffs leave to amend and provide the plaintiffs with additional time to amend their Complaint.

Respectfully submitted,

THE PLAINTIFFS
By their attorney,


   /s/ Suzanne Garrow
Suzanne Garrow BBO # 636548
Joel H. Feldman BBO # 552963
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

Dated: November 24, 2004

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by first class and electronic mail upon the attorneys of record for the defendants on November 24, 2004.

   /s/ Suzanne Garrow
Suzanne Garrow