IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATIE MILLIO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON,<br><br>*Plaintiffs,*<br><br>vs.<br><br>WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,<br><br>*Defendants.* | CASE NUMBER: 04-30130-MAP |

**DEFENDANTS' MOTION TO COMPEL
PLAINTIFFS TO PROVIDE DISCOVERY RESPONSES**

**I.   INTRODUCTION**

Defendants Whitman Education Group, Inc., Career Education Corporation and Ultrasound Diagnostic School (collectively "Corporate Defendants" or "CD") jointly with Defendant Louis Giannelli (collectively "Defendants") hereby move the Court for an order requiring Plaintiffs to fulfill their discovery obligations in accordance with Federal Rule of Civil Procedure 26.

**II.   FACTUAL BACKGROUND**

This litigation arises from the employment of Plaintiffs Katie Milillo, Irene Johnson, Janine Heller and Tomayita Stevenson ("Plaintiffs") with Ultrasound Diagnostic School located

-1-

in Springfield, Massachusetts.[1]  On July 9, 2004, Plaintiffs filed a five-count Complaint in which they allege claims for sexual harassment sexual harassment under the Massachusetts General Law (Count I), and under Title VII of the Civil Rights Act of 1964 (Count II), violation of the wage and hour provisions of the Massachusetts General Law (Count III), violation of the Fair Labor Standards Act ("FLSA") (Count IV), and wrongful constructive discharge in violation of public policy (Count V).[2]

Counsel for Corporate Defendants and Defendant Giannelli each raised their concerns with Plaintiffs' discovery responses with Plaintiffs' counsel, in an unsuccessful effort to resolve the instant discovery dispute.  The parties exchanged detailed letters outlining the discovery disputes and could not reach an agreement, as Plaintiffs refused to provide any further information beyond what had been provided in their written discovery responses.  See Correspondence of Counsel, attached hereto at Exhibit E.[3]

### III.   STANDARD FOR MOTION TO COMPEL DISCOVERY

Rule 26(b)(1) provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . or the subject matter involved in the action" Id.  This rule further states that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of

---

[1]   Heller's Objections and Responses to Corporate Defendants' Interrogatories and to Giannelli's Interrogatories are attached hereto at Exhibit A.  Johnson's Objections and Responses to Corporate Defendants' Interrogatories and to Giannelli's Interrogatories are attached hereto at Exhibit B.  Milillo's Objections and Responses to Corporate Defendants' Interrogatories and to Giannelli's Interrogatories are attached hereto at Exhibit C.  Stevenson's Objections and Responses to Corporate Defendants' Interrogatories and to Giannelli's Interrogatories are attached hereto at Exhibit D.

[2]   Plaintiffs voluntarily dropped their claim under Title VII against individual Defendant Giannelli.

[3]   Milillo provided documents described as "progress notes" of Dr. Rita Ishak, her treating physician, but refuses to authorize a release for the whole medical record.

admissible evidence." Id. Rule 37(a) provides that a party may move for an order compelling production where a party fails to permit inspection of the documents requested. Fed. R. Civ. Pro. 37(a)(2). Under these broad standards, this Court should require Plaintiffs to provide full and complete responses to Defendants' discovery requests.

## IV. ARGUMENT

### A. Plaintiff Johnson's Interrogatory Responses Were Due June 3 and She Still Has Not Provided Verified Responses.

Johnson still has not provided verifications for her responses to the Interrogatories of Corporate Defendants or of Defendant Giannelli, both of which were due several months ago.

Local Rule 33.1 and Federal Rule of Civil Procedure 33(b) make abundantly clear that a party is required to verify written interrogatory responses. As Rule 33(b) states:

> (1) Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.
>
> (2) The answers are to be signed by the person making them, and the objections signed by the attorney making them.

Fed. R. Civ. Pro. 33(b)(1), (2).

Plaintiffs' counsel admits that Defendants are owed Johnson's verification, and provided assurances to Defendants' counsel in writing over a month ago that it was forthcoming that week.[4] Yet Defendants still have not received a verification and Plaintiffs' counsel has offered

---

[4] By stipulation of counsel, Johnson's written responses to Corporate Defendants and Defendants were due on June 3, 2005, two and one-half months ago. On June 3, Plaintiffs' counsel provided written interrogatory responses from Heller, Milillo and Stevenson, but none from Plaintiff Johnson. On June 30, Corporate Defendants' counsel complained to Plaintiffs' counsel regarding the lack of responses from Plaintiff Johnson, and on July 7, Johnson provided written interrogatory responses, but without a verification. On July 8, Corporate Defendants' counsel complained to Plaintiffs' counsel regarding the lack of a verification and on July 11, Plaintiffs' counsel represented that Johnson's verification would be forthcoming that week. On July 20, and again on July

neither explanation nor excuse to explain why Johnson failed to verify her written interrogatory responses. Given this unexplained delay, the fact that Plaintiffs' counsel served Johnson's written interrogatory responses over a month ago without a verification from her client is curious at best.

