# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**KATIE MILLIO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON,**

*Plaintiffs,*

vs.

**CASE NUMBER: 04-30130-MAP**

**WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,**

*Defendants.*

---

## RESPONSES TO FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF JANINE HELLER BY DEFENDANTS WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, AND ULTRASOUND DIAGNOSTIC SCHOOL

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

1. With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**Response:** I seek treble damages for unpaid bonus and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial.

2. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe every source of income you received including, but not limited to, worker's compensation and unemployment compensation, social security or similar payments or benefits, or disability payments, and the total amount you received or to which you became entitled.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

3. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe each type and amount of any fringe benefit that was made available to you at each place of your employment, the cost to you, if any, to acquire the benefit, whether you did acquire the benefit, and if you did not acquire the benefit, the reasons why you did not acquire the benefit.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

4. Describe every effort you have made to find new employment during and after your employment with Defendants, and for each position you were offered but did not accept, the reason(s) you did not accept the position, and each document that relates or refers to your attempts to find employment and your acceptance of any employment.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

5. For each job you have had during and after your employment with Defendants until the present, identify the employer and the inclusive dates of your employment, identify the job title of the job you were hired to perform, the nature of the responsibilities of each job, every change in job responsibility and/or job title during the course of each employment, the rate of pay you received when you began each employment, the total amount of compensation you received through such employment, and identify every change thereto.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

6. For each job identified in your answer to the preceding Interrogatory as to which you are no longer employed, state the reason(s) why you are no longer employed and identify all documents that refer or relate to, or upon which you or others relied in support of, your answer to this Interrogatory.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

7. State whether you have obtained or expect to obtain a written statement from any individual concerning the facts of this case, and identify each such written statement.

**Objection:** This interrogatory calls for attorney work product.



8. Describe in detail all admissions, if any, with respect to the subject matter of the Complaint filed in this action which you contend were made by Defendants and/or any representative or agent of Defendants.

**Response:** Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of us that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. I was in the presence of Mary Biscaldi and Tammy Martin. He also grabbed his crotch at that time. He called me butch and dyke in the presence of Tomayita Stevenson. Often when I would get my hair cut he would ask me if I was going over to the other side. I believe some of these comments were made in the presence of other co-workers. Mr. Gianelli also made comments about finding students physically attractive in the office in my presence and the presence of other co-workers.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". He would also ask me on a regular basis whether it was "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

We had a staff meeting and Mr. Gianelli gave us a booklet and told us that all staff would be receiving a bonus. He told us that non-managers were receiving a bonus equal to 5% of their salary or weekly wage for 2002. He told us that managers were receiving a bonus equal to 10% of their salary or weekly wage for 2002. I believe that at some point I may have been misclassified as an exempt employee.

About a month or more later had a managers meeting in which he reiterated that managers were receiving a bonus equal to 10% of their salary or weekly wage for 2002.

9. Identify all persons who have knowledge or information about any of your causes of action and/or your claim to have suffered damages, and describe in detail the nature of that knowledge or information.

**Response:** See answer to Interrogatory 8 above and in particular See response to 8 above and in particular the other plaintiffs, Mary Biscaldi and Tammy Martin.

10. State whether you have at any time communicated or discussed this lawsuit, your claims or beliefs that Defendants acted unlawfully or illegally, or the grounds for your suit, with any individual other than your attorneys, including but not limited to any current or former employee or representative of Defendants. If so, please identify each person with whom you have had such communication or discussion and describe in detail the date and substance of any such communication or discussion.



**Response:** I have not communicated or discussed my lawsuit with any individual other than my attorney.

11. Including psychiatrists, psychologists, and social workers, identify each medical provider (including but not limited to doctors, physical therapists, hospitals and nursing homes) from whom you have sought or received medical or psychological treatment or counseling from 1990 to the present, and the symptoms or conditions for which you sought or received treatment.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

12. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 34 of the Complaint that you were subjected to an ongoing campaign of gender and sexual harassment by Defendant Gianelli.

