Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KATIE MILLIO, IRENE JOHNSON,
JANINE HELLER and TOMAYITA
STEVENSON,

*Plaintiffs,*

vs.

**CASE NUMBER: 04-30130-MAP**

WHITMAN EDUCATION GROUP,
INC., CAREER EDUCATION
CORPORATION, ULTRASOUND
DIAGNOSTIC SCHOOL and LOUIS
GIANELLI,

*Defendants.*

## RESPONSES TO FIRST SET OF INTERROGATORIES
## DIRECTED TO PLAINTIFF KATIE MILILLO BY
## DEFENDANTS WHITMAN EDUCATION GROUP, INC., CAREER
## EDUCATION CORPORATION, AND ULTRASOUND DIAGNOSTIC SCHOOL

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

1. With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**RESPONSE:** I also was promised a bonus of 10% of my pay for the year 2002 which I did not receive. I am entitled to treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial. I am also entitled to lost wages and benefits and front pay for my wrongful constructive termination in violation of public policy.

2. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe every source of income you received including, but not limited to, worker's compensation and unemployment compensation, social

security or similar payments or benefits, or disability payments, and the total amount you received or to which you became entitled.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

3. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe each type and amount of any fringe benefit that was made available to you at each place of your employment, the cost to you, if any, to acquire the benefit, whether you did acquire the benefit, and if you did not acquire the benefit, the reasons why you did not acquire the benefit.

**RESPONSE:** I had all the benefits of a full time employee at the defendants as demonstrated by documents produced. I have received no benefits at any position I have held since my constructive termination from the defendants.

4. Describe every effort you have made to find new employment during and after your employment with Defendants, and for each position you were offered but did not accept, the reason(s) you did not accept the position, and each document that relates or refers to your attempts to find employment and your acceptance of any employment.

**RESPONSE:** After leaving I sent out my resume to numerous medical and dental facilities. I also did searches on the web. See documents produced.

5. For each job you have had during and after your employment with Defendants until the present, identify the employer and the inclusive dates of your employment, identify the job title of the job you were hired to perform, the nature of the responsibilities of each job, every change in job responsibility and/or job title during the course of each employment, the rate of pay you received when you began each employment, the total amounts of compensation you received through such employment, and identify every change thereto.

**RESPONSE:** I worked at Northeast dental for three months as an office manager and left for a better position and because I wanted to teach. My best recollection of my rate of pay was around $36,000 per year. I went to teach at Porter and Chester Institute and was there for about six months. My rate of pay was $18 per hour. I left because I had a disagreement with the way the program was run. I went to Branford Hall shortly thereafter and went to be a medical assisting and health claims teacher. My rate of pay is $20 per hour.

6. For each job identified in your answer to the preceding Interrogatory as to which you are no longer employed, state the reason(s) why you are no longer employed and identify all documents that refer or relate to, or upon which you or others relied in support of, your answer to this Interrogatory.

**RESPONSE:** See Response to 5 above.

7. State whether you have obtained or expect to obtain a written statement from any individual concerning the facts of this case, and identify each such written statement.

**Objection:** This interrogatory calls for attorney work product.

8. Describe in detail all admissions, if any, with respect to the subject matter of the Complaint filed in this action which you contend were made by Defendants and/or any representative or agent of Defendants.

**RESPONSE:** During the course of my employment, Mr. Gianelli would repeatedly grab at his crotch in front of them. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of the women that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. Other comments included calling some women in the office "butch" and "dyke", and, generally, talking about sex and sex acts. Mr. Gianelli also made comments about whether he found students physically attractive. He also talked about his balls.

Mr. Gianelli constantly made gender demeaning comments in the workplace including that women were irrational, too emotional, did not address the facts of a situation, were "PMS-ing", and saying that it must be "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". He also stated that he needed a man to work with him. When Mr. Gianelli hired a man, Brian Clancy, as his second-in-command, Mr. Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli.

One member of management told me that they were aware of an admissions employee falsifying high school equivalency documentation to enroll more students. I observed Mr. Clancy giving or requiring the instructor or registrar to give students passing grades when they failed critical tests necessary to pass the courses in question, or when they did not complete the requisite hours to pass the various courses.

Mr. Gianelli would threaten and intimidate me when I told him that I intended to notify the corporate office about these issues. He also forced me to change or delete facts from e-mails and phone calls. Mr. Gianelli would sit in on CAG calls with our corporate office to monitor what I communicated to corporate. I believe that at some point I may have been misclassified as an exempt employee.

Mr. Gianelli promised the management employees a bonus of 10% of our income for year 2002 at two separate meetings. In addition Mr. Clancy told me how much I would receive when I asked him to tell me what my 10% bonus would be.

9. Identify all persons who have knowledge or information about any of your

causes of action and/or your claim to have suffered damages, and describe in detail the nature of that knowledge or information.

