UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
:
KATIE MILLIO, IRENE JOHNSON :
JANINE HELLER and TOMAYITA :
STEVENSON, : DOCKET NO. 04-cv-30130-MAP
      Plaintiffs, :
:
v. :
:
ULTRASOUND DIAGNOSTIC SCHOOL :
WHITMAN EDUCATION GROUP, :
CAREER EDUCATION CORP., :
and LOUIS GIANNELLI, :
      Defendants. :
_____:

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY**

    The plaintiffs respectfully submit this opposition to the defendants' Motion to Compel Discovery. Much of the information the defendants seek to compel is not reasonably calculated to lead to the discovery of admissible evidence. The defendants seek to compel intrusive personal information. There is no other reason for seeking this sort of over-reaching discovery than to harass, annoy and embarrass the plaintiffs. The Court should not countenance the defendants' invasive tactics and their Motion to Compel Discovery should be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiffs were employed by Ultrasound Diagnostic School ("UDS") (now known as Sanford Brown Institute), in Springfield, Massachusetts. UDS is a private, for-profit school, which purports to train its students for a career in the medical field. The plaintiffs assert that they observed the defendants' wrongful

and, at times, illegal policies and practices, including falsification of public records, aimed at enrolling unqualified students for profit. The defendants also failed to adequately train their students for their roles as medical professionals and hid this failure through the falsification of documents. Two of the plaintiffs, Ms. Milillo and Ms. Johnson, assert that they were constructively discharged when they failed to partake in, opposed and reported the defendants' wrongful and illegal practices, including the defendants' falsification of documents, to the school's corporate headquarters and to various public agencies, including the Massachusetts Department of Education.

The plaintiffs also assert other claims including claims of gender-based discrimination and sexual harassment in violation of the Massachusetts laws against discrimination, M.G.L. c.151B (First Count) and Title VII of the 1964 Civil Rights Act (Second Count). The plaintiffs also suffered harm from a number of serious wage and hour violations whereby the defendants' practices and policies violated Massachusetts laws prohibiting untimely and non-payment of wages, G.L. c. 149 § 148, and the Fair Labor Standards Act (Third Count and Fourth Count).

The parties have been actively engaged in paper discovery and conferred in an attempt to narrow the issues now before the Court.[1]

---

[1] Since the time that the plaintiff Irene Johnson finalized her answers to Interrogatories the plaintiffs' counsel has diligently and repeatedly attempted to secure signed signature pages for those Interrogatories so that she may provide them to the defendants. Despite such efforts, to date the undersigned has not been able to do so.

### III. INTERROGATORIES[2]

#### A. The plaintiffs have fully complied with Interrogatories relating to health care providers.

**Corporate Interrogatory No. 11.:** Including psychiatrists, psychologists, and social workers, identify each medical provider (including but not limited to doctors, physical therapists, hospitals and nursing homes) from whom you have sought or received medical or psychological treatment or counseling from 1990 to the present, and the symptoms or conditions for which you sought or received treatment.

**Plaintiffs' Responses:** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

**Gianelli Interrogatory No. 10.:** If you are seeking emotional distress damages, for each and every examination, treatment or care that you received from any doctor, physician, medical practitioner, mental health professional, hospital, clinic or other institution for any injury (including emotional harm) which was suffered as a result of the alleged occurrences please state:

    a.    The name and address of the doctor, physician, practitioner, mental health professional, hospital, clinic or institution;
    b.    The nature and extent of the examination, treatment or care received;
    c.    The date of the examination, treatment or care;
    d.    The inclusive dates of any period of confinement at any hospital, clinic, institution or other place, including home; and
    e.    Each and every diagnosis or prognosis, identifying each doctor, practitioner, or mental health professional by name and address.
    f.    An itemized account of all expenses incurred for the above-referenced treatment.

**Heller Response:** I did not see a medical or mental health practitioner for the emotional distress suffered as a result of the occurrences set forth in the Complaint.

**Johnson Response:** I did not treat with any provider for the emotional distress I suffered as a result of the sexual and gender harassment or the emotional distress for the events surrounding my constructive termination.

---

[2] The defendants have failed to comply with Local Rule 37.1(B)(4) requiring that they set forth the Interrogatories or Document Requests at issue with responses thereto. The plaintiffs will do so for the Court's convenience.

**Milillo Response :** I treated with Reda Ishak MD for shingles related to stress around the time I was constructively terminated from the defendants. He is located at 274 Westfield Street, West Springfield, MA 01089. I did not treat with any mental health provider for the emotional distress I suffered as a result of the sexual and gender harassment or the emotional distress for the events surrounding my constructive termination.

