UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KATIE MILLIO, IRENE JOHNSON JANINE HELLER and TOMAYITA STEVENSON,<br><br>            Plaintiffs,<br><br>v.<br><br>ULTRASOUND DIAGNOSTIC SCHOOL WHITMAN EDUCATION GROUP, CAREER EDUCATION CORP., and LOUIS GIANNELLI,<br><br>            Defendants. | )<br>)<br>)<br>)<br>) DOCKET NO. 04-CV-30130-MAP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY AGAINST ULTRASOUND DIAGNOSTIC SCHOOL, WHITMAN EDUCATION GROUP AND CAREER EDUCATION CORPORATION**

### I.   INTRODUCTION AND STATEMENT OF FACTS

The defendants employed all of the plaintiffs over the last few years. The defendants operated Ultrasound Diagnostic School, a for-profit secondary school which purported to train its students for a career in the medical fields of diagnostic medical sonography, cardiovascular technology, medical assistant training, and surgical technology.

During the plaintiffs' tenure, they observed practices and policies which they believed were unlawful and wrong, including practices aimed at enrolling unqualified students for profit and failing to adequately train them for their roles as medical professionals.[1] While they were

---

[1] The facts described in this Memorandum are drawn from the plaintiffs' complaint in this case, unless otherwise noted.

1

employed, the plaintiffs have also alleged that they were subjected to an ongoing campaign of gender and sexual harassment by their supervisor, defendant Louis Gianelli. Plaintiffs further claim harm from a number of serious wage and hour violations whereby defendants' practices and policies violated state and federal laws.

The plaintiffs have brought claims in this case for defendants' violations of the state and federal anti-discrimination laws by creating and fostering a sexually and gender hostile work environment, wrongful treatment and constructive discharge in violation of Massachusetts laws and public policy, and for compensatory and treble damages under the Massachusetts laws prohibiting non-payment of wages, G.L. c. 149 § 148, and also under the Fair Labor Standards Act.

The plaintiffs served the defendants with written discovery in April, 2005 and received responses thereafter. They now move this court for adequate responses to their requests, as delineated below.

## II.  ARGUMENT

The plaintiffs will note the written discovery request and response (or groups of requests and responses) and then provide argument below.

### A.  INTERROGATORIES

Interrogatory 1.    Please state the name, address, occupation and place of employment of the person or persons answering these interrogatories, and their relationship to defendant(s).

Response 1.    Defendants object to Interrogatory No. 1 on the grounds that the information sought is protected by the attorney-client privilege, the attorney work product doctrine and/or Fed. R. Civ. P. 26(b) 3. Subject to and without waiving the foregoing objections, Defendants are answering these Interrogatories.

ARGUMENT ON INTERROGATORY 1
===

The plaintiffs here seek to know the "person or persons" answering the Interrogatories. The question is a basic one: who is providing the answers to the written questions asked by the plaintiffs, which then may be the subject of further examination at a deposition, or the subject of cross examination at trial. The request clearly will lead to discoverable evidence, as the person(s) answering are those with knowledge of the answers to the other questions asked in the Interrogatories.

The defendants first objected that the name of the person answering is protected by the various privileges cited. The defendants then unhelpfully noted that the defendants, all of the corporations and entities sued by the plaintiffs, were answering the questions. The defendants finally refined their answer through the conference with counsel by saying that Career Education Corporation answered the Interrogatories.[2]

The objections and failure to answer by the defendants borders on the frivolous. The plaintiffs are entitled to know who answered the Interrogatories, in order to later depose the responder and to determine who has the broadest knowledge of the facts contained in the Interrogatories. No privilege applies. The plaintiffs asked for the "persons" who actually answered the questions, and the defendants provided the name of the corporate defendant. The response should be provided.

Interrogatory 2.    Identify each person known to you who has any knowledge relating to the facts or circumstances of the factual allegations made in the Complaint or in any pleading asserting a claim or defense in this action. Include in your answer names, addresses, telephone

---

[2] This answer, provided by supplemental letter mailed August 16, 2005, was not provided under the pains and penalties of perjury, and does not constitute a supplemental answer. The supplemental letter is attached as Exhibit 1 to this Memorandum.

3

numbers, and job titles and a brief description of the individual's knowledge with regard to the said allegations.

