UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATIE MILILLO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON,<br><br>*Plaintiffs,*<br><br>vs.<br><br>WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,<br><br>*Defendants.* | CASE NUMBER: 04-30130-MAP |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO QUASH AND FOR A PROTECTIVE ORDER[1]**

**I.    INTRODUCTION**

This is an action for equitable relief and compensatory and punitive damages brought by the plaintiffs.

In particular, plaintiff Katie Milillo and others bring this action against the defendants as former employees of Ultrasound Diagnostic School (now known as Sanford Brown Institute), a school which purports to train its students for a career in the medical field including training in such fields as diagnostic medical sonography, cardiovascular technology, medical assistant training, and surgical technologist.  Ms. Milillo alleges that she observed Defendants' various corrupt and, at times, illegal policies and practices aimed at enrolling unqualified students

1

for profit, and failing to adequately train them for their roles as medical professionals.  Also during the course of her employment, she and the other plaintiffs were subjected to an ongoing campaign of gender and sexual harassment by their supervisor, Mr. Gianelli.  The plaintiffs also allege that they suffered harm from a number of serious wage and hour violations whereby the defendants' practices and policies violated state and federal laws.

All of Ms. Milillo's claims against the defendants relate to actions and omissions of the defendants which occurred **prior to her leaving their employment** in September, 2003.

The corporate defendants have served deposition subpoenas on Porter and Chester Institute, Premier Education Group and Northeast Dental Associates.[2] Plaintiff Milillo has filed a motion for a protective order pursuant to Fed.R.Civ.P. 26(c) in which she seeks an order quashing the deposition subpoenas served by the  corporate defendants upon her subsequent employers, or limiting disclosures at any such deposition to information related to the financial compensation and other employee benefits provided to Ms. Milillo during the course of her employment with her subsequent employers.

## II.	PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Milillo terminated her employment with the Defendants effective September, 2003.  Months **after** her employment with the Defendants ended, Ms. Milillo obtained employment as an office manager at Northeast Dental.  She

---

[1] The defendant also served a subpoena on Wing Memorial Hospital seeking plaintiff Johnson's subsequent employment records.  The plaintiffs oppose production of such information but understand that Wing has already sent the defendant the documents.

then was employed as a teacher at Porter and Chester Institute and then with Branford Hall, a school with the Premier Education Group.

The corporate defendants served deposition subpoenas on Porter and Chester Institute, Premier Education Group and Northeast Dental Associates in which they express their intent to seek "any and all documents relating or referring to Katie Milillo and her employment including, but not limited to: any application for employment or resume submitted, personnel file, time records, pay records, employment contracts or agreement, performance reviews, disciplinary records, job duties or responsibilities, interview notes, and description of employee benefits either entitled to or received."

Plaintiff has supplied the defendants with information regarding her rates of pay and hours at subsequent employment. Defendants may inquire further about that information and regarding benefits information at Ms. Milillo's upcoming deposition. The corporate defendants also sought in Document Request No. 6, "All documents obtained or received by you concerning the amount and source of income received by you or accruing to you during and after your employment with Ultrasound Diagnostic School, including, but not limited to: payroll stubs; W-2 forms; 1099 forms; federal, state and local income tax returns; and summary plan descriptions." The plaintiffs objected on the grounds that "much of the evidence sought is not reasonably calculated to lead to the discovery of admissible evidence," and produced non-objectionable documents. The defendants chose not to move to compel such information.

---

[2] The defendants served a subpoena on Northeast Dental in Brookline, MA. Ms. Milillo worked for Northeast dental in Wilbraham, MA.

3

### III. LEGAL ARGUMENT

    A.    THE PLAINTIFF'S CONDUCT AND PERFORMANCE AS AN EMPLOYEE OF A DIFFERENT EMPLOYER DURING A PERIOD OF EMPLOYMENT **SUBSEQUENT** TO THE TERMINATION OF HER EMPLOYMENT BY THE DEFENDANTS IS WHOLLY IRRELEVANT TO THE ISSUES IN THIS PROCEEDING, AND THE INFORMATION SOUGHT BY THE DEFENDANTS IS NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE. AND CAN ONLY BE SOUGHT TO UNREASONABLY ANNOY, EMBARRASS AND OPPRESS THE PLAINTIFF.

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." This rule is not limitless.

The corporate defendants can make no showing as to what admissible evidence might be obtained through the discovery which they seek to extract from Ms. Milillo's subsequent employers. The validity of Ms. Milillo's claim of a hostile environment while employed by the defendants and of her constructive discharge claim will be determined by the factual circumstances leading up to her eventual decision to terminate her employment with the defendants in September, 2003. There can be no possible relevance to any information about her work history at subsequent employers.[3]

Even if the Court were to find that the information sought by the corporate defendants in this case falls within the general parameters established under

---

[3] The only information that may be relevant is pay information. Ms. Milillo has provided non-objectionable information in her answers to interrogatories. No further information was sought by the defendants.

4

Fed. R. Civ. P. 26(b), the Court must still consider the propriety of a protective order under Rules 26(c) and 30(d).  Rule 26 allows the Court to:

> "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: " (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; … (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters ..."

This general rule is buttressed by Rule 30 (d) which permits the Court to "limit the scope and manner of the taking of the deposition as provided in Rule 26 (c)" if it is found that the deposition is "being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party."

As noted by the court in the case of <u>Carlson Companies, Inc. v. Sperry & Hutchinson Co.</u>, 374 F.Supp. 1080 (D.C.Minn. 1974):

> [When discovery requests] approach the outer bounds of relevance and the information requested may only marginally enhance the objectives of providing tot he parties or narrowing the issues, the Court must then weigh that request with the hardship to the party from whom the discovery is sought.

374 F.Supp. at 1088.  In the present case, the corporate defendants seek to rummage through Ms. Milillo's confidential personnel records at entirely different employers in the hopes that such a search will uncover kernels of evidence of dubious relevance or probative value. There are strong public policy reasons why this Court should decline to permit such a fishing expedition at the expense of Ms. Milillo's privacy interests.

If individuals with claims of employment discrimination opened themselves up to broad-ranging discovery probes into every aspect of their subsequent

5

employment relationship merely by filing complaints under Title VII, the ability of such individuals to exercise their rights under such laws against discrimination would be seriously chilled.  As found by the Court in Priest, the possibility that discovery tactics aimed at obtaining disclosure of intimate aspects of plaintiff's lives "might intimidate, inhibit or discourage Title VII plaintiffs … from pursuing their claims would clearly contravene the remedial effect intended by Congress in enacting Title VII, and should not be tolerated by the federal courts." Priest v. Rotary, 98 F.D.R. 755, 761 (N.D.Cal. 1983).

> In fact, it was to empower federal courts to prevent such unjust effects that Rule 26(c) of the Federal Rules of Civil Procedure was enacted.  Sexual harassment plaintiffs would appear to require particular protection from this sort of intimidation and discouragement if the statutory cause of action for such claims is to have meaning.  Without such protection from the courts, employees whose intimate lives are unjustifiably and offensively intruded upon in the workplace might face the "Catch-22" of invoking their statutory remedy only at the risk of enduring further intrusions into irrelevant details of their personal lives in discovery, and, presumably, in open court.

Id.  For the same reasons, set forth in the Priest decision, this Court should not countenance the corporate defendants' current attempt to probe into the intimate details of the Ms. Milillo's employment life after being driven from her employment with the defendants.

## IV.   CONCLUSION

For all the reasons set forth above, the Court should allow the plaintiff's motion for a protective order pursuant to Fed.R.Civ.P. 26(c) in which she seeks an order quashing the deposition subpoenas served by the corporate defendants upon her subsequent employers, or limiting disclosures at any such deposition to

6

information related to the financial compensation and other employee benefits provided to Ms. Milillo during the course of her employment.

                                  Respectfully submitted,

                                  PLAINTIFF
                                  By her Attorney,

Dated: October 31, 2005

                                  /s/ Suzanne Garrow
                                Suzanne Garrow
                                BBO # 636548
                                Heisler, Feldman, & McCormick, P.C.
                                1145 Main Street, Suite 508
                                Springfield, MA 01103
                                (413) 788-7988

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the foregoing was served upon the attorney of record for each other party by electronic mail on this date.

                                /s/ Suzanne Garrow
                                Suzanne Garrow