IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATIE MILLIO, IRENE JOHNSON, JANINE HELLER and TOMAYITA STEVENSON,<br><br>*Plaintiffs,*<br><br>vs.<br><br>WHITMAN EDUCATION GROUP, INC., CAREER EDUCATION CORPORATION, ULTRASOUND DIAGNOSTIC SCHOOL and LOUIS GIANELLI,<br><br>*Defendants.* | CASE NUMBER: 04-30130-MAP |

**DEFENDANTS WHITMAN EDUCATION GROUP, INC.,
CAREER EDUCATION CORPORATION, and ULTRASOUND
DIAGNOSTIC SCHOOL'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendants Whitman Education Group, Inc. ("Whitman"), Career Education Corporation ("CEC") and Ultrasound Diagnostic School ("UDS") (hereinafter collectively "Corporate Defendants"), by and through the undersigned counsel, hereby submit this Opposition to Plaintiffs' Motion to Compel discovery and Memo in support thereof [dkt #s 40, 41].[1]

**I.    DISCOVERY STANDARD**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…." In a discrimination action, this means that the discovery sought "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged

---

[1]   Plaintiffs all are former employees of UDS (currently named Sanford Brown Institute - Springfield), which was owned by Whitman Education Group, Inc. In July 2003, CEC purchased Whitman Education Group, Inc.

discriminatory conduct and the individuals who are allegedly involved in the conduct." <u>Hylton v. United Jersey Bank</u>, No. Civ. A. 83-3617, 1985 WL 5973, *2 (D.N.J. April 25, 1985).

In <u>Hardrick v. Legal Services, Corp.</u>, 96 F.R.D. 617 (D.D.C. 1983), the court succinctly set forth the appropriate standard for discovery in employment discrimination case:

> While Rule 26 permits discovery not only of matters which may relevant and admissible at trial, but also of matters which may lead to admissible evidence, and courts in the past have stated that the rules should be broadly and liberally construed, more recently **courts have become concerned about "fishing expeditions," discovery abuse, and inordinate expense involved in over broad and far-ranging discovery requests.** Thus, discovery should be tailored to the issues involved in the particular case. This is so even in a case involving allegations of race discrimination, and while claims of disparate treatment of necessity, require discovery of how others have been treated, it should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct. Thus . . . discovery in Title VII cases involving highly individualized claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex or some other prohibited grounds of unlawful discrimination.

<u>Id.</u> at 618-20 (emphasis added).

Even where there is some possible relevance to the discovery sought, "Rule 26(c) confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of 26(b)." <u>Santiago v. Fenton</u>, 891 F.2d 373, 379 (1st Cir. 1989) (citation omitted). A court may limit discovery that is unreasonably cumulative, obtainable from some other source, where the party seeking discovery has had ample opportunity to obtain the information sought, or where the burden or expense of the proposed discovery outweighs the likely benefit. FED. R. CIV. P. 26(b)(2).

In their Motion to Compel, Plaintiffs enumerate specific interrogatories and document requests which remain at issue. Against a backdrop of the foregoing cases explicating the standard for discovery in employment discrimination cases, Corporate Defendants' position on each interrogatory and document request at issue in Plaintiffs' Motion is set forth <u>in seriatim</u>.

**II.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL INTERROGATORY RESPONSES.**

**Interrogatory No. 1** seeks the identity of the "person" answering the Interrogatories. In response, Corporate Defendants identified that on behalf of Defendants Whitman Education Group, Inc., Career Education Corporation and Ultrasounds Diagnostic School, the "person" answering the Interrogatories was Career Education Corporation. Whether or not Corporate Defendants are "persons," the inescapable fact is that they have the obligation under the Federal Rules to respond to the Interrogatories, and they did so respond. Their responses to the Interrogatories were properly verified by Brian Clancy, currently the President of UDS, who gathered information and verified all responses. Counsel's communications with any other individual employees at CEC for purposes of preparing the interrogatory responses are attorney-client and work-product privileged communications, and Plaintiffs cite no authority for invading such privilege. Of course, Corporate Defendants have complied with their Rule 26 obligations and have identified employees upon whom it intends to rely for its defense of this matter. No further disclosure is required.

In **Interrogatory No. 2**, Plaintiffs ask Corporate Defendants to identify each person who has any knowledge "relating to the facts or circumstances of the factual allegations made in the Complaint or in any pleading asserting a claim or defense in this action." This Interrogatory is patently over broad and seeks privileged information.

The "factual allegations" and "circumstances" in the Complaint include those which broadly relate to each Plaintiff's employment with UDS over a period of several years. Identification of every person with any knowledge of each Plaintiff's employment would require CEC counsel to interview and identify each and every employee of UDS or Whitman or CEC during any of the Plaintiffs' tenure. This would be unduly burdensome, requiring dozens of hours of interviews. Corporate Defendants' Disclosures and Supplemental Disclosures already have identified every individual with knowledge relating to Plaintiffs' claims in this lawsuit, and Corporate Defendants will continue to supplement their Disclosures, as required by the Federal Rules. No further disclosure is required.

In **Interrogatory No. 11**, Plaintiffs seek information relating to other discrimination claims by any other employees of Defendants Whitman, CEC and UDS over the past ten years. This request is vastly overbroad.

"[I]n the context of investigating an individual complaint [of employment discrimination] the most natural focus is upon the source of the complained of discrimination -- the employing unit or work unit. To move beyond that focus the plaintiff . . . must show a more particularized need and relevance." Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (upholding the district's court denial of plaintiff's motion to compel) (citations omitted); see also Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570 (11th Cir. 1992) ("The scope of discovery [in discrimination] cases is not without limits. The information sought must be relevant and not overly burdensome to the responding party. Discovery should be tailored to this issues involved in the particular case.") (citations omitted); Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 187 (1st Cir. 1989) (affirming order denying motion to compel answers to interrogatories which were overbroad); O'Neal v. Riceland

Foods, 684 F.2d 577, 581 (8th Cir. 1982) (district court properly ruled that the employer did not need to answer interrogatories dealing with hiring since termination – not hiring was the issue in the case).

In Mack, the First Circuit affirmed the district court's order denying the plaintiff's motion to compel answers to interrogatories that extended to a 4-year time period, job classification and geographic area (62 stores), because the information sought was beyond that which was relevant to the plaintiff's claim. Id. at 187. As the court stated:

> Parties have a correlative obligation to tailor interrogatories to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up.

Id.; see also Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) (noting parties should not be permitted discovery to conduct a "'fishing expedition,' with the 'hope' that it will obtain such information"); United States v. Mass. Ind. Fin. Agency, 162 F.R.D. 410, 414 (D. Mass. 1995) (Neiman, J.) (court held that request for seven years of information regarding treatment of comparator organizations was overbroad and narrowed discovery to two years).

Here, Plaintiffs argue that Interrogatory No. 11 may reveal complaints of discrimination against the same alleged harasser or the same supervisors as in the instant matter. (Memo. at 5). Unfortunately, their interrogatory seeks far broader information in a classic fishing expedition. Interrogatory No. 11 is not limited to complaints by employees at UDS in Springfield, the school at which Plaintiffs worked, but rather covers all of the employees at each of the corporate offices and all of the eighty-one (81) schools, both domestic and international, that are within the current CEC organization, and any schools in the country that were formerly owned by Whitman. It also encompasses claims regarding discrimination perpetrated by "agents" of Corporate Defendants –

which is a potentially limitless number of individuals over ten years – rather than claims involving the specific supervisor at UDS falsely accused of harassment in this suit. Additionally, Interrogatory No. 11 seeks to discover complaints of all forms of alleged discrimination, while this case relates exclusively to sexual harassment discrimination. Given the breadth of the geographic reach (world-wide), the temporal scope (10 years) and job classification (limitless), Interrogatory No. 11 is grossly overbroad and unduly burdensome. It further seeks irrelevant information and information not reasonably likely to lead to the discovery of admissible evidence. Accordingly, the Court should deny Plaintiffs' Motion on this score.

In **Interrogatory No. 13** Plaintiffs request the substance of <u>every</u> communication between <u>any employee</u> of Defendants Whitman Education Group, Inc., CEC and UDS and <u>anyone else</u> other than Plaintiffs during which anything ever having to do with any Plaintiffs' <u>employment</u> was mentioned. This Interrogatory is nothing short of absurd.

Discovery in a discrimination action "should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in the conduct." <u>Hylton</u>, 1985 WL 5973, *2. Here, Plaintiffs explain that Interrogatory No. 13 seeks details concerning whether the "fact that the plaintiffs had complained of sexual harassment was mentioned." (Memo. at 7). On this exact point, three out of the four Plaintiffs have been deposed and each of those Plaintiffs confirmed that they **never** complained about any alleged harassment to anyone. For this reason alone, Plaintiffs' purported justification for the information it seeks is completely illogical.

Moreover, Plaintiffs' Interrogatory No. 13 requests far broader information than discussions about Plaintiffs' non-existent complaints of sexual harassment. As noted above, CEC has 81 schools and thousands of employees. Requiring Corporate Defendants to investigate

any conversations any such employees may have had regarding anything having to do with Plaintiffs' employment – whether or not related to the claims in this litigation – is unduly burdensome, and in fact, unfeasible. Interrogatory No. 13 appears to be calculated solely to harass the Corporate Defendants and the Court should decline to reward Plaintiffs for their improper discovery tactics.

**Interrogatory Nos. 19 and 20** request information concerning complaints made by any employees of Defendants Whitman Education Group, Inc., CEC and UDS for sexual or gender harassment over the last 10 years. Corporate Defendants objected that these interrogatories were overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of information that is relevant to the claim or defense of any party or to the discovery of admissible evidence. As noted above, CEC has 81 schools internationally, and as such, information concerning any employee's complaint over the last 10 years in any one of these schools bears no relevance whatsoever to this case. As noted above, the Court should preclude discovery which is a mere "fishing expedition." See supra at 2; Ameristar Jet Charter, 244 F.3d at 193 (a party should not be permitted discovery to conduct a "'fishing expedition,' with the 'hope' that it will obtain such information"). Corporate Defendants agree that sexual harassment complaints about Mr. Giannelli – the sole alleged harasser in this lawsuit – would be subject to discovery. But, no such complaints exist. In fact, three of the four Plaintiffs who have been deposed so far in this litigation have acknowledged that they never complained about sexual harassment on the part of Giannelli or anyone else.

**Interrogatory No. 24** requests information concerning any investigation undertaken in response to any complaints of any Plaintiff concerning the behavior of Defendant Giannelli, the alleged failure to pay wages or overtime and the alleged falsification of student records. As an

initial matter, Corporate Defendants already represented to Plaintiffs that they conducted no investigation into any alleged failure to pay wages or overtime and already produced the investigation into alleged falsification of student records. Thus, while Plaintiffs' Motion did not appropriately narrow their concerns, the only investigation remaining at issue is Corporate Defendants' investigation of the written complaints of harassment made by plaintiffs Milillo and Johnson in the Fall of 2003.

This investigation of harassment, conducted pursuant to the instructions and at the direction of legal counsel, **after** Plaintiffs had threatened litigation, is protected by the attorney work-product privilege. In fact, Plaintiffs' Motion does not actually dispute that the investigation is privileged. Rather, Plaintiffs argue that <u>if</u> Corporate Defendants intend to rely on the adequacy of the investigation to establish an affirmative defense, then they must produce the investigation materials. As the case law cited by Plaintiffs' Motion makes clear, however, the investigation is privileged <u>unless and until</u> Corporate Defendants waive such privilege by relying on the investigation as a defense to liability. (Memo. at 9-11). At this juncture, Corporate Defendants do not intend to rely upon any privileged investigation into Plaintiffs' allegations of sexual harassment on the part of Giannelli in order to avoid liability through the affirmative defense. Rather, Corporate Defendants intend to prove that UDS exercised reasonable care to prevent harassment by maintaining an effective non-discrimination, non-harassment policy (as all Plaintiffs who have so far been deposed have confirmed) and that Plaintiffs unreasonably failed to utilize that policy to complain of sexual harassment (as all Plaintiffs who have so far

been deposed have confirmed). Thus, Corporate Defendants do not intend to rely on any investigation into Plaintiffs' allegations and the investigation remains privileged.[2]

Plaintiffs also meekly suggest that privileged documents may be discoverable where a party demonstrates a substantial need for the documents, but make no effort to show such a need for the investigation materials in this instance. Moreover, the cases cited by Plaintiffs for this proposition either involved a clear waiver of a privileged investigation, see Pray v. New York City Ballet, Civ. A. No. 97-CV-1034, 1997 WL 266980 (S.D.N.Y. 1997), or are completely inapposite, such as where the work-product privilege was waived by a claim of tortious conduct committed through the attorney's representation, see Madanes v. Madanes, 199 F.R.D. 135, 150 (S.D.N.Y. 2001). Because Plaintiffs cannot show a substantial need for the investigation documents where Corporate Defendants do not intend to rely upon them, the Court should not require Corporate Defendants to waive the rightful privilege associated with the harassment investigation.

---

[2] Corporate Defendants' Fourth Affirmative Defense did not refer to or indicate a reliance on any investigation in Plaintiffs' alleged harassment complaints or any response thereto, as it stated:

> Defendants have in place a strong policy against discrimination and harassment and otherwise exercised reasonable care to prevent and correct promptly any discrimination and harassment to which Plaintiffs claim they were subjected, and Plaintiffs unreasonably failed to take advantage of the preventive or corrective opportunities provided by Defendants to avoid harm otherwise, and Defendants have otherwise acted in good faith to prevent and/or remedy discriminatory or harassing conduct.

For this reason, Brownell v. Roadway Package Sys., 185 F.R.D. 19 (N.D.N.Y. 1999), cited by Plaintiffs, is distinguishable. In Brownell, the court held that the defendant waived the investigation's privilege where the defendant admitted it intended to rely on part of its investigation and where its affirmative defense stated that the defendant "fully and fairly investigated [her] allegations and took prompt and appropriate action consistent with the results of its investigation." Id. at 22 (alteration in original). Thus, the Brownell court determined that the defendant waived the privilege "by placing the reasonableness of its investigation in issue," id. at 21-22, which Corporate Defendants have not done in this case.

III. **THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS.**

In **Document Request Nos. 24-30**, Plaintiffs seek broad-ranging, voluminous and intrusive information concerning Corporate Defendant's financial net worth, allegedly for purposes of calculating punitive damages. This Court already held, as to Defendant Giannelli, that Plaintiffs only were entitled to the documents sought in Requests 27-30 at this stage of the proceedings. Accordingly, based on the "law of the case," the Court should at a minimum likewise preclude Plaintiffs from obtaining the discovery requested in Requests 24-26 from Corporate Defendants. "The law of the case doctrine precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided." Cohen v. Brown Univ., 101 F.3d 155, 167 (1st Cir. 1996).

Even if the Court were inclined to require disclosures of further financial information, Plaintiffs are not entitled to other financial information at this stage, since they need not prove Corporate Defendants' net worth to establish punitive damages. Rather, Corporate Defendants have the burden to put net worth information into evidence to reduce a punitive damages award, and accordingly, only must produce such information if they intend to introduce it. See Hormey v. Westfield Gage Co., 77 Fed. Appx. 24 (1st Cir. 2003); Saltzberg v. Med. Weight Loss Ctr., 797 N.E.2d 1224 (Mass. App. Ct. 2003). As such, Corporate Defendants will, consistent with their obligations under Rule 26, disclose any financial information upon which they intend to rely at trial.

Net worth financial discovery at this stage is also unwarranted given that there is zero evidence that Plaintiffs are entitled to punitive damages under Massachusetts law, which requires a showing of "outrageous" conduct. Dart v. Browning-Ferris Indus., 691 N.E.2d 526, 537-38 (Mass. 1998). While the First Circuit has not considered whether a plaintiff must establish a

prima facie case on the issue of punitive damages before discovery of financial information is permitted, many federal courts do not permit such discovery. E.g., John Does I-VI v. Yogi, 110 F.R.D. 629 (D.D.C. 1986); Chenoweth v. Schaaf, 98 F.R.D. 587, 589-90 (W.D. Pa. 1983) (holding that discovery is barred absent allegations in the complaint of facts demonstrating a "real possibility" that punitive damages will be at issue). Here, Plaintiff's Complaint fails to allege sufficient factual allegations, and the three Plaintiff depositions already taken did not reveal any "outrageous" conduct on the part of Corporate Defendants. It is dubious, to say the least, whether Plaintiffs even can state a claim of constructive discharge, let alone show conduct sufficient to sustain a punitive damages award. Accordingly, this Court should decline to permit such invasive and burdensome discovery at this stage of the litigation, and should defer any further disclosures until after trial.

     Furthermore, even if the Court required Corporate Defendants to produce other financial net worth information, it is difficult to see what information should be produced beyond that which is publicly available and therefore "obtainable from some other source that is more convenient, less burdensome [and] less expensive." FED. R. CIV. P. 26(b)(2); see Pedraza v. Holiday Housewares, Inc., 203 F.R.D. 40, 42 (D. Mass. 2001) (under M.G.L. c 151 B claim, holding that the plaintiff was not entitled to discovery of the defendant's tax return information where it was available from credit reporting agencies). CEC is a company publicly-traded on the NASDAQ for which vast financial information is publicly available and readily accessible to Plaintiffs on the Internet. For example, CEC's 2004 Annual Report, published on the Internet, includes information for the past five years on the company's revenue, net income, and diluted earnings. It also includes consolidated income statements for the last three years, which include information such as revenue, operating expenses, interest income and income tax provisions;

balance sheets for the last two years, which include information such as assets in property, receivables, goodwill and liabilities in terms of long-term debt, accounts payable, and income tax and other liabilities; and statements of cash flows for the last three years. This publicly available vast resource of CEC financial information goes beyond even that which is requested by Request 27 (net worth statement), Request 28 (appraisal of business property), Request 29 (2003-2004 bank account statements) and Request 30 (2002-2004 loan statements). The Court therefore should find that the requested information is "obtainable from some other source that is more convenient, less burdensome [and] less expensive," and deny Plaintiff's Motion on this basis alone. Fed. R. Civ. P. 26(b)(2).

**Document Request No. 36** requests documents reflecting investigations into any complaints of any plaintiff concerning the behavior of Mr. Giannelli, the alleged failure to pay overtime or other wages, and the alleged falsification of student records. As noted above, the documents concerning the sexual harassment investigation are privileged under the work-product doctrine. Moreover, no investigation of any complaint as to overtime or other wages exists, and the CEC's investigation into the alleged falsification of student records have already been produced.

Corporate Defendants objected to **Document Request No. 37** on the ground that it was incomprehensible, as it requests "all documents which detail or reflect the response of any defendant to the documents received by it concerning the investigation noted in the previous request." Even apart from the vagueness of the Request as drafted, any documents concerning the response to the investigation into sexual harassment allegations would be privileged from production by the attorney-work product privilege, as explained above. Such documents would

only be relevant, and therefore discoverable, if Corporate Defendants decided to rely on their response to the investigation, which Corporate Defendants have not done.

Finally, **Document Request No. 42**, requesting "all documents submitted by or on behalf of any student of the defendants seeking federal student loans or grants of any kind" is so absurdly overbroad and unduly burdensome that Plaintiffs' Motion concedes that the request must be narrowed.  Thus, Plaintiffs now request the records submitted for the students named in Milillo's September 15, 2003 letter and those identified in Michael Schafer's report of her grade change and admissions falsification allegations.  Plaintiffs claim these are required to show students' records were falsified.

Milillo's letter referenced one student, Carol Jacques, and Schafer's investigation report, which already has been produced, revealed two students who had been admitted without proper GED or diploma certification:  Nicholas DeJesus and Carol Jacques.  Thus, Shafer's report readily concedes that these two students' records were inaccurate, and no additional documents – particularly sensitive and confidential federal student loan or grant documents – are required to demonstrate this point.[3]  Thus, Plaintiffs' request serves no purpose and relief should be denied.

IV.  **CORPORATE DEFENDANTS HAVE FULFILLED THEIR DISCOVERY OBLIGATIONS WITH REGARD TO ELECTRONIC DISCOVERY.**

Had Plaintiffs conferred with Corporate Defendants as to electronic discovery – as they are required to do before filing a Motion to Compel – **and which they did not**, they would have learned that Corporate Defendants have appropriately exhausted their efforts to discover and produce electronic records, as required under the Federal Rules of Civil Procedure.

---

[3]  Moreover, DeJesus's problem was identified and he was dismissed from school before any funds were collected, and, accordingly there is no documentation concerning federal student loans or grants.

- 13 -

Plaintiffs request that Corporate Defendants "review the computer records of their employees, [and] conduct a forensic analysis of the computers of their employees at the Springfield location of U.D.S." (Memo. at 16). This request goes far beyond what the law requires. While email is generally subject to the same document disclosure requirements as paper discovery under the Federal Rules, courts will not order a forensic review absent some evidence that the defendant has withheld relevant information. Here, the fact that Plaintiffs produced a single email that Corporate Defendants did not produce does not raise an inference that Corporate Defendants' representations that they have retained and produced all relevant documents is somehow false. See Williams v. Mass. Mut. Life Ins. Co., 226 F.R.D. 144, 146 (D. Mass. 2005). Rather, as explained in Williams, to require such a review a plaintiff must present "credible evidence that Defendants are unwilling to produce computer-generated documents, whether now or in the future [citation omitted] or that Defendants have withheld relevant information." Id. Because the plaintiff in Williams could not demonstrate that the defendant's representations regarding its own search for electronic records was "misleading or substantively inaccurate," the court refused to appoint an expert in computer forensics to examine the defendant's computer system or to permit the plaintiff the conduct the forensic study at his own expense. Id.

Here, similarly, Plaintiffs lack any evidence that Corporate Defendants have withheld any computer-generated information. Based on the testimony of the three of four Plaintiffs already deposed, the only email of an alleged offensive nature that was sent by Giannelli to any Plaintiff already has been produced. Moreover, none of the individuals within the control of Corporate Defendants retained any hard copies of any other emails relevant to the claims or defenses in this litigation, and accordingly none have been produced.

As to electronic files, Corporate Defendants have diligently and extensively searched for electronic files, and concluded that they are unable to recover any of the emails exchanged between Defendant Giannelli and any Plaintiff. During October 2004, CEC copied all emails from Sanford Brown Institute – Springfield (the school formerly known as UDS – Springfield) that were stored on Whitman's server onto its own document retention computer system. (See Declaration of Mark Griesbaum dated November 17, 2005, ¶2, attached at Exhibit A). Whitman's server included only a current set of UDS's emails because when Whitman owned the UDS schools, emails were backed up every Thursday as a full backup, and incremental backups occurred Monday through Wednesday. These backup tapes were rotated (written over) every 3 weeks. (Id. ¶3). CEC does not have any backup tapes of UDS emails other than those copied onto the CEC system in October 2004. (Id. ¶4). Under the direction of CEC's Chief Information Officer Mark Griesbaum, CEC searched these emails for any emails between Defendant Giannelli and any Plaintiff and none were found. (Id. ¶¶1,5). Plaintiff has put forth no evidence or testimony that any other emails existed which have not been produced, and Corporate Defendants have more than fulfilled their electronic discovery requirements. Accordingly, Plaintiffs' request for a forensic analysis should be denied.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel Interrogatories and Production of Documents.

Dated:  November 17, 2005.

      /s/ **Jeffrey E. Poindexter**
Jeffrey E. Poindexter, Esq.
BULKLEY, RICHARDSON AND
GELINAS, LLP
Tel. (413) 272-6232
Fax. (413) 272-6803

Edward S. Mazurek, Esq.
*admitted pro hac vice*
Jamie M. Kohen, Esq.
*admitted pro hac vice*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. (215) 963-5019/5472
Fax. (215) 963-5001

Attorneys for CEC

#313634