Johnson has been granted more than enough time to complete verifications and respond to the interrogatories under oath. The lack of verified responses impedes Defendants from conducting discovery based on Johnson's interrogatory responses, and now has resulted in unnecessary costs and fees for Defendants in moving to compel. Accordingly, this Court should compel Johnson to provide verified responses, and award Defendants fees incurred in its efforts to obtain Johnson's verification.

    **B.**    **Plaintiffs Refuse to Provide Information Concerning Their Compensatory Damages and Releases for Their Medical Information.**

Heller, Johnson and Stevenson refuse to provide a response to Corporate Defendants Interrogatory No. 11 and Giannelli Interrogatory No. 10, which request information regarding Plaintiffs' medical and psychological care:

> **CD Interrogatory No. 11:** Including psychiatrists, psychologists, and social workers, identify each medical provider (including but not limited to doctors, physical therapists, hospitals and nursing homes) from whom you have sought or received medical or psychological treatment or counseling from 1990 to the present, and the symptoms or conditions for which you sought or received treatment.
>
> **Giannelli Interrogatory No. 10:** If you are seeking emotional distress damages, for each and every examination, treatment or case that you received from any doctor, physician, medical practitioner, mental health professional, hospital, clinic or other institution for any injury (including emotional harm) which was suffered as a result of the alleged occurrences, please state: (a) the name and address of the doctor, physician,

---

28, Gianelli's counsel reiterated Defendants' complaint that no verification had been provided. To date, Plaintiffs' counsel still has not provided Johnson's verification. See Correspondence of Counsel, attached at Exhibit E.

practitioner, mental health professional, hospital, clinic or institution; (b) the nature and extent of the examination, treatment or care received; (c) the date of the examination, treatment or case; (d) the inclusive dates of any period of confinement at any hospital, clinic, institution or other place, including home; [and] (e) each and every diagnosis or prognosis, identifying each doctor, practitioner or mental health professional by name and address. (f) an itemized account of all expenses incurred for the above-referenced treatment.

In response to Giannelli Interrogatory No. 10, Milillo responded that Dr. Rita Ishak treated her for shingles related to stress around her alleged constructive termination. Milillo later provided a copy of what she describes as Dr. Ishak's "progress notes," but nevertheless refuses to authorize a release of medical information so that Defendants may review all of the records pertinent to Dr. Ishak's treatment.

In refusing to provide a release, Milillo indicates that a medical release will be provided if and when she decides to rely upon Dr. Ishak. See July 11, 2005 letter from Plaintiffs' counsel at Ex. E. Milillo, however, produced Dr. Ishak's alleged "progress notes," leaving unanswered whether she intends to rely on those notes to support her claim for emotional distress. Regardless of whether Milillo intends to affirmatively rely upon Dr. Ishak, however, she has now waived any privilege associated with Dr. Ishak's provision of health care to her, and must authorize a release so that Defendants can review the complete medical file. Milillo cannot use Dr. Ishak's progress notes as a shield preventing further disclosure of her medical records and as a sword to support her claims. This Court should provide Defendants the opportunity to review all of Dr. Ishak's records.

Moreover, whether Plaintiffs intend to rely affirmatively upon their medical providers is not dispositive in determining the discovery permitted into their claims for emotional distress. Rather, as acknowledged by Plaintiffs, a defendant is entitled to conduct discovery into a plaintiff's emotional distress claim where that plaintiff puts her mental state of mind at issue. In

this case, Plaintiffs' mental states of mind are directly at issue and the information requested is subject to discovery. Plaintiffs claim that they need not provide information concerning their compensatory damages because they only claim "garden variety" emotional distress. A so-called "garden variety," or "incidental," claim of emotional distress "merely seek[s] recompense for those emotional injuries that are likely to arise as a fair consequence of an underlying tort." Morrisette v. Kennebec County, Civ. No. 01-01-B-S, 2001 WL 969014, at * 2 (D. Me. Aug. 21, 2001); Sabree v. United Bhd. of Carpenters & Joiners of Am., Local No. 33, 126 F.R.D. 422, 426 (D. Mass. 1989) (holding that where a plaintiff merely alleges "a 'garden-variety' claim of emotional distress," she has not placed her mental condition directly at issue). By contrast, a claim of psychic injury or diagnosable psychiatric disorder does waive the privilege, because the claim necessarily rests upon the very diagnosis that the privilege would otherwise shield. Sabree, 126 F.R.D. at 426.

      Mililo undisputedly seeks more than "garden variety" emotional distress, since she claims stress so severe that it manifested into an actual physical disease, shingles. In Sorenson v. H & R Block, Inc., 197 F.R.D. 199, 204 (D. Mass 2000), upon which Milillo's counsel relied in her letter for the argument that the information is privileged, explicitly states that where a plaintiff claims to have suffered "great bodily harm," she waives the physician privilege and information concerning her treatment is discoverable.

      Moreover, all Plaintiffs have necessarily pled more than a garden variety emotional distress claim by raising claims for sex discrimination under Mass. GL. § 151b (as opposed to a general tort claim). Under the Massachusetts Supreme Court's recent decision in Stonehill College v. Mass. Comm'n Against Discrimination, 441 Mass. 549 (2004), "[a] finding of discrimination, or retaliation, by itself, is no longer sufficient to permit an inference of, or a

presumption of, emotional distress." Id. at 576. Thus, a plaintiff seeking emotional distress damages arising out of discrimination or harassment must submit evidence to justify the award of damages, and courts are directed to consider: "(1) the nature and character of the alleged harm; (2) the severity of harm; (3) the length of time the complainant has suffered and reasonably expects to suffer; and (4) whether the complainant has attempted to mitigate the harm (e.g., by counseling or taking medication)." Id. at 576. "Emotional distress existing from circumstances other than the actions of the respondent, or from a condition existing prior to the unlawful act, is not compensable." Id. Thus, Plaintiffs cannot recoup for "garden variety" emotional distress without divulging the information sought after by Defendants, and Defendants are entitled to probe the extent of the psychological or physical injuries Plaintiffs allegedly suffered and explore whether other issues caused, or substantially contributed to, any emotional distress Plaintiffs claim.

This Court should require Plaintiffs to provide a description of any care they received, ats requested in CD Interrogatory No. 11 and Giannelli Interrogatory No. 10, and all Plaintiffs to provide a release for their medical information, including but not limited to Dr. Ishak's care of Milillo.

    **C.**    **Plaintiffs Refuse to Provide Information Concerning Their Monetary Damages.**

        **1.**    **Damages Calculation**

Plaintiffs' evasion regarding their damages calculations is completely inappropriate. The interrogatories propounded stated:

> **CD Interrogatory No. 1:** With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

> **Giannelli Interrogatory No. 6:** If your answer to the preceding interrogatory is in the affirmative, please state the total amount sought and the amount attributable to each of the following: (a) wages, front or back pay; (b) raises and promotions; (c) sick pay; (d) vacation pay; (e) bonuses; (f) contributions by Defendant to pension or retirement funds or other benefit plans; (g) interest; and (h) any other payments.

Plaintiffs' interrogatory responses failed to itemize their damages and offered no greater detail than their initial Complaint.[5]

A damages calculation is a basic and fundamental requirement for any plaintiff in any lawsuit. Not only is their damages calculation required by CD Interrogatory No. 1 and Giannelli Interrogatory No. 6, it is also required under Federal Rule of Civil Procedure 26(a) and Local Rule 26.1. Federal Rule of Civil Procedure 26(a)(c) requires a computation of any category of damages claim, and under Local Rule 26.1(b)(1)(a), a plaintiff is required to provide a sworn statement that "itemizes all economic loss and provides a computation of damages for which recovery is sought, if any, sustained before the date of service of process." The Court should accordingly order Plaintiffs to provide a damages calculation and any supporting documentation.

### 2. Unemployment Compensation Information

Plaintiffs Johnson and Milillo refuse to provide unemployment compensation information and information concerning sources of income received until the present in response to Corporate Defendants Interrogatory No. 2:

> **CD Interrogatory No. 2:** Beginning from the commencement of your employment with Defendants, and continuing until the present, describe every source of income you received including but not limited to, worker's compensation and unemployment compensation, social security or similar payments or benefits, or disability payments, and the total amount you received or to which you became entitled.

---

[5] Plaintiffs maintained that they could not provide a further calculation of damages until they received Corporate Defendants' document production, but since that production, still have not supplemented their responses. See Correspondence at Ex. E.

Plaintiffs claim they are not required to provide such information since evidence of collateral sources of income, such as unemployment compensation benefits, are inadmissible under the so-called "collateral source" rule. This is wrong for at least two basic reasons.

First, Rule 26 does not limit the realm of discoverable information to that which is admissible at trial, and explicitly states that "[r]elevant information need not be admissible at trial." Fed. R. Civ. Pro. 26(b)(1). Discovery of collateral sources of income during employment and after employment termination may lead to relevant information concerning a plaintiff's efforts to mitigate her damages.

More importantly, the First Circuit has not adopted the collateral source rule and instead holds that it is within the district court's discretion to determine whether such evidence is admissible. See Lussier v. Runyon, 50 F.3d 1103, 1109 (1st Cir. 1995). As the Lussier court stated, "we tend to agree with those courts that have held the interplay between collateral benefits and back pay to be a matter within the district court's discretion." Id.; see also Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 18 n.16 (1st Cir. 1999) (reaffirming that the First Circuit has not taken a position on the collateral source rule). Thus, Defendants are entitled to discover such information at this stage of the proceedings, and at the time of any trial in this matter, the Court will have an opportunity to decide whether such evidence should be admitted. Accordingly, Plaintiffs Johnson and Milillo, who are pursuing wrongful discharge claims, should be ordered to produce documentation of collateral sources of income during and after their employment.[6]

---

[6] Johnson's interrogatory responses indicated that since November 2004, she has been working at Wing Hospital, but she did not produce any pay stubs, W-2s, tax returns or other documents reflecting her mitigation efforts and current job. See Exhibit B. Similarly, Milillo did not produce documents concerning her employment after her resignation. See Exhibit C.

D.  **Plaintiffs Refuse to Provide a Written Witness Statement They Possess.**

Corporate Defendants Interrogatory No. 7 requested information concerning any written statements Plaintiffs have obtained from witnesses:

> **Corporate Defendants Interrogatory No. 7:** State whether you have obtained or expect to obtain a written statement from any individual concerning the facts of this case, and identify each such written statement.

Plaintiffs objected and refused to provide any information, claiming work product privilege. See Exs. A-D. When Corporate Defendants then requested a privilege log, Plaintiffs' counsel identified the name of the person from whom Plaintiffs have received a written statement, Mary Biscaldi. See Ex. E. However, despite that Defendants' document requests requested all documents referenced in Plaintiffs' interrogatory responses, Plaintiffs did not produce Ms. Biscaldi's statement, provide a privilege log, or suggest any basis upon which the statement is rightfully privileged from production.

This statement is subject to discovery and well within the scope of Defendants' written requests. Accordingly, the Court should require Plaintiffs to immediately produce Ms. Biscaldi's statement and any other witness statements they possess.

V.  **THE COURT SHOULD AWARD DEFENDANTS COSTS AND FEES EXPENDED IN FILING THIS MOTION TO COMPEL.**

Pursuant to Rule 37(a)(4), the Court should order Plaintiffs' counsel to pay Defendants' costs, including attorneys' fees, incurred in filing this Motion. See Rule 37(a)(4) ("If the motion is granted . . . the court shall . . . require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees") (emphasis added).

## VI. CONCLUSION

For the foregoing reasons, Corporate Defendants and Defendant Giannelli respectfully request that the Court order Plaintiffs to provide full and complete responses to the Corporate Defendants' and Defendant Giannelli's written discovery requests, and award Defendants fees incurred in their efforts to obtain complete discovery responses.

Dated: August 26, 2005.

/s/ Jeffrey E. Poindexter
Jeffrey E. Poindexter, Esq.
BULKLEY, RICHARDSON AND GELINAS, LLP
Tel. (413) 272-6232
Fax. (413) 272-6803

Edward S. Mazurek, Esq.
*admitted pro hac vice*
Jamie M. Kohen, Esq.
*admitted pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. (215) 963-5019/5472
Fax. (215) 963-5001

*Attorneys for Corporate Defendants*

Christopher O'Hara, Esq.
Tricia Rice, Esq.
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109

*Attorneys for Louis Giannelli*