**Response:** Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of us that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. I was in the presence of Mary Biscaldi and Tammy Martin. He also grabbed his crotch at that time. He called me butch and dyke in the presence of Tomayita Stevenson. Often when I would get my hair cut he would ask me if I was going over to the other side. I believe some of these comments were made in the presence of other co-workers. Mr. Gianelli also made comments about finding students physically attractive in the office in my presence and the presence of other co-workers.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". He would also ask me on a regular basis whether it was "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

13. Concerning the allegation set forth in Paragraph 38 of the Complaint that "[s]everal Plaintiffs complained first to Whitman and then to CEC corporate offices about the offensive incidents," describe in detail for each such complaint, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the date and substance of any response.

**Response:** I complained orally to Wendy Zuckerman (?) at Whitman; Vera at Whitman. To the best of my recollection I spoke with Wendy on two occasions and Vera on one occasion in the beginning of 2003 and I spoke about Mr. Gianelli's sexually harassing behavior and his calling me names like butch and dyke. Wendy said something to the



effect of "Shame on you once, shame on you twice" and neither did anything to my knowledge and his actions persisted.

14. Concerning the allegation set forth in Paragraph 41 of the Complaint that "Gianelli and other members of management were aware of, endorsed and ratified this and other illegal and wrongful behavior at Defendants' school in Springfield," describe any and all "illegal and wrongful behavior" to which you refer, state which members of management were aware of, endorsed and ratified the alleged behavior, and state each fact which supports, or upon which you rely, and identify all documents relating to the fact that such members of management were aware of, endorsed and ratified the alleged behavior.

**Response:** See answers to Interrogatory 8 and 14.

15. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 26 of your Charge of Discrimination that "[Brian] Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli."

**Response:** I have no personal knowledge in response to this interrogatory.

16. Concerning your allegation set forth in Paragraph 42 of the Complaint that "at least one member of the school's management regularly falsified potential students' high school equivalency documentation," identify who the management member was, and identify each instance in which he/she falsified high school equivalency documentation, and describe when and how this was done.

**Response:** I have no personal knowledge in response to this interrogatory.

17. Describe in detail each instance where "management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses," as alleged in Paragraph 43 of the Complaint including, but not limited to identifying the management members, the students, what course the students were in, and what criteria for entry into the program was not met or what test was not passed.

**Response:** I am aware that on at least one occasion the registrar was told by Mr. Clancy to change a grade – other than that I have no personal knowledge in response to this interrogatory.

18. Concerning your allegation in Paragraph 45 of the Complaint that you notified the corporate office and the Department of Education, describe in detail for each such notification, the date of each notification, who made each notification, the individual and entity to whom each notification was made, in what form (e.g., in writing, on the



telephone, in person), the substance of each notification, and the response thereto, the substance of such response and the date of such response.

**Response:** I have no personal knowledge in response to this interrogatory.

19. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 46 of the Complaint that "Mr. Gianelli and other members of management ignored or endorsed the behavior and threatened retaliation."

**Response:** I have no personal knowledge in response to this interrogatory.

20. Concerning your allegation in Paragraph 58 of the Complaint that Plaintiffs complained to "Whitman and CEC corporate offices and to a number of public agencies including the DOE, AG, MCAD and EEOC" about the alleged wrongdoing and illegalities, describe in detail for each such notification, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the response thereto, the substance of such response and the date of such response.

**Response:** See response to 13. I also filed a complaint at the Massachusetts Commission Against Discrimination and with the Attorney General.

JANINE HELLER
By her attorney,

Suzanne Garrow BBO # 636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA 01103
(413)788-7988
(413)788-7996 (fax)

Dated:  June 3, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by first class mail upon the attorneys of record for the defendants on June 3, 2005.

Suzanne Garrow

The foregoing interrogatories are answered and signed under the penalties of perjury this __23__ day of May 2005.

_____
Janine Heller

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATIE MILLIO, IRENE JOHNSON,
JANINE HELLER and TOMAYITA
STEVENSON,

Plaintiffs,

vs.

WHITMAN EDUCATION GROUP,
INC., CAREER EDUCATION
CORPORATION, ULTRASOUND
DIAGNOSTIC SCHOOL and LOUIS
GIANELLI,

Defendants.

CASE NUMBER: 04-30130-MAP

## RESPONSE TO FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF JANINE HELLER BY DEFENDANT LOUIS GIANNELLI

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

## INTERROGATORIES

**Interrogatory No. 1:**

Identify by bates number the author of any handwritten notes produced in response to Defendants' First Request for Documents.

**Response:** 592 Tomayita Stevenson; 609, 21, 24, 28, 37, 37, 40, 43, 44, 59, 60, 71-79, 86-92, 95-99, 701, 02, 04, 06, 08-09, 11, 13, 14, 16-19, 21, 22, 25-34, 38-44, 48, 49, 52 Katie Milillo

**Interrogatory No. 2:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was discriminatory. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.




**Response:**

Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of us that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. I was in the presence of Mary Biscaldi and Tammy Martin. He also grabbed his crotch at that time. He called me butch in the presence of Tomayita Stevenson. Often when I would get my hair cut he would ask me if I was going over to the other side and he called me dyke. I believe some of these comments were made in the presence of other co-workers. Mr. Gianelli also made comments about finding students physically attractive when I was in the office in my presence and the presence of other co-workers.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". He would also ask me on a regular basis whether it was "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

**Interrogatory No. 3:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was harassment. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.

**Response:**

See answer to No. 2

**Interrogatory No. 4:**

If you ever complained to any person, agent or representative of the Defendants, officially or unofficially, of discriminatory treatment, please state for each such complaint:

    (a)    The name and address of any person or agent or representative to whom you lodged the complaint;

Wendy Zuckerman (?) at Whitman; Vera at Whitman

    (b)    The date that the complaint was made;

To the best of my recollection I spoke with Wendy on two occasions and Vera on one occasion in the beginning of 2003

    (c)    The substance of the complaint;

2



To the best of my recollection I spoke about Mr. Giannelli's sexually harassing behavior and his calling me names like butch and dyke.

(d) The action taken by the person, agent or representative as a result of the complaint, and

Wendy said something to the effect of "Shame on you once, shame on you twice" and did nothing more to my knowledge and his actions persisted.

(e) The Defendants' ultimate course of action as a result.

Defendants did nothing and the actions persisted.

**Interrogatory No. 5:**

Do you seek back pay or other wage-based damages from the Defendants?

**Response:**

I seek the money I was not paid for my bonus in 2002 and any multipliers and interest to which I am entitled as a result. I was promised 10% of my pay as a bonus by the defendants and did not receive it.

**Interrogatory No. 6:**

If your answer to the preceding interrogatory is in the affirmative, please state the total amount sought and the amount attributable to each of the following:

    (a)      Wages, front or back pay;
    (b)      Raises and promotions;
    (c)      Sick pay;
    (d)      Vacation pay;
    (e)      Bonuses;
    (f)      Contributions by Defendant to pension or retirement funds or other benefit plans;
    (g)      Interest; and
    (h)      Any other payments.

**Response:**

See response to 5 above.

**Interrogatory No. 7:**

3



Identify any claims you have made of discrimination against anyone other than Defendants, including the state, county, or agency where the claim was filed, the case number, a description of the suit, and the outcome.

**Response:**

None.

**Interrogatory No. 8:**

Identify all communications with Giannelli where he allegedly promised you a bonus as set forth in Paragraph 55 of the Complaint.

**Response:**

We had a staff meeting and Mr. Gianelli gave us a booklet and told us that all staff would be receiving a bonus. He told us that non-managers were receiving a bonus equal to 5% of their salary or weekly wage for 2002. He told us that managers were receiving a bonus equal to 10% of their salary or weekly wage for 2002.

About a month or more later had a managers meeting in which he reiterated that managers were receiving a bonus equal to 10% of their salary or weekly wage for 2002.

**Interrogatory No. 9:**

With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**Response:**

Treble damages for unpaid bonus and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial.

**Interrogatory No. 10:**

If you are seeking emotional distress damages, for each and every examination, treatment or care that you received from any doctor, physician, medical practitioner, mental health professional, hospital, clinic or other institution for any injury (including emotional harm) which was suffered as a result of the alleged occurrences please state:

   a.   The name and address of the doctor, physician, practitioner, mental health professional, hospital, clinic or institution;
   b.   The nature and extent of the examination, treatment or care received;
   c.   The date of the examination, treatment or care;

4

d.  The inclusive dates of any period of confinement at any hospital, clinic, institution or other place, including home; and

e.  Each and every diagnosis or prognosis, identifying each doctor, practitioner, or mental health professional by name and address.

f.  An itemized account of all expenses incurred for the above-referenced treatment.

**Response:**

I did not see a medical or mental health practitioner for the emotional distress suffered as a result of the occurrences set forth in the Complaint.

**Interrogatory No. 11:**

Identify any experts consulted or retained in connection with this matter, including:

a.  any expert you expect to call as an expert witness at trial and the subject matter on which such expert is expected to testify;

b.  the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds for each opinion;

c.  the conclusions and/or opinions and bases therefore, including whether written reports have been prepared by the expert(s) and, if so, attach copies of the reports, if any; and

d.  please attach a Curriculum Vitae for each expert you intend to use at trial.

**Objection:** the plaintiff objects to this interrogatory to the extent it is premature and requires more than is required by the federal rules of procedure and orders of the Court. The plaintiff will identify any experts as is required.

JANINE HELLER
By her attorney,

Suzanne Garrow BBO # 636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA 01103
(413)788-7988
(413)788-7996 (fax)

Dated: June 3, 2005

5

The foregoing interrogatories are answered and signed under the penalties of perjury this _23_ day of May 2005.

Janine Heller

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by first class mail upon the attorneys of record for the defendants on June 3, 2005.

& hand 6/b

_____
Suzanne Garrow

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**KATIE MILLIO, IRENE JOHNSON,**
**JANINE HELLER and TOMAYITA**
**STEVENSON,**

*Plaintiffs,*

vs.

**WHITMAN EDUCATION GROUP,**
**INC., CAREER EDUCATION**
**CORPORATION, ULTRASOUND**
**DIAGNOSTIC SCHOOL and LOUIS**
**GIANELLI,**

*Defendants.*

**CASE NUMBER: 04-30130-MAP**

## RESPONSES TO FIRST SET OF INTERROGATORIES
## DIRECTED TO PLAINTIFF IRENE JOHNSON BY
## DEFENDANTS WHITMAN EDUCATION GROUP, INC., CAREER
## EDUCATION CORPORATION, AND ULTRASOUND DIAGNOSTIC SCHOOL

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

1. With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**RESPONSE:** I was promised a bonus of 5% of my pay for the year 2002 which I did not receive. I am entitled to treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial. I am also entitled to lost wages and benefits and front pay for my wrongful constructive termination in violation of public policy.

2. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe every source of income you received including, but not limited to, worker's compensation and unemployment compensation, social

security or similar payments or benefits, or disability payments, and the total amount you received or to which you became entitled.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

3. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe each type and amount of any fringe benefit that was made available to you at each place of your employment, the cost to you, if any, to acquire the benefit, whether you did acquire the benefit, and if you did not acquire the benefit, the reasons why you did not acquire the benefit.

**RESPONSE:** I had all the benefits of a full time employee at the defendants as demonstrated by documents produced. I have received no benefits at any position I have held since my constructive termination from the defendants except for 6 months of dental insurance from January to June 2004.

4. Describe every effort you have made to find new employment during and after your employment with Defendants, and for each position you were offered but did not accept, the reason(s) you did not accept the position, and each document that relates or refers to your attempts to find employment and your acceptance of any employment.

**RESPONSE:** After leaving I sent out my resume to numerous medical facilities. I sent a resume to every facility I believed I was qualified for. I got a large number of rejections stating that I had not been working in the medical field but was hired in November by Wing Memorial Hospital as a part time medical assistant. I currently work there and am attending nursing school. I sought full time with Wing and no position was available.

5. For each job you have had during and after your employment with Defendants until the present, identify the employer and the inclusive dates of your employment, identify the job title of the job you were hired to perform, the nature of the responsibilities of each job, every change in job responsibility and/or job title during the course of each employment, the rate of pay you received when you began each employment, the total amounts of compensation you received through such employment, and identify every change thereto.

**RESPONSE:** See 5. The only change was that when I began attending school I went from part-time to per diem. My rate of pay with Wing has always been $13 per hour.

6. For each job identified in your answer to the preceding Interrogatory as to which you are no longer employed, state the reason(s) why you are no longer employed and identify all documents that refer or relate to, or upon which you or others relied in support of, your answer to this Interrogatory.

**RESPONSE:** See Response to 5 above.

7. State whether you have obtained or expect to obtain a written statement from any individual concerning the facts of this case, and identify each such written statement.

**Objection:** This interrogatory calls for attorney work product.

8. Describe in detail all admissions, if any, with respect to the subject matter of the Complaint filed in this action which you contend were made by Defendants and/or any representative or agent of Defendants.

**RESPONSE:** During the course of my employment, Mr. Gianelli would repeatedly grab at his crotch in front of the staff. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of the women that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. Other comments included calling some women in the office "butch" and "dyke", and, generally, talking about sex and sex acts. Mr. Gianelli also made comments about whether he found students physically attractive. He also talked about his "balls" and playing with his balls – referring to nerf balls in his office.

Mr. Gianelli constantly made gender demeaning comments in the workplace including that women were irrational, too emotional, did not address the facts of a situation, were "PMS-ing", and saying that it must be "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". He also stated that he needed a man to work with him. When Mr. Gianelli hired a man, Brian Clancy, as his second-in-command, Mr. Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli.

One member of management told me that they were aware of an admissions employee falsifying high school equivalency documentation to enroll more students. I observed Mr. Clancy giving or requiring me and other instructors to give students passing grades when they failed critical tests necessary to pass the courses in question, or when they did not complete the requisite hours to pass the various courses. I was written up for insubordination by Mr. Clancy when I told him that if he wanted the grades changed he would have to do it himself. I also told him that he would have to take care of the grades for the rest of the semester because I would not pass failing students.

Mr. Gianelli promised the me and the other non-management staff a 5% of or base pay as a bonus for the year 2002. I believe that at some point I may have been misclassified as an exempt employee.

9. Identify all persons who have knowledge or information about any of your causes of action and/or your claim to have suffered damages, and describe in detail the nature of that knowledge or information.

**RESPONSE:** See response to 8 above and in particular Brian Clancy, Louis Gianelli, the other plaintiffs; Carrie Mack and Vivian Miranda are aware of the requirement to change grades. My mother Irene Delaney and Buffie Garrant are aware of my emotional distress from the sexual and gender harassment and from the events which led to and the constructive termination.

10. State whether you have at any time communicated or discussed this lawsuit, your claims or beliefs that Defendants acted unlawfully or illegally, or the grounds for your suit, with any individual other than your attorneys, including but not limited to any current or former employee or representative of Defendants. If so, please identify each person with whom you have had such communication or discussion and describe in detail the date and substance of any such communication or discussion.

**RESPONSE:** I have not communicated or discussed my lawsuit with any individual other than my attorney and my mother.

11. Including psychiatrists, psychologists, and social workers, identify each medical provider (including but not limited to doctors, physical therapists, hospitals and nursing homes) from whom you have sought or received medical or psychological treatment or counseling from 1990 to the present, and the symptoms or conditions for which you sought or received treatment.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

12. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 34 of the Complaint that you were subjected to an ongoing campaign of gender and sexual harassment by Defendant Gianelli.

**RESPONSE:** See response to 8 above.

13. Concerning the allegation set forth in Paragraph 38 of the Complaint that "[s]everal Plaintiffs complained first to Whitman and then to CEC corporate offices about the offensive incidents," describe in detail for each such complaint, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the date and substance of any response.

**RESPONSE:** I asked to speak with of a representative from CEC when they first came to tell us that the school was bought by them. They would not meet with us despite our request. I also complained to Mr. Gianelli and Brian Clancy about the offensive behavior. Mr. Clancy's response when I complained to him was that he was going to have me sued for slander.



14. Concerning the allegation set forth in Paragraph 41 of the Complaint that "Gianelli and other members of management were aware of, endorsed and ratified this and other illegal and wrongful behavior at Defendants' school in Springfield," describe any and all "illegal and wrongful behavior" to which you refer, state which members of management were aware of, endorsed and ratified the alleged behavior, and state each fact which supports, or upon which you rely, and identify all documents relating to the fact that such members of management were aware of, endorsed and ratified the alleged behavior.

**RESPONSE:** See response to number 8.

15. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 26 of your Charge of Discrimination that "[Brian] Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli."

**RESPONSE:** Mr. Clancy laughed at Mr. Gianelli's sexually harassing behavior and he did not treat women as equals or with respect.

16. Concerning your allegation set forth in Paragraph 42 of the Complaint that "at least one member of the school's management regularly falsified potential students' high school equivalency documentation," identify who the management member was, and identify each instance in which he/she falsified high school equivalency documentation, and describe when and how this was done.

**RESPONSE:** I have no personal knowledge in response to this interrogatory.

17. Describe in detail each instance where "management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses," as alleged in Paragraph 43 of the Complaint, including, but not limited to identifying the management members, the students, what course the students were in, and what criteria for entry into the program was not met or what test was not passed.

**RESPONSE:** On numerous occasions Mr. Clancy instructed me, and other instructors to give passing grades when the students either failed the class or did not complete the hours required to pass the class. I was written up by Mr. Clancy for not changing grades as described in 8 above. The student I can remember that I was asked to change grades for at this time is Marilyn Rodriguez.

18. Concerning your allegation in Paragraph 45 of the Complaint that you notified the corporate office and the Department of Education, describe in detail for each such notification, the date of each notification, who made each notification, the individual and entity to whom each notification was made, in what form (e.g., in writing, on the telephone, in person), the substance of each notification, and the response thereto, the substance of such response and the date of such response.



**RESPONSE:** I called the Department of Education three times and made oral complaints on the telephone and reported the changing grades, that I had heard that GEDs were being falsified and that we were a clock hour school and were selectively following those regulations.

19. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 46 of the Complaint that "Mr. Gianelli and other members of management ignored or endorsed the behavior and threatened retaliation."

**RESPONSE:** I told Mr. Gianelli I was going to call the Department of Education and he got angry and nasty and he said I should think about doing that it was my job and that he thought there were no grounds for my allegations. Mr. Clancy wrote me up, see response to 8.

20. Concerning your allegation in Paragraph 58 of the Complaint that Plaintiffs complained to "Whitman and CEC corporate offices and to a number of public agencies including the DOE, AG, MCAD and EEOC" about the alleged wrongdoing and illegalities, describe in detail for each such notification, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the response thereto, the substance of such response and the date of such response.

**RESPONSE:** See response to 18 and see documents produced.

IRENE JOHNSON
By her attorney,


Suzanne Garrow BBO # 636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

Dated:  July 7, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by facsimile and fist class mail upon the attorneys of record for the defendants on this date.

Suzanne Garrow

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATIE MILLIO, IRENE JOHNSON,
JANINE HELLER and TOMAYITA
STEVENSON,

     *Plaintiffs,*

       vs.

WHITMAN EDUCATION GROUP,
INC., CAREER EDUCATION
CORPORATION, ULTRASOUND
DIAGNOSTIC SCHOOL and LOUIS
GIANELLI,

     *Defendants.*

CASE NUMBER: 04-30130-MAP

---

**RESPONSES TO FIRST SET OF INTERROGATORIES
DIRECTED TO PLAINTIFF IRENE JOHNSON BY
DEFENDANT LOUIS GIANNELLI**

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

**Interrogatory No. 1:**

Identify by bates number the author of any handwritten notes produced in response to Defendants' First Request for Documents.

**Response:** 592 Tomayita Stevenson; 609, 21, 24, 28, 37, 37, 40, 43, 44, 59, 60, 71-79, 86-92, 95-99, 701, 02, 04, 06, 08-09, 11, 13, 14, 16-19, 21, 22, 25-34, 38-44, 48, 49, 52 Katie Milillo

**Interrogatory No. 2:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was discriminatory. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.

**Response:** During the course of my employment, Mr. Gianelli would repeatedly grab at his crotch in front of the staff. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of the women that a female co-worker liked her men with their genital area shaved and that she liked to shave them

herself. Other comments included calling some women in the office "butch" and "dyke", and, generally, talking about sex and sex acts. Mr. Gianelli also made comments about whether he found students physically attractive. He also talked about his "balls" and playing with his balls – referring to nerf balls in his office.

Mr. Gianelli constantly made gender demeaning comments in the workplace including that women were irrational, too emotional, did not address the facts of a situation, were "PMS-ing", and saying that it must be "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". He also stated that he needed a man to work with him. When Mr. Gianelli hired a man, Brian Clancy, as his second-in-command, Mr. Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli.

**Interrogatory No. 3:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was harassment. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.

**Response:** During the course of my employment, Mr. Gianelli would repeatedly grab at his crotch in front of the staff. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of the women that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. Other comments included calling some women in the office "butch" and "dyke", and, generally, talking about sex and sex acts. Mr. Gianelli also made comments about whether he found students physically attractive. He also talked about his "balls" and playing with his balls – referring to nerf balls in his office.

Mr. Gianelli constantly made gender demeaning comments in the workplace including that women were irrational, too emotional, did not address the facts of a situation, were "PMS-ing", and saying that it must be "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". He also stated that he needed a man to work with him. When Mr. Gianelli hired a man, Brian Clancy, as his second-in-command, Mr. Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli.

**Interrogatory No. 4:**

If you ever complained to any person, agent or representative of the Defendants, officially or unofficially, of discriminatory treatment, please state for each such complaint:

     (a)    The name and address of any person or agent or representative to whom you lodged the complaint;

     (b)    The date that the complaint was made;

     (c)    The substance of the complaint;



(d)    The action taken by the person, agent or representative as a result of the complaint, and

(e)    The Defendants' ultimate course of action as a result.

I complained to Mr. Gianelli and Mr. Clancy on a number of occasions and told the I was offended and uncomfortable – nothing was done.

**Interrogatory No. 5:**

Do you seek back pay or other wage-based damages from the Defendants?

**Response:** Yes

**Interrogatory No. 6:**

If your answer to the preceding interrogatory is in the affirmative, please state the total amount sought and the amount attributable to each of the following:

(a)    Wages, front or back pay;
(b)    Raises and promotions;
(c)    Sick pay;
(d)    Vacation pay;
(e)    Bonuses;
(f)    Contributions by Defendant to pension or retirement funds or other benefit plans;
(g)    Interest; and
(h)    Any other payments.

**Response:** For wage based damages I seek wages, front and back pay, compensation for lost benefits, bonuses and interest in an amount to be determined at trial. I also seek treble damages for the unpaid bonus amount for the year 2002.

**Interrogatory No. 7:**

Identify any claims you have made of discrimination against anyone other than Defendants, including the state, county, or agency where the claim was filed, the case number, a description of the suit, and the outcome.

**Response:** None



**Interrogatory No. 8:**

Identify all communications with Giannelli where he allegedly promised you a bonus as set forth in Paragraph 55 of the Complaint.

**Response:** Mr. Gianelli promised the non-management employees a bonus of 5% of our income for year 2002 at a staff meeting.

**Interrogatory No. 9:**

With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

See response to 6. Also, I seek treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial. See documents produced.

**Interrogatory No. 10:**

If you are seeking emotional distress damages, for each and every examination, treatment or care that you received from any doctor, physician, medical practitioner, mental health professional, hospital, clinic or other institution for any injury (including emotional harm) which was suffered as a result of the alleged occurrences please state:

    a.    The name and address of the doctor, physician, practitioner, mental health professional, hospital, clinic or institution;

    b.    The nature and extent of the examination, treatment or care received;

    c.    The date of the examination, treatment or care;

    d.    The inclusive dates of any period of confinement at any hospital, clinic, institution or other place, including home; and

    e.    Each and every diagnosis or prognosis, identifying each doctor, practitioner, or mental health professional by name and address.

    f.    An itemized account of all expenses incurred for the above-referenced treatment.

**Response:** I did not treat with any provider for the emotional distress I suffered as a result of the sexual and gender harassment or the emotional distress for the events surrounding my constructive termination.

**Interrogatory No. 11:**

Identify any experts consulted or retained in connection with this matter, including:

    a.    any expert you expect to call as an expert witness at trial and the subject matter on which such expert is expected to testify;



b.    the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds for each opinion;

c.    the conclusions and/or opinions and bases therefore, including whether written reports have been prepared by the expert(s) and, if so, attach copies of the reports, if any; and

d.    please attach a Curriculum Vitae for each expert you intend to use at trial.

**Objection**: the plaintiff objects to this interrogatory to the extent it is premature and requires more than is required by the federal rules of procedure and orders of the Court. The plaintiff will identify any experts as is required.

IRENE JOHNSON
By her attorney,

Suzanne Garrow BBO # 636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA 01103
(413)788-7988
(413)788-7996 (fax)

Dated: July 7, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by facsimile and first class mail upon the attorneys of record for the defendants on this date.

Suzanne Garrow

5