**RESPONSE:** See response to 8 above and in particular Brian Clancy, Louis Gianelli, the other plaintiffs, Shelly Demarinis; Linda Monihan and Lisa Merolla saw the GED being forged. My husband Kenneth Milillo is aware of my emotional distress from the sexual and gender harassment and from the events which led to and the constructive termination. Reda Ishak is also aware of my stress and emotional distress from the sexual and gender harassment and from the events which led to and the constructive termination. Vivian Miranda can address the changing of grades.

10. State whether you have at any time communicated or discussed this lawsuit, your claims or beliefs that Defendants acted unlawfully or illegally, or the grounds for your suit, with any individual other than your attorneys, including but not limited to any current or former employee or representative of Defendants. If so, please identify each person with whom you have had such communication or discussion and describe in detail the date and substance of any such communication or discussion.

**RESPONSE:** I have not communicated or discussed my lawsuit with any individual other than my attorney.

11. Including psychiatrists, psychologists, and social workers, identify each medical provider (including but not limited to doctors, physical therapists, hospitals and nursing homes) from whom you have sought or received medical or psychological treatment or counseling from 1990 to the present, and the symptoms or conditions for which you sought or received treatment.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

12. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 34 of the Complaint that you were subjected to an ongoing campaign of gender and sexual harassment by Defendant Gianelli.

**RESPONSE:** See response to 8 above.

13. Concerning the allegation set forth in Paragraph 38 of the Complaint that "[s]everal Plaintiffs complained first to Whitman and then to CEC corporate offices about the offensive incidents," describe in detail for each such complaint, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the date and substance of any response.

**RESPONSE:** I complained to Gussie Wilkins at least a couple of times orally. I also complained to Julie Orloff orally and Mr. Gianelli and Brian Clancy, Linda Monihan.

14. Concerning the allegation set forth in Paragraph 41 of the Complaint that "Gianelli and other members of management were aware of, endorsed and ratified this and other illegal and wrongful behavior at Defendants' school in Springfield," describe any and all "illegal and wrongful behavior" to which you refer, state which members of management were aware of, endorsed and ratified the alleged behavior, and state each fact which supports, or upon which you rely, and identify all documents relating to the fact that such members of management were aware of, endorsed and ratified the alleged behavior.

**RESPONSE:** See response to number 8. I also complained to Julie Orloff on several occasions near the end of my employment and I communicated with her in writing, see documents produced. At one point several months prior to my leaving I spoke with Gussie Wilkins. I also spoke to Mr. Gianelli and Mr. Clancy about all the issues et forth in the complaint repeatedly to response.

15. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 26 of your Charge of Discrimination that "[Brian] Clancy regularly engaged in the same sort of gender demeaning comments and behavior as did Mr. Gianelli."

**RESPONSE:** Mr. Clancy laughed at Mr. Gianelli's sexually harassing behavior and he did not treat women as equals or with respect.

16. Concerning your allegation set forth in Paragraph 42 of the Complaint that "at least one member of the school's management regularly falsified potential students' high school equivalency documentation," identify who the management member was, and identify each instance in which he/she falsified high school equivalency documentation, and describe when and how this was done.

**RESPONSE:** The changing of GED's was done by Tina Merullo, Direector of Admissions. Shortly before I was constructively terminated the defendant's employment I observed her put a different student's name on a GED. The student did not have a GED. She used wite-out and a copier.

17. Describe in detail each instance where "management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses," as alleged in Paragraph 43 of the Complaint, including, but not limited to identifying the management members, the students, what course the students were in, and what criteria for entry into the program was not met or what test was not passed.

**RESPONSE:** On numerous occasions Mr. Clancy instructed me, one of the instructors or the registrar to give passing grades when the students either failed the class or did not complete the hours required to pass the class. The students and classes I can remember at this time are Marilyn Rodriguez never did her EKG practical and got an A in the class.

This was brought to my attention and to Ms. Johnson's attention by the student. Vivian Miranda and Marcy, both instructors left because Mr. Clancy told Ms. Miranda to change a grade and Marcy was required to change hours. Vivian faxed a letter to corporate.

18. Concerning your allegation in Paragraph 45 of the Complaint that you notified the corporate office and the Department of Education, describe in detail for each such notification, the date of each notification, who made each notification, the individual and entity to whom each notification was made, in what form (e.g., in writing, on the telephone, in person), the substance of each notification, and the response thereto, the substance of such response and the date of such response.

**RESPONSE:** I called the Department of Education and left a message in or around July 2003 and then Ms. Johnson called the Department of Education and spoke with them.

19. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 46 of the Complaint that "Mr. Gianelli and other members of management ignored or endorsed the behavior and threatened retaliation."

**RESPONSE:** See response to 8.

20. Concerning your allegation in Paragraph 58 of the Complaint that Plaintiffs complained to "Whitman and CEC corporate offices and to a number of public agencies including the DOE, AG, MCAD and EEOC" about the alleged wrongdoing and illegalities, describe in detail for each such notification, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the response thereto, the substance of such response and the date of such response.

**RESPONSE:** See response to 14 and see documents produced.

                         KATIE MILILLO
                         By her attorney,


                         _____
                         Suzanne Garrow BBO # 636548
                         Heisler, Feldman & McCormick, P.C.
                         1145 Main Street, Suite 508
                         Springfield MA  01103
                         (413)788-7988
                         (413)788-7996 (fax)

Dated:  June 3, 2005

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and accurate copy of the foregoing document was served by first class mail upon the attorneys of record for the defendants on June 3, 2005.

_____
Suzanne Garrow

The foregoing interrogatories are answered and signed under the penalties of perjury this 31 day of May 2005.

Katie Milillo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATIE MILLIO, IRENE JOHNSON,
JANINE HELLER and TOMAYITA
STEVENSON,

    *Plaintiffs,*

    vs.

WHITMAN EDUCATION GROUP,
INC., CAREER EDUCATION
CORPORATION, ULTRASOUND
DIAGNOSTIC SCHOOL and LOUIS
GIANELLI,

    *Defendants.*

CASE NUMBER: 04-30130-MAP

## RESPONSE TO FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF KATIE MILILLO BY DEFENDANT LOUIS GIANNELLI

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

**Interrogatory No. 1:**

Identify by bates number the author of any handwritten notes produced in response to Defendants' First Request for Documents.

**Response:** 592 Tomayita Stevenson; 609, 21, 24, 28, 37, 37, 40, 43, 44, 59, 60, 71-79, 86-92, 95-99, 701, 02, 04, 06, 08-09, 11, 13, 14, 16-19, 21, 22, 25-34, 38-44, 48, 49, 52 Katie Milillo

**Interrogatory No. 2:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was discriminatory. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.

**Response:** Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and

circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of us that a female co-worker liked her men with their genital area shaved and that she liked to shave them herself. He also grabbed his crotch at that time. Mr. Gianelli also made comments about finding students physically attractive. Mr. Gianelli also made comments about his "balls" in a sexual way – referring to nerf balls in his office.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". He would also ask me on a regular basis whether it was "that time of the month". When Mr. Gianelli was in a bad mood he would say that he had "PMS" or that he had his "period". Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

**Interrogatory No. 3:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was harassment. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.

**Response:** See response to 2

**Interrogatory No. 4:**

If you ever complained to any person, agent or representative of the Defendants, officially or unofficially, of discriminatory treatment, please state for each such complaint:

     (a)    The name and address of any person or agent or representative to whom you lodged the complaint;

     (b)    The date that the complaint was made;

     (c)    The substance of the complaint;

     (d)    The action taken by the person, agent or representative as a result of the complaint, and

     (e)    The Defendants' ultimate course of action as a result.

**Response:** I complained about some of his own behavior to Mr. Gianelli. I complained to Brian Clancy about Mr. Gianelli a year after I began my employment, specifically about the genital comment and about Lou calling Ms. Heller and Shelley Demarinis dykes. I also told Julie Orloff of these issues orally on several occasions near the end of my employment. At one point several months prior to my leaving I spoke with Gussie Wilkins. I also complained to Linda Monihan.

**Interrogatory No. 5:**

Do you seek back pay or other wage-based damages from the Defendants?



**Response:** Yes

**Interrogatory No. 6:**

If your answer to the preceding interrogatory is in the affirmative, please state the total amount sought and the amount attributable to each of the following:

(a)    Wages, front or back pay;
(b)    Raises and promotions;
(c)    Sick pay;
(d)    Vacation pay;
(e)    Bonuses;
(f)    Contributions by Defendant to pension or retirement funds or other benefit plans;
(g)    Interest; and
(h)    Any other payments.

**Response:** For wage based damages I seek wages, front and back pay, compensation for lost benefits, bonuses and interest in an amount to be determined at trial. I also seek treble damages for the unpaid bonus and wages.

**Interrogatory No. 7:**

Identify any claims you have made of discrimination against anyone other than Defendants, including the state, county, or agency where the claim was filed, the case number, a description of the suit, and the outcome.

**Response:** None.

**Interrogatory No. 8:**

Identify all communications with Giannelli where he allegedly promised you a bonus as set forth in Paragraph 55 of the Complaint.

**Response:** Mr. Gianelli promised the management employees a bonus of 10% of our income for year 2002 at two separate meetings. In addition Mr. Clancy told me how much I would receive when I asked him to tell me what my 10% bonus would be.

**Interrogatory No. 9:**

With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

See response to 6. Also, I seek treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial. See documents produced.

**Interrogatory No. 10:**

If you are seeking emotional distress damages, for each and every examination, treatment or care that you received from any doctor, physician, medical practitioner, mental health professional, hospital, clinic or other institution for any injury (including emotional harm) which was suffered as a result of the alleged occurrences please state:

    a.    The name and address of the doctor, physician, practitioner, mental health professional, hospital, clinic or institution;

    b.    The nature and extent of the examination, treatment or care received;

    c.    The date of the examination, treatment or care;

    d.    The inclusive dates of any period of confinement at any hospital, clinic, institution or other place, including home; and

    e.    Each and every diagnosis or prognosis, identifying each doctor, practitioner, or mental health professional by name and address.

    f.    An itemized account of all expenses incurred for the above-referenced treatment.

I treated with Reda Ishak MD for shingles related to stress around the time I was constructively terminated from the defendants. He is located at 274 Westfield Street, West Springfield, MA 01089. I did not treat with any mental health provider for the emotional distress I suffered as a result of the sexual and gender harassment or the emotional distress for the events surrounding my constructive termination.

**Interrogatory No. 11:**

Identify any experts consulted or retained in connection with this matter, including:

    a.    any expert you expect to call as an expert witness at trial and the subject matter on which such expert is expected to testify;

    b.    the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds for each opinion;

    c.    the conclusions and/or opinions and bases therefore, including whether written reports have been prepared by the expert(s) and, if so, attach copies of the reports, if any; and

    d.    please attach a Curriculum Vitae for each expert you intend to use at trial.

<u>**Interrogatory No. 11**</u>:

Identify any experts consulted or retained in connection with this matter, including:

    a.    any expert you expect to call as an expert witness at trial and the subject matter on which such expert is expected to testify;

    b.    the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds for each opinion;

    c.    the conclusions and/or opinions and bases therefore, including whether written reports have been prepared by the expert(s) and, if so, attach copies of the reports, if any; and

    d.    please attach a Curriculum Vitae for each expert you intend to use at trial.

<u>**Objection**</u>: the plaintiff objects to this interrogatory to the extent it is premature and requires more than is required by the federal rules of procedure and orders of the Court. The plaintiff will identify any experts as is required.

KATIE MILILLO
By her attorney,

Suzanne Garrow BBO #636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

Dated:  June 3, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by first class mail upon the attorneys of record for the defendants on June 3, 2005.

and c/c

Suzanne Garrow

The foregoing interrogatories are answered and signed under the penalties of perjury this ___31___ day of May 2005.


Katie Milillo

Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**KATIE MILLIO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON,**

*Plaintiffs,*

vs.

**WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,**

*Defendants.*

**CASE NUMBER: 04-30130-MAP**

---

## RESPONSES TO FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF TOMAYITA STEVENSON BY DEFENDANTS WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, AND ULTRASOUND DIAGNOSTIC SCHOOL

The plaintiff objects to the definitions and instructions to the extent they request information not required or beyond the scope of the Federal Rules of Civil Procedure or are covered by attorney client or other privileges or are attorney work product.

1. With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**RESPONSE:** I was entitled to bonuses every 90 day period in which I met certain placement requirements. That was precisely why I took the position with such a low salary. I was told I would receive regular bonuses. I am aware that I regularly met placement goals and only once received a bonus and I received much less than promised. The defendants CEC and Whitman would have the information as to how much money to which I am entitled. I was also led to believe that my boss Linda Monihan was receiving the bonus money that was supposed to be for me. I was paid incorrectly for over a year and was not paid promised bonuses, including yearly and promised bonuses for meeting required placement levels which I knew I had achieved through my supervisor and

through Mr. Gianelli. I also was promised a bonus of 5% of my pay for the year 2002 which I did not receive. I am entitled to damages for failure to correctly pay me for approximately a whole year. I am entitled to interest based on the unpaid wages and bonuses. Treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial.

2. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe every source of income you received including, but not limited to, worker's compensation and unemployment compensation, social security or similar payments or benefits, or disability payments, and the total amount you received or to which you became entitled.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

3. Beginning from the commencement of your employment with Defendants, and continuing until the present, describe each type and amount of any fringe benefit that was made available to you at each place of your employment, the cost to you, if any, to acquire the benefit, whether you did acquire the benefit, and if you did not acquire the benefit, the reasons why you did not acquire the benefit.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

4. Describe every effort you have made to find new employment during and after your employment with Defendants, and for each position you were offered but did not accept, the reason(s) you did not accept the position, and each document that relates or refers to your attempts to find employment and your acceptance of any employment.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

5. For each job you have had during and after your employment with Defendants until the present, identify the employer and the inclusive dates of your employment, identify the job title of the job you were hired to perform, the nature of the responsibilities of each job, every change in job responsibility and/or job title during the course of each employment, the rate of pay you received when you began each employment, the total amounts of compensation you received through such employment, and identify every change thereto.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

6. For each job identified in your answer to the preceding Interrogatory as to which you are no longer employed, state the reason(s) why you are no longer employed and identify all documents that refer or relate to, or upon which you or others relied in support of, your answer to this Interrogatory.

**Objection:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

7. State whether you have obtained or expect to obtain a written statement from any individual concerning the facts of this case, and identify each such written statement.

**Objection:** This interrogatory calls for attorney work product.

8. Describe in detail all admissions, if any, with respect to the subject matter of the Complaint filed in this action which you contend were made by Defendants and/or any representative or agent of Defendants.

**RESPONSE:** Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of female co-worker liked her men with their genital area shaved and that she liked to shave them herself. He made comments about an instructor Deja's breast. He made a sexual comment about a tall blonde student who was in class with Kerry Gahr. I heard him call Janine Heller butch. I also heard him say to her after a hair cut whether she was going over to the other side. On a number of occasions Mr. Gianelli would call me into his office and force me to look at emails with sexual content including ones in which a man and women were having intercourse.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". When I asked a question about my boss he would say she was PMS-ing. He would also say that he could tell when it was any woman's time of the month. Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

Gussie Wilkins gave me information that showed I was entitled to bonuses every quarter in which I met certain placement requirements. The information also stated that I was entitled to a certain level of bonus compensation for each student placed when I met a certain placement level. That amount was supposed to increase per student each time I met a higher placement level per quarter I was told by Linda Monihan and Lou Gianelli that I would receive regular bonuses. I was also led to believe that my boss Linda Monihan was receiving the bonus money that was supposed to be for me. I was told that I was paid incorrectly for a whole year.

We had a staff meeting and Mr. Gianelli gave us a booklet and told us that all staff would be receiving a bonus.  He told us that non-managers were receiving a bonus equal to 5% of their salary or weekly wage for 2002.   I believe that at some point I may have been misclassified as an exempt employee.

9. Identify all persons who have knowledge or information about any of your causes of action and/or your claim to have suffered damages, and describe in detail the nature of that knowledge or information.

**RESPONSE:**  See response to 8 above and in particular Brian Clancy, Gussie Wilkins, Linda Monihan, Louis Gianelli, the other plaintiffs, Cary Spence, Shelly Demarinis and Carrie Mack, Tammy Martin and Linda Monihan knows the bonuses I should have received as a career counselor.

10. State whether you have at any time communicated or discussed this lawsuit, your claims or beliefs that Defendants acted unlawfully or illegally, or the grounds for your suit, with any individual other than your attorneys, including but not limited to any current or former employee or representative of Defendants. If so, please identify each person with whom you have had such communication or discussion and describe in detail the date and substance of any such communication or discussion.

**RESPONSE:**  I have not communicated or discussed my lawsuit with any individual other than my attorney.

11. Including psychiatrists, psychologists, and social workers, identify each medical provider (including but not limited to doctors, physical therapists, hospitals and nursing homes) from whom you have sought or received medical or psychological treatment or counseling from 1990 to the present, and the symptoms or conditions for which you sought or received treatment.

**Objection:**  This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

12. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 34 of the Complaint that you were subjected to an ongoing campaign of gender and sexual harassment by Defendant Gianelli.

**RESPONSE:** Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings.  He would also make offensive sexual comments and circulate sexually suggestive e-mails.  As an example, Mr. Gianelli told a number of female co-worker liked her men with their genital area shaved and that she liked to shave them herself.  He made comments about an instructor Deja's breast.  He made a sexual comment about a tall blonde student who was in class with Kerry Gahr.  I heard him call Janine Heller butch.  I also heard him say to her after a hair cut whether she was going

Janine Heller butch. I also heard him say to her after a hair cut whether she was going over to the other side. On a number of occasions Mr. Gianelli would call me into his office and force me to look at emails with sexual content including ones in which a man and women were having intercourse.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". When I asked a question about my boss he would say she was PMS-ing. He would also say that he could tell when it was any woman's time of the month. Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

13. Concerning the allegation set forth in Paragraph 38 of the Complaint that "[s]everal Plaintiffs complained first to Whitman and then to CEC corporate offices about the offensive incidents," describe in detail for each such complaint, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the date and substance of any response.

**RESPONSE:** I called Gussie Wilkins – regional director of Career Services two times. I called once approximately two months before CEC took over, when Whitman was the owner. I called again after CEC took over in July or August 2003. Each time I complained about the discriminatory treatment, Mr. Gianelli's disrespectfulness and foul and sexual language and treatment. I also complained about the fact that I was paid incorrectly for the time I became career counselor. No action was taken as a result of my complaints of discrimination.

14. Concerning the allegation set forth in Paragraph 41 of the Complaint that "Gianelli and other members of management were aware of, endorsed and ratified this and other illegal and wrongful behavior at Defendants' school in Springfield," describe any and all "illegal and wrongful behavior" to which you refer, state which members of management were aware of, endorsed and ratified the alleged behavior, and state each fact which supports, or upon which you rely, and identify all documents relating to the fact that such members of management were aware of, endorsed and ratified the alleged behavior.

**RESPONSE:** See response to number 8. I also complained about these facts to Ms, Wilkins and she did nothing. I spoke to Mr. Clancy about the way I was incorrectly paid, he did nothing. I also spoke to Linda Monihan and she did nothing.

15. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 31of your Charge of Discrimination that "Gianelli retaliated against me by alienating me, failing to regularly meet with me as is required regarding [my] site visits with the students and to address student needs and concerns. . ."

**RESPONSE:** After filing my lawsuit Mr. Gianelli would not include me in meetings which I would normally be included in and which were important to my position and department. He would also not have personal meetings with me about student issues with which he had done in the past and which were necessary to and a part of my job.

16. Concerning your allegation set forth in Paragraph 31 of your Charge of Discrimination that "Gianelli retaliated against me by . . . speaking of me harshly, negatively and loudly to my co-workers throughout the office," describe, for each and every occasion when Mr. Gianelli did so, what he said, which co-workers were present, whether you were present, and what was said by you or your co-workers in response to his words.

**RESPONSE:** To the best of my recollection after filing the lawsuit Mr. Gianelli would rarely speak with me. When he did it was loud, disrespectful and sarcastic in nature.

17. Concerning your allegation set forth in Paragraph 31 of your Charge of Discrimination that "Gianelli retaliated against me by . . .trying to deny me the ability to take personal time which the corporate office acknowledged that I had accrued," describe in detail how Mr. Gianelli tried to deny you personal time, and identify all documents relating or referring to such allegation.

**RESPONSE:** I had put in for personal time off from work. Mr. Gianelli denied my request saying I did not have time left when I knew I did. I called corporate and they had information that showed I was entitled to the time.

18. Concerning your allegation set forth in Paragraph 31 of your Charge of Discrimination that "Gianelli retaliated against me by . . giving me increased job duties and responsibilities which are not a part of my normal job duties," describe in detail what job duties and responsibilities which were not a part of your normal job duties Mr. Gianelli gave you, whose responsibility those duties previously had been, and identify all documents relating or referring to such allegation.

**RESPONSE:** I was supposed to be doing my job in career service. After filing the lawsuit I was moved from a private office to the so-called career center where Ms. Monihan and I were supposed to sit. However, Ms. Monihan was in her own office which she had previously and did not move to the career center. I had to act as the librarian after the move because the library was with the career center.

19. Concerning your allegation set forth in Paragraph 42 of the Complaint that "at least one member of the school's management regularly falsified potential students' high school equivalency documentation," identify who the management member was, and identify each instance in which he/she falsified high school equivalency documentation, and describe when and how this was done.

**RESPONSE:** I have no personal knowledge in response to this interrogatory.

20. Describe in detail each instance where "management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses," as alleged in paragraph 43 of the Complaint, including, but not limited to identifying the management members, the students, what course the students were in, and what criteria for entry into the program was not met or what test was not passed.

**RESPONSE:** I am aware of Brian Clancy requesting an instructor Vivian Miranda to give a student a passing grade when she had failed the final in Ms. Miranda's class. When I was assisting Darlene Morris, the instructor in EKG class I observed a student, Marilyn Rodriguez, fail. I was supposed to re-test her and she never showed for her re-test. I am aware that she then passed the class and the only way she could do so was to go to management and get her grade changed

21. State each and every action taken by Defendants which you contend was a violation of public policy.

**RESPONSE:** Gianelli and other members of management knew or should have known that at least one member of the school's management regularly falsified potential students' high school equivalency documentation with the goal of enrolling a greater number of students and thereby increasing the amount of tuition to the school. Gianelli and other members of management knew or should have known that management gave students passing grades when they failed to meet criteria for entry into the program, failed critical tests or failed to complete the requisite hours to complete and pass their various courses and many unqualified or sub-par students entered the medical profession, some of whom go on to work with young children or elderly patients, and are unequipped to perform even the most basic tasks, like taking a blood pressure reading.

22. Concerning your allegation in Paragraph 45 of the Complaint that you notified the corporate office and the Department of Education, describe in detail for each such notification, the date of each notification, who made each notification, the individual and entity to whom each notification was made, in what form (e.g., in writing, on the telephone, in person), the substance of each notification, and the response thereto, the substance of such response and the date of such response.

**RESPONSE:** I did not personally notify the Department of Education. However, I was a witness to Irene Johnson calling the Department of Education.

23. Describe in detail each fact which supports, or upon which you rely, and identify all documents relating or referring to, the facts and allegations set forth in Paragraph 46 of the Complaint that "Mr. Gianelli and other members of management ignored or endorsed the behavior and threatened retaliation."

**RESPONSE:** I observed Mr. Clancy endorsing and requiring the grade changing for at least one student as described in 20 above. I also had students who failed their externships and were not supposed to pass. However, they would not fail for the externship portion. Mr. Clancy would require me to send them to a different facility. I am also aware that Mr. Clancy passed a student despite her failing her externship.

24. Concerning your allegation in Paragraph 58 of the Complaint that Plaintiffs complained to "Whitman and CEC corporate offices and to a number of public agencies including the DOE, AG, MCAD and EEOC" about the alleged wrongdoing and illegalities, describe in detail for each such notification, the date, who complained, to whom, in what form (e.g., in writing, on the telephone, in person), the substance of the complaint, and the response thereto, the substance of such response and the date of such response.

**RESPONSE:** See response to No. 8 and 14 and see documents produced.

> TOMAYITA STEVENSON
> By her attorney,
>
>
> _____
> Suzanne Garrow BBO # 636548
> Heisler, Feldman & McCormick, P.C.
> 1145 Main Street, Suite 508
> Springfield MA  01103
> (413)788-7988
> (413)788-7996 (fax)

Dated:  June 3, 2005

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and accurate copy of the foregoing document was served by first class mail upon the attorneys of record for the defendants on June 3, 2005.

*by hand 4/6

> _____
> Suzanne Garrow

The foregoing interrogatories are answered and signed under the penalties of perjury this __2__ day of June 2005.

Tomayita Stevenson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KATIE MILLIO, IRENE JOHNSON,
JANINE HELLER and TOMAYITA
STEVENSON,

    *Plaintiffs,*

      vs.

WHITMAN EDUCATION GROUP,
INC., CAREER EDUCATION
CORPORATION, ULTRASOUND
DIAGNOSTIC SCHOOL and LOUIS
GIANELLI,

    *Defendants.*

CASE NUMBER: 04-30130-MAP

**RESPONSES TO FIRST SET OF INTERROGATORIES
DIRECTED TO PLAINTIFF TOMAYITA STEVENSON BY
DEFENDANT LOUIS GIANELLI**

       The plaintiff objects to the definitions and instructions to the extent they request
information not required or beyond the scope of the Federal Rules of Civil Procedure or are
covered by attorney client or other privileges or are attorney work product.

**Interrogatory No. 1:**

Identify by bates number the author of any handwritten notes produced in response to
Defendants' First Request for Documents.

**Response:** 592 Tomayita Stevenson; 609, 21, 24, 28, 37, 37, 40, 43, 44, 59, 60, 71-79, 86-92,
95-99, 701, 02, 04, 06, 08-09, 11, 13, 14, 16-19, 21, 22, 25-34, 38-44, 48, 49, 52 Katie Milillo

**Interrogatory No. 2:**

Please identify and describe all communications, actions or conduct of Giannelli that you
contend was discriminatory. Include in your answer the date, place, the names of all participants
and witnesses, and the substance of each communication, action or conduct.

**Response:**

Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of female co-workers that another co-worker liked her men with their genital area shaved and that she liked to shave them herself. He made comments about an instructor named Deja's breast. He made a sexual comment about a tall blonde student who was in class with Kerry Gahr. I heard him call Janine Heller butch. I also heard him ask her after a hair cut whether she was going over to the other side. On a number of occasions Mr. Gianelli would tell me to come into his office and show me offensive emails with sexual content including ones in which men and women were having intercourse.

Throughout my employment Mr. Gianelli also made gender demeaning comments including that some women were "PMS-ing". When I asked him questions about my boss Linda Monihan's actions he would say she was PMS-ing. He would also say that he could tell when it was any woman's time of the month. Sometime prior to Mr. Clancy beginning, he stated that he needed a man to work with him relating this to women and their hormones.

**Interrogatory No. 3:**

Please identify and describe all communications, actions or conduct of Giannelli that you contend was harassment. Include in your answer the date, place, the names of all participants and witnesses, and the substance of each communication, action or conduct.

**Response:**

Throughout my employment Mr. Gianelli would repeatedly grab at his crotch in front of the staff at meetings. He would also make offensive sexual comments and circulate sexually suggestive e-mails. As an example, Mr. Gianelli told a number of female co-worker liked her men with their genital area shaved and that she liked to shave them herself. He made comments about an instructor Deja's breast. He made a sexual comment about a tall blonde student who was in class with Kerry Gahr. I heard him call Janine Heller butch. I also heard him say to her after a hair cut whether she was going over to the other side. On a number of occasions Mr. Gianelli would call me into his office and force me to look at emails with sexual content including ones in which a man and women were having intercourse.

Throughout my employment Mr. Gianelli made gender demeaning comments including that some women were "PMS-ing". When I asked a question about my boss he would say she was PMS-ing. He would also say that he could tell when it was any woman's time of the month. Sometime prior to Mr. Clancy beginning, he also stated that he needed a man to work with him relating this to women and their hormones.

**Interrogatory No. 4:**

If you ever complained to any person, agent or representative of the Defendants, officially or unofficially, of discriminatory treatment, please state for each such complaint:

(a)    The name and address of any person or agent or representative to whom you
       lodged the complaint;
(b)    The date that the complaint was made;
(c)    The substance of the complaint;
(d)    The action taken by the person, agent or representative as a result of the
       complaint, and
(e)    The Defendants' ultimate course of action as a result.

**Response:**

I called Gussie Wilkins – regional director of Career Services two times. I called once
approximately two months before CEC took over, when Whitman was the owner. I called again
after CEC took over in July or August 2003.

Each time I complained about the discriminatory treatment, Mr. Giannelli's disrespectfulness
and foul and sexual language and treatment. No action was taken as a result of my complaints.

**Interrogatory No. 5:**

Do you seek back pay or other wage-based damages from the Defendants?

**Response:**

Yes.
**Interrogatory No. 6:**

If your answer to the preceding interrogatory is in the affirmative, please state the total amount
sought and the amount attributable to each of the following:

(a)    Wages, front or back pay;
(b)    Raises and promotions;
(c)    Sick pay;
(d)    Vacation pay;
(e)    Bonuses;
(f)    Contributions by Defendant to pension or retirement funds or other benefit plans;
(g)    Interest; and
(h)    Any other payments.

**Response:**

I was entitled to bonuses every 90 day period in which I met certain placement requirements for
students. That was precisely why I took the position with such a low salary. I was told I would
receive regular bonuses. I am aware that I regularly met placement goals and only once received
a bonus and I received much less than promised. The defendants CEC and Whitman would have
the information as to how much money to which I am entitled. I was also led to believe that my
boss Linda Monihan was receiving the bonus money that was supposed to be for me. I was paid

3



incorrectly for over a year and was not paid promised bonuses, including yearly and promised bonuses for meeting required placement levels which I knew I had achieved through my supervisor and through Mr. Gianelli. I also was promised a bonus of 5% of my pay for the year 2002 which I did not receive. I am entitled to damages for failure to correctly pay me for approximately a whole year. I am entitled to interest based on the unpaid wages and bonuses.

**Interrogatory No. 7:**

Identify any claims you have made of discrimination against anyone other than Defendants, including the state, county, or agency where the claim was filed, the case number, a description of the suit, and the outcome.

**Response:**

None.

**Interrogatory No. 8:**

Identify all communications with Giannelli where he allegedly promised you a bonus as set forth in Paragraph 55 of the Complaint.

We had a staff meeting and Mr. Gianelli gave us a booklet and told us that all staff would be receiving a bonus. He told us that non-managers were receiving a bonus equal to 5% of their salary or weekly wage for 2002. See response to interrogatory 6.

**Interrogatory No. 9:**

With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**Response:**

Treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial.

**Interrogatory No. 10:**

If you are seeking emotional distress damages, for each and every examination, treatment or care that you received from any doctor, physician, medical practitioner, mental health professional, hospital, clinic or other institution for any injury (including emotional harm) which was suffered as a result of the alleged occurrences please state:

4

a. The name and address of the doctor, physician, practitioner, mental health professional, hospital, clinic or institution;

b. The nature and extent of the examination, treatment or care received;

c. The date of the examination, treatment or care;

d. The inclusive dates of any period of confinement at any hospital, clinic, institution or other place, including home; and

e. Each and every diagnosis or prognosis, identifying each doctor, practitioner, or mental health professional by name and address.

f. An itemized account of all expenses incurred for the above-referenced treatment.

**Response:**

I did not see a medical or mental health practitioner for the emotional distress suffered as a result of the occurrences set forth in the Complaint.

**Interrogatory No. 11:**

Identify any experts consulted or retained in connection with this matter, including:

a. any expert you expect to call as an expert witness at trial and the subject matter on which such expert is expected to testify;

b. the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds for each opinion;

c. the conclusions and/or opinions and bases therefore, including whether written reports have been prepared by the expert(s) and, if so, attach copies of the reports, if any; and

d. please attach a Curriculum Vitae for each expert you intend to use at trial.

**Objection:** the plaintiff objects to this interrogatory to the extent it is premature and requires more than is required by the federal rules of procedure and orders of the Court. The plaintiff will identify any experts as is required.

TOMAYITA STEVENSON
By her attorney,

Suzanne Garrow BBO #636548
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA 01103
(413)788-7988
(413)788-7996 (fax)

Dated: June 3, 2005

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served by first class mail upon the attorneys of record for the defendants on June 3, 2005.

by hand 6/6

Suzanne Garrow

6

The foregoing interrogatories are answered and signed under the penalties of perjury this ___2___ day of June 2005.

Tomayita Stevenson