**Stevenson Response:** I did not see a medical or mental health practitioner for the emotional distress suffered as a result of the occurrences set forth in the Complaint.

**Argument**

Through these interrogatories the defendants presumably seek to discover information relating to the plaintiffs' emotional distress damages.[3] However, none of the plaintiffs treated with mental health care providers as a result of the harms alleged in this matter. They indicated as much in their answers to Interrogatories. Pursuant to the Local Rule 7.1 consultation requirement, the plaintiff's counsel also communicated that same fact to the defendants. (See July 11, 2005 letter from Garrow to Kohen, Defendants' Exhibit E.) Nonetheless, the defendants seek to compel such information. The plaintiffs simply cannot produce information they do not possess.

Ms. Milillo treated for the medical condition of shingles as a result of the harms alleged. She provided a complete set of her doctor's progress notes for that treatment to the defendants. If Ms. Milillo intends to rely on testimony by Dr. Ishak in support of her claim she will identify him as a treating physician during the expert phase of discovery. At that time, the defendants will have the

---

[3] The defendants advance several arguments relating to the waiver of the psychological privilege when a plaintiff puts their mental state at issue. These arguments are unavailing because the plaintiffs have not treated with mental health professionals and thus claim no privilege as a result.

4

opportunity to depose him and explore further the information provided by Ms. Milillo in response to requests for discovery.

The other information requested by the corporate defendants in Interrogatory 11 is objectionable.  The overly broad request for information relating to **"*each medical provider* (*including but not limited to doctors, physical therapists, hospitals and nursing homes*)** from whom you have sought or received medical or psychological treatment or counseling **from 1990 to the present**", is not reasonably calculated to lead to the discovery of admissible evidence.

The corporate defendant also seeks equally irrelevant and intrusive information through a signed medical release from Ms. Milillo seeking, "**all medical records regarding Katie Milillo's physical or mental health, including but not limited to:** office records; records of counseling therapy or treatment; hospital records; x-ray files; laboratory reports; medical photographs; medical or psychological diagnoses and prognoses; clinical notes; doctors' orders; nurses notes; physical therapy records; out-patient records; summaries of records; or abstracts of records" of the doctor who treated her for shingles in 2003.  It is hard to imagine how information relating to other medical conditions, such as a backache or the flu, for example, could be reasonably likely to lead to admissible evidence here.

Ms. Milillo has provided all information and documents that could be reasonably likely to lead to admissible evidence.  Whereas the defendants provide no reason why other medical records spanning 15 years are relevant to

5

this matter. A litigant's medical records may be protected from disclosure because of a patient's privacy interests. Whalen v. Roe, 429 U.S. 589, 599-600 (1977); see also Caesar v. Mountanos, 542 F.2d 1064, 1067 n. 9 (9th Cir.1977). A Court will balance the relevance of the requested documents and information against the need for privacy. Fritsch v. City of Chula Vista,187 F.R.D. 614, 633 (S.D. Calif. 1999). Federal Rule of Civil Procedure 26(c) gives this Court broad discretion to limit disclosure of even relevant information. Here the plaintiffs have fully complied with defendant Gianelli's interrogatory and with the non-objectionable portion of the corporate defendants' interrogatory 11. The Court should deny the portion of the motion to compel relating to medical information as it has already been provided.

**B.    The plaintiffs have provided multiple damages calculations.**

**Corporate Interrogatory No. 1:** With respect to the damages you seek in your Complaint, describe in detail the types and amounts of all damages you are seeking, the manner in which you or others acting on your behalf calculated such damages and all documents which relate to, refer to, or evidence such damages.

**Heller Response:** I seek treble damages for unpaid bonus and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial.

**Johnson Response:** I was promised a bonus of 5% of my pay for the year 2002 which I did not receive. I am entitled to treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial. I am also entitled to lost wages and benefits and front pay for my wrongful constructive termination in violation of public policy.

**Milillo Response:** I also was promised a bonus of 10% of my pay for the year 2002 which I did not receive. I am entitled to treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial. I am also entitled to lost wages and benefits and front pay for my wrongful constructive termination in violation of public policy.

**Stevenson Response:** I was entitled to bonuses every 90 day period in which I met certain placement requirements for students. That was precisely why I took the position with such a low salary. I was told I would receive regular bonuses. I am aware that I regularly met placement goals and only once received a bonus and I received much less than promised. The defendants CEC and Whitman would have the information as to how much money to which I am entitled. I was also led to believe that my boss Linda Monihan was receiving the bonus money that was supposed to be for me. I was paid incorrectly for over a year and was not paid promised bonuses, including yearly and promised bonuses for meeting required placement levels which I knew I had achieved through my supervisor and through Mr. Gianelli. I also was promised a bonus of 5% of my pay for the year 2002 which I did not receive. I am entitled to damages for failure to correctly pay me for approximately a whole year. I am entitled to interest based on the unpaid wages and bonuses.

**Gianelli Interrogatory No. 6:** If your answer to the preceding interrogatory is in the affirmative, please state the total amount sought and the amount attributable to each of the following:

   (a)   Wages, front or back pay;
   (b)   Raises and promotions;
   (c)   Sick pay;
   (d)   Vacation pay;
   (e)   Bonuses;
   (f)   Contributions by Defendant to pension or retirement funds or other benefit plans;
   (g)   Interest; and
   (h)   Any other payments.

**Heller Response:** I seek the money I was not paid for my bonus in 2002 and any multipliers and interest to which I am entitled as a result. I was promised 10% of my pay as a bonus by the defendants and did not receive it.

**Johnson Response:** For wage based damages I seek wages, front and back pay, compensation for lost benefits, bonuses and interest in an amount to be determined at trial. I also seek treble damages for the unpaid bonus amount for the year 2002.

**Milillo Response:** For wage based damages I seek wages, front and back pay, compensation for lost benefits, bonuses and interest in an amount to be determined at trial. I also seek treble damages for the unpaid bonus and wages.

**Stevenson Response:** I was entitled to bonuses every 90 day period in which I met certain placement requirements. That was precisely why I took the position

with such a low salary. I was told I would receive regular bonuses. I am aware that I regularly met placement goals and only once received a bonus and I received much less than promised. The defendants CEC and Whitman would have the information as to how much money to which I am entitled. I was also led to believe that my boss Linda Monihan was receiving the bonus money that was supposed to be for me. I was paid incorrectly for over a year and was not paid promised bonuses, including yearly and promised bonuses for meeting required placement levels which I knew I had achieved through my supervisor and through Mr. Gianelli. I also was promised a bonus of 5% of my pay for the year 2002 which I did not receive. I am entitled to damages for failure to correctly pay me for approximately a whole year. I am entitled to interest based on the unpaid wages and bonuses. Treble damages for unpaid bonuses and wages and damages for sexual harassment including emotional distress and punitive damages in an amount to be determined at trial.

**Argument**

The plaintiffs have provided multiple damage calculations during the pendency of this litigation. They provided detailed demand letters in the early stages of this litigation, one to the President of Career Education Corporation, the other to the defendants' counsel of record. In their Initial Disclosures the plaintiffs set forth the categories of damages to which they believe they will be entitled if they prevail in this matter. Thereafter they answered interrogatories and provided all non-objectionable documents in their possession and control upon which they intend to rely for their damages, as is evident from the responses above. Once again the defendants are requesting that the plaintiffs provide information which they have already provided.

**C. The defendants are not entitled to unemployment compensation information for Johnson and Milillo.[4]**

**Corporate Interrogatory No. 2 to Johnson and Milillo:** Beginning from the commencement of your employment with Defendants, and continuing until the present, describe every source of income you received including, but not limited to, worker's compensation and unemployment compensation, social security or

---

[4] The other two plaintiffs do not have claims for wrongful termination and have not made claims for lost wages other than for unpaid bonuses.

8

similar payments or benefits, or disability payments, and the total amount you received or to which you became entitled.

**Johnson and Milillo Response:** Objection: This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

**Argument**

Under Massachusetts law, the collateral source rule bars a Court from applying an offset for unemployment benefits to a plaintiff in tort's damage award. "A defendant may not show that the plaintiff has received other compensation for his injury, whether from an accident insurance policy . . . from workmen's compensation,. . . from an employer, . . . or from other sources . . .." Goldstein v. Gontarz, 364 Mass. 800, 808-809 (1974). A substantial basis for the allegations of wrongful termination made by Ms. Johnson and Ms. Milillo sound in tort. Each has alleged the tort of wrongful termination in violation of public policy. Under the Massachusetts common law rule, the receipt of collateral income does not lawfully reduce the plaintiffs' damages, and such evidence is thus inadmissible. Id. at 809.

In addition, the vast majority of federal appellate courts which have addressed the issue have concluded that in employment-related cases income derived from collateral sources such as unemployment compensation should not be offset against awards for lost past or future wages. See e.g., NLRB v. Gullett Gin Co., 340 U.S. 361, 71 S.Ct. 337 (1951)(unemployment compensation not deductible from back pay award under remedial statute, NLRA); Thurman v. Yellow Freight Sys. Inc., 90 F.3d 1160 (6th Cir 1996)(holding that unemployment compensation and workers' compensation were not offsets against back pay

9

award in employment case); Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104, 1112-14 (8th Cir. 1994), cert. denied, 513 U.S. 946, 115 S.Ct. 355 (1994) (unemployment benefits are not offset against back pay award in wrongful termination ADEA case); Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1429 (7th Cir. 1986)(applies the collateral source rule and notes a growing reluctance by judges to deduct unemployment benefits from back pay awards); Guthrie v. J.C. Penney Co., Inc., 803 F.2d 202, 209 (5th Cir. 1986)(finding in an employment case, collateral sources including unemployment compensation should not reduce back pay awards); Craig v. Y & Y Snacks, Inc., 721 F.3d 77, 81-85 (3rd Cir. 1983)(finding in employment discrimination case that unemployment compensation not deductible from back pay award); Lussier v. Runyon, 50 F.3d 1103, 1107-10 (1st Cir. 1995). Brown v. A.J. Gerrard Mfg. Co., 695 F.2d 1290, 1293 (11th Cir.1983)(holding that unemployment compensation benefits should not be deducted from Title VII back pay awards); Kauffman v. Sidereal Corp., 695 F.2d 343, 346-47 (9th Cir.1982)(plaintiff's award in employment discrimination case should not be offset by the amount of unemployment compensation).

     Under the collateral source rule, an employer is entitled to no credit for moneys paid to the injured employee by third parties. Gaworski, 17 F.3d. at 1112-14. To allow such a credit would provide a windfall to the employer, the party who engaged in wrongful termination. Brown, 695 F.2d at 1293. To allow the employer to benefit by deducting from damages owed amounts paid to an

employee by a collateral source amounts to a bonus to the wrongdoer. A result, no doubt, that the collateral source rule seeks to avoid.

The First Circuit recognizes that unemployment compensation is a collateral benefit. It remains among a small minority of federal appeals courts that have not yet held that unemployment compensation must not be deducted from awards of back pay damages in employment cases. Quint v. A. E. Staley Mfg. Co., 172 F.3d 1 (1st Cir. 1999). See also Daniel v. Loveridge, 32 F.3d 1472, 1479 n.4(10th Cir. 1994); Promisel v. First American Artificial Flowers, Inc., 943 F.2d 251, 258 (2d Cir. 1991). Each of these Circuits has found that it is within the district court's discretion to not reduce a back pay award by the amount of unemployment compensation collected by a plaintiff. See id.

The Court here should follow the rationale of the majority of the federal appellate circuits and the Massachusetts Supreme Judicial Court and exercise its sound discretion. The Court should not allow a wrongdoer bonus to inure to the defendants and should deny the defendants motion to compel evidence relating to collateral unemployment benefits.

**Corporate Interrogatory No. 7:** State whether you have obtained or expect to obtain a written statement from any individual concerning the facts of this case, and identify each such written statement.

**Plaintiffs' Responses:** Objection: This interrogatory calls for attorney work product.

**Argument**

The defendants argue that they are entitled to a witness statement taken by the plaintiff's counsel during the pendency of the litigation. The statement is attorney work-product and was withheld on that basis. The attorney work-

11

product doctrine protects trial preparation material that reveals an attorney's strategy, intended proof and evaluation of case strengths. Fed. Rule Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 510-511(1947). Even work-product that is only conditionally protected may only be disclosed upon a showing of good cause. United States v. Nobles, (1975) 422 U.S. 225, 239. To show good cause, a party seeking disclosure must show a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). The defendants have failed to do so. In fact, they could seek to depose Ms. Biscaldi and presumably get the information they seek. The witness statement of Mary Biscaldi should be afforded work-product protection and the motion to compel its disclosure should be denied.

### IV.     CONCLUSION

For the foregoing reasons, the Court should deny the defendants Motion to Compel and award attorney's fees and costs to the plaintiffs for having to respond to those parts of this Motion in which the information has already been provided in full to the defendants.

Respectfully submitted,

THE PLAINTIFFS
By their attorney,


   /s/ Suzanne Garrow
Suzanne Garrow BBO # 636548
Joel H. Feldman BBO # 552963
Heisler, Feldman & McCormick, P.C.
1145 Main Street, Suite 508
Springfield MA  01103
(413)788-7988
(413)788-7996 (fax)

Dated: September 13, 2005

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing document was served by electronic mail upon the attorneys of record for the defendants on September 13, 2005.

      /s/ Suzanne Garrow
      Suzanne Garrow