Response 2.    Defendants object to Interrogatory No. 2 on the grounds that it is overbroad, unduly burdensome and requests information beyond that which is required by the Federal Rules of Civil Procedure.  Defendants further object to Interrogatory No. 2 on the grounds that the information sought is protected by the attorney-client privilege, the attorney-work product doctrine and/or Fed. R. Civ. P. 26(b)(3) and has previously been produced in the Defendants' initial disclosures.

## ARGUMENT ON INTERROGATORY 2

The plaintiffs asked for the names of witnesses and those persons who had knowledge of the facts of the case.  The defendants then objected, first saying that the questions were overly burdensome, second saying that the question sought answers protected by privilege and third that the information "has previously been produced in the Defendants initial disclosures".

The plaintiffs have specifically asked the defendants to produce the identification of those persons who have information to offer about the facts alleged in the complaint or in the defenses to the complaint in this case.  The request is relevant; persons with knowledge are those witnesses and other persons who may be deposed in the case, or who may offer information related to the case.  The request does not seek any information about communications between attorney and client, nor does the request seek the notes of an attorney, for example.  The plaintiffs simply want the list of persons who have knowledge of the case and their identifying information, including addresses and contact information.

After the objections were registered by the defendants in their Response to the document requests, they noted that the information was "previously produced" in their disclosures. However, after the plaintiffs then requested confirmation that the initial disclosures of the witness names comprehensively answered the Interrogatory, the defendants admitted in Exhibit 1

4

that "we cannot so confirm", i.e., the disclosures did not answer the Interrogatory even though the defendants made this claim in their original responses.

 The plaintiffs are entitled to a complete response to this Interrogatory.

Interrogatory 11. Over the past ten (10) years, has any employee of one or both of the defendants filed a complaint against the defendant(s) or any manager, supervisor or agent of the defendant(s) with the Massachusetts Commission Against Discrimination?

Response 11. Defendants object to Interrogatory 11 on the grounds that it is overbroad, unduly burdensome and seeks information not relevant to the subject matter of this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence.

ARGUMENT ON INTERROGATORY 11

 The plaintiffs seek to discover information related to other claims by other employee of incidents of discrimination, including sexual and gender harassment. These incidents of harassment may have been (1) made by the same alleged harasser in this case or (2) made by individuals with the same supervisors as the plaintiffs'. This information is highly probative of the hostile environment that may have prevailed at the work site of the plaintiffs and will also shed light on the defendants' handling of analogous claims. More generally, this Interrogatory may also provide witness information.

 Such evidence, if discovered, is relevant because the plaintiffs may establish their claim through the use of circumstantial evidence, including evidence of the defendants' discriminatory actions and inaction toward other employees. *See e.g. Cummings v. Standard Register Co.*, 265 F.3d 50, 63 (1st Cir. 2001). In other words, the plaintiffs can potentially show the discriminatory animus of Mr. Gianelli or the corporate defendants against the plaintiffs through the complaints of other employees who have similar claims against the defendants. This circumstantial evidence may be relied on, as the First Circuit Court of Appeals noted, because "discrimination is often subtle and pervasive…to this end, evidence of a discriminatory

5

'atmosphere' may sometimes be relevant to showing the corporate state-of-mind…." *Id.* Such evidence "tend[s] to add "color" to the employer's decision-making processes and to the influences behind the actions taken with respect to the individual plaintiff." *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987).

Evidence of other complaints may lead to admissible circumstantial evidence concerning the atmosphere pervasive at the plaintiffs' workplace, and may help to uncover what courts have described as the "subtle, insidious character" of discrimination. *Id.* Accordingly, the response to this Interrogatory should be compelled.

Interrogatory 13.    Describe in complete detail the substance of every communication between any agent, officer or employee of the defendant(s) and anyone else other than the plaintiffs at any time during any plaintiff's employment during which communication the plaintiffs' current and former employment status with the defendant(s) was mentioned or discussed, and include for each such communication the names and addresses of the persons involved in the communication, the date of the communication, and whether the fact that the plaintiffs had complained of sexual harassment was mentioned either directly or indirectly during the course of each such communication and whether any documents were reviewed or generated and, if so identify those documents. As to each communication include the following:

      a)    The date of each such communication;

      b)    The name, address, and relationship to the defendant(s), if any, of the person(s) who participated in each such communication;

      c)    Whether each such communication was written or oral, and, if oral, whether the communication took place in person or over the telephone; and

      d)    the name(s) of the person(s) who initiated the communication.

Response 13.    Defendants object to Interrogatory 13 on the grounds that it is overbroad, unduly burdensome, harassing and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence. Defendants further objects (sic) to the extent the information sought is protected by the attorney-client privilege, the attorney-work product doctrine and/or Fed. R. Civ. P. 26(b)(3)

## ARGUMENT ON INTERROGATORY 13

The plaintiffs here specifically seek whether the "fact that the plaintiffs had complained of sexual harassment was mentioned" by the defendants. See Interrogatory 13, above. Additionally, the defendants have sought during discovery to claim that the plaintiffs engaged in misconduct during their tenure with the defendants, as occurred at the depositions of the plaintiffs which have taken place to date. The plaintiffs are therefore entitled to know if any good conduct or other alleged bad conduct was further discussed by the defendants during the plaintiffs' employment.

The request seeks communications about the plaintiffs concerning the central allegations of this case, namely the sexual harassment of the plaintiffs and their allegations of falsifying information about student grades. This is relevant information that could be introduced at the trial of this case. The request should require a complete response.

Interrogatory 19.    Over the past ten (10) years, has any employee of one or both of the defendants made any complaint, oral or in writing, internally or externally, against the defendant(s) or any manager, supervisor or agent of the defendant(s) for sexual or gender harassment?

Response 19.  Defendants object to Interrogatory 19 on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence. Subject to and without waiving the foregoing, during Plaintiffs' employment, no Plaintiff made any complaint, oral or in writing, internally or externally, concerning sexual or gender harassment by any manager, supervisor or agent of Springfield Ultrasound Diagnostic School.

Interrogatory 20.    If the answer to the preceding Interrogatory is affirmative, please set forth the name, address and phone number of each such employee, the date each such complaint was made, a brief description of the complaint asserted against one or both of the defendants or the manager, supervisor or agent of the defendant(s), the dates of the complainant's employment with the defendant(s), and the date and reason for the separation of their employment with the defendant(s), if applicable.

Response 20.  Defendants incorporate their response to Interrogatory No. 19.

### ARGUMENT ON INTERROGATORIES 19 AND 20

The plaintiffs incorporate herein their argument concerning responses to Interrogatory 11. In essence, the plaintiffs seek to learn whether other persons have been subjected to, or complained of, sexual or gender harassment, or discrimination based upon a protected classification more generally, while working for the defendants. While Interrogatory 11 sought to know whether actual discrimination complaints were filed with an agency, these two Interrogatories seek information about complaints which may not have lead to actual court or agency filings. The import is the same, as the complaints will provide evidence of the atmosphere prevalent at the worksites of the corporate defendants and evidence of those defendants' actions or inactions with regard to complaints.

Interrogatory 24.   Please describe in detail any investigation undertaken by any defendant in response to any complaints of any plaintiff concerning the behavior of Mr. Gianelli, the failure to pay overtime or other wages to the plaintiffs, or the alleged falsification of student records or performance, as described above, and include in your answer the name(s) of any person who undertook such investigation, the method of investigation undertaken, the identities of all persons interviewed, the identity of all documents reviewed, the dates of such investigation, the findings of the investigation, the identity of any document which contains the investigation and findings of the person, and any response of the defendants to any report produced by the investigator.

Response 24.  Defendants object to Interrogatory No. 1 on the grounds that the information sought is protected by the attorney-client privilege, the attorney work product doctrine and/or Fed. R. Civ. P. 26(b) 3.  Subject to and without waiving the foregoing objections, Defendants incorporate by reference their foregoing responses to Interrogatories.

### ARGUMENT ON INTERROGATORY 24

The defendants have, admittedly at this point, failed to provide any information about the sexual harassment complaints made by the plaintiffs, despite incorporating all of the responses to every Interrogatory answered earlier.  After the conference between the parties prior to the filing

8

of this Motion, the defendants noted in a "privilege log" incorporated as Exhibit 1 that "we have withheld documentation of an investigation into the written complaints of harassment made by plaintiffs Millilo and Johnson in the Fall of 2003…" on the grounds of attorney-client privilege, work-product privilege and F.R.C.P. 26 (3).

The defendants' claims of attorney-client privilege and attorney work product to deprive the plaintiffs of information included in notes, reports and other information relating to the alleged investigation of their claims are unavailing. Suffice it to say, that in a case including issues almost exactly similar to this one, *Harding v. Dana Transp., Inc.,* 914 F. Supp. 1084(D.N.J. 1996), the Court ordered discovery of investigative materials including notes which contained the impressions of an attorney investigator. The Court found that the employer affirmatively placed the communications "at issue" and waived any privileges because of its "reliance upon the investigation" as a defense to liability under federal and state law. *Id.* at 1093, 1099.

The *Harding* Court determined that the defendant could not, on the one hand, claim as a defense the adequacy of its investigation and then shroud itself and information regarding the investigation, in attorney-client privilege or in the privilege encompassing attorney work-product. In *Harding*, much like here, prior to the filing of that plaintiffs' lawsuit, the employer hired an attorney (from the same firm that later became its trial counsel in the subsequent lawsuit) to investigate the plaintiffs' claims. The attorney interviewed the employer's president, controller and managers. As with the plaintiffs here, the employer in *Harding* used information and results of the attorneys' claimed investigation to prepare a position statement to respond to the charges the plaintiffs filed at the state anti-discrimination administrative agency.

During discovery in the lawsuit in *Harding*, the plaintiffs' counsel sought production of the investigating attorney's investigative materials (including attorney notes, tape recordings, time sheets, billing records and correspondence to and from the client). The employer invoked the attorney-client and self-critical analysis privileges and claimed work product, attempting to secure a protective order prohibiting the investigative lawyer's deposition and barring discovery of his files and records. *See Harding*, 914 F. Supp. at 1048. The Court ordered that the plaintiff was entitled to discover the broad range of investigative materials sought prepared the attorney investigator. The Court concluded that a defendant cannot use a privilege "as both a sword and a shield." *Id*. at 1096.

In cases similar to this one, courts have followed similar reasoning as did the *Harding* court. *See McGrath v. Nassau County Health Care Corp*., 204 F.R.D. 240, 244 (E.D.N.Y. 2001); *Worthington v. Endee*, 177 F.R.D. 113, 116 (N.D.N.Y. 1998); *Sealy v. Gruntal & Co*., 1998 WL 698257 at * 4-5 (S.D.N.Y. 1998); *Pray v. New York City Ballet Co.*, 1997 WL 266980, *1-3 (S.D.N.Y.1997); *Peterson v. Wallace Computer Services, Inc.*, 984 F. Supp. 821 (D. Vt. 1997). Courts also routinely recognize that the plaintiff may discover privileged documents and information if they have a substantial need for such documents. *See Pray*, 1997 WL 266980, *1-3. *See also Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001); *Brownell v. Roadway Package System, Inc.*, 185 F.R.D. 19, 26 (N.D.N.Y. 1999)(The court found that because the investigative documents were "crucial to the determination of whether or not [the employer] can be held liable," the plaintiff demonstrated the "substantial need" necessary to compel their production).

In their answer, the defendants deny that no one from the corporate offices addressed the plaintiffs' complaints and the sexual comments of Mr. Gianelli. Answer to Complaint § 39.

10

They further deny that Mr. Gianelli's behavior went unremediated, Answer to Complaint § 40.

Finally, the defendants claim in their Fourth Separate Defense that

> Defendants have in place a strong policy against discrimination and harassment and otherwise exercised reasonable care to prevent and correct promptly any discrimination and harassment to which Plaintiffs claim they were subjected, and Plaintiffs unreasonably failed to take advantage of the preventive or corrective opportunities provided by the Defendants to avoid harm otherwise, and Defendants have otherwise acted in good faith to prevent and/or remedy discriminatory or harassing conduct.

Under this defense, in combination with the Answer provisions noted above, the defendants appear to claim that they conducted an adequate investigation and are relying on their alleged investigation to show that they "exercised reasonable care to prevent and correct promptly any discrimination or harassment to which Plaintiffs claim they were subjected." There is no doubt that an investigation was conducted, as the defendants have claimed the privileges noted above for the inquiry into the claims of harassment by the plaintiffs. As in *Harding,* the defendants may not use claims of privilege as both a "sword and a shield" and have waived any privilege relating to communications, documents, notes, records and impressions based on their "reliance upon the investigation." To the extent the defendants have "telegraphed" that they will use the results of their investigation, and the fact of the investigation itself, to defend against the plaintiffs' claims, the documents relating to the investigation must be provided to the plaintiffs, and the defendants have waived any privilege.

### B.  REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Request 24.  For purposes of calculating punitive damages, defendant(s) state and federal income tax returns for the most recent five years in which they have been filed.

Response 24. Defendants object to Document Request 24 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

Request 25.   For purposes of calculating punitive damages, all documents reflecting defendant(s) current assets and/or liabilities and net worth.

Response 25. Defendants object to Document Request 25 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

Request 26.   For purposes of calculating punitive damages, all documents reflecting for each of the past three years the gross revenues, expenses and profits and/or losses incurred by defendant(s).

Response 26. Defendants object to Document Request 26 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

Request 27.   For purposes of calculating punitive damages, a copy of defendant(s) most recent net worth statement prepared by or for you.

Response 27. Defendants object to Document Request 27 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

Request 28.   For purposes of calculating punitive damages, a copy of any appraisal, conducted at any time since January 1, 2000, of any business or personal or real property owned by defendant(s).

Response 28. Defendants object to Document Request 28 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

Request 29.   For purposes of calculating punitive damages, a copy of all 2003 and 2004-current year-end statements reflecting the account number and balance of any accounts owned by defendant(s), including savings, checking, annuities, or mutual, stock or bond funds.

Response 29. Defendants object to Document Request 29 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

Request 30.   For purposes of calculating punitive damages, a copy of all 2002- current year-end statements reflecting the account number and balance of any loans or indebtedness owned by you, including but not limited to mortgages or tax liens.

Response 30. Defendants object to Document Request 30 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

ARGUMENT ON DOCUMENT REQUESTS 24-30

The defendants claimed through the parties' conferring on discovery issues, that under state law, M.G.L. c. 151B, the defendant has the burden of demonstrating its net worth to reduce a potential damages award, citing *Horney v. Westfield Gage Co.*, 77 Fed. Appx. 24, 34 (1st Cir. 2003). The defendants claim in their letter of August 16, 2005 is misplaced. The *Westfield Gage* court explicitly noted that "under **Federal law**, the burden of showing net worth is placed on the defendant." (emphasis added). No such doctrine has been cited by the defendants under c. 151B. As a result, the plaintiffs are entitled to provide proof to a jury of the defendants' net worth, as net worth is relevant to the award of punitive damages under c. 151B. *See, e.g., Beaupre v. Smith & Associates*, 50 Mass. App. Ct. 480 (2000)(Appeals Court determines that judge's refusal to limit punitive damages jury instruction to consideration solely of present net worth only was not error). The plaintiff is entitled, under state law, if he/she so chooses, to put on evidence of the net worth of the defendants.

Additionally, despite the defendants offer in Exhibit 1 to eventually provide the net worth information if they will rely on it at trial, the plaintiffs are entitled to the information now, as it might lead to admissible evidence at trial. The plaintiffs have a right, under the discovery rules, to depose relevant witnesses concerning the net worth information which may be introduced at trial as part of the defense to the case. There is no basis for denying the plaintiffs' their immediate right to explore the information which may be used at trial by the defendants. To disallow discovery on this point would be to bifurcate discovery into a discovery phase and a later phase, just before trial, when the defendants let the plaintiffs know whether they will be introducing net worth information. Like all discovery production, the defendants may seek to prevent the use of net worth discovery at trial. But the net worth discovery requested may lead

to admissible evidence, by the admission of the defendants in Exhibit 1 that they may choose to introduce the documents at trial.  The discovery should be produced now.

Request 36.    All documents which detail or reflect any investigation undertaken by any defendant in response to any complaints of any plaintiff concerning:

    a.    the behavior of Mr. Gianelli as noted in the complaint;
    b.    the failure to pay overtime or other wages to the plaintiffs;
    c.    or the alleged falsification of student records or student performance.

Response 36.  Documents will be produced for inspection and copying to the extent any exist.

### ARGUMENT ON DOCUMENT REQUEST 36

The defendants failed to object to this request, and so have waived any objection they may have to providing the requested information.  Fed. R. Civ. P. 34.  The defendants have identified through Exhibit 1 that an investigation was conducted into the sexual harassment allegations of the plaintiffs, but these documents, which clearly "exist", have not yet been provided.  Without having asserted an objection, no objection has been put forward and the investigation documents must be provided.

To the extent this court considers the insertion of a new privilege objection (which should be considered waived at this point), the plaintiffs incorporate their arguments under Interrogatory 24, above, which should require production of the documents requested.[3]

Request 37.    All documents which detail or reflect the response of any defendant to the documents received by it concerning the investigation noted in the previous request.

Response 37.  Defendants objects (sic) to Document Request 37 on the grounds that it is nonsensical and incomprehensible.

---

[3] The defendants in their August 16, 2005 letter, noted that the investigation documents sought were "privileged" but provided no information at all about how the documents were produced, who conducted the investigation, and why the documents were specifically privileged.  Instead the defendants proferred a general privilege noting that the documents were attorney-client privileged or were work product.  The defendants must at least allow the plaintiffs to probe the reason offered to determine if they are valid.

14

ARGUMENT ON DOCUMENT REQUEST 37

The request is quite clear, despite the defendants' inability to understand it. The plaintiffs seek the documents which describe the defendants' response to the investigation documents it received. Given the clarity of the request, and the lack of any objection other than the defendants claim that it cannot be understood, the documents should be produced.

Request 42.     All documents submitted by or on behalf of any student of the defendants seeking federal student loans or loans or grants of any kind.

Response 42.  Defendants object to Document Request 42 on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence.

ARGUMENT ON DOCUMENT REQUEST 42

The plaintiffs wish to determine whether the defendants have falsified records of any students of the defendants, a claim plead with specificity in the complaint. See, Complaint at ¶ 42. The plaintiffs will agree to narrow the records in some manner to make the search less burdensome, such as identifying specific students' documents. In particular, the plaintiffs are willing to limit this request to (1) the records of students identified by plaintiff Millilo in her letter and supporting documentation dated September 15, 2003 and (2) those students identified in the "Compliance Review" report of Michael Schafer. But the plaintiffs are entitled to determine whether students' records were falsified, as the claim that they were discharged for making these allegations is central to the case, and has been allowed to go forward by this court.

C.     ELECTRONIC MAIL

The plaintiffs have so far not received copies of relevant electronic mail requested from the defendants. The plaintiffs have produced to the defendants at least one electronic mail

15

message of a sexually suggestive nature sent by Mr. Gianelli to women employees, but never received the document in the defendants' discovery responses. See Exhibit 2, electronic mail forwarded by Mr. Gianelli to plaintiff Tomayita Stevenson.[4]

      This raises the question for the plaintiffs of whether the electronic mail of Mr. Gianelli, and any recipient of electronic mail from Mr. Gianelli, was preserved and produced to the plaintiffs. The request for preservation was made on in an October 10, 2003 letter from the plaintiffs to John Larson, President and C.E.O. of defendant Career Education Corporation. The preservation of these materials is also required by law.

      The plaintiffs therefore seek an order from this court requiring the defendants to review the computer records of their employees, conduct a forensic analysis of the computers of their employees at the Springfield location of U.D.S., determine whether such electronic mail exists, and produce it to the plaintiffs.

---

[4]Exhibit 2 includes only some pages from the complete electronic mail message, as additional recipients and senders, and some additional pages from the comic strip have been redacted.

### III.     CONCLUSION

For the reasons noted above, the plaintiffs request that the defendants produce responses to the Interrogatories and Requests for the Production of Documents noted above.

|  |  |
|---|---|
| | THE PLAINTIFFS<br>By his attorneys,<br><br>_____<br>Joel Feldman |
| I hereby certify that a<br>true copy of the above<br>document was served upon<br>the defendant's attorney<br>by mail (by hand) on<br>_____. | BBO # 552963<br>Suzanne Garrow<br>BBO # 636548<br>Heisler, Feldman & McCormick<br>1145 Main Street, Suite 508<br>Springfield MA  01103<br>(413)788-7988 |
| _____ | (413)788-7996 (fax) |
| Dated:_____ | |