# Exhibit A

```
                                    Volume:    I
                                    Pages:     1 to 210
                                    Exhibits:  1 to 21


            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS

                                    Case No. 04-30130-MAP
* * * * * * * * * * * * * * *
KATIE MILLIO, IRENE JOHNSON,
JANINE HELLER and TOMAYITA
STEVENSON,
                    Plaintiffs,

     vs.

WHITMAN EDUCATION GROUP, INC.,
CAREER EDUCATION CORPORATION,
ULTRASOUND DIAGNOSTIC SCHOOL
and LOUIS GIANNELLI,
                    Defendants.
* * * * * * * * * * * * * * *




          DEPOSITION OF JANINE A. HELLER, a
witness called on behalf of Whitman Education Group,
Inc., Career Education Corporation, and Ultrasound
Diagnostic School, taken pursuant to the applicable
provisions of the Federal Rules of Civil Procedure
before Cynthia A. Powers, Shorthand Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the law offices of Todd & Weld,
LLP, 28 State Street, Boston, Massachusetts, on
Thursday, October 13, 2005, commencing at 10:15 a.m.


                   * * * * *


              KACZYNSKI REPORTING
         72 Chandler Street, Suite 3
         Boston, Massachusetts 02116
                (617) 426-6060
```

KACZYNSKI REPORTING

2

1  APPEARANCES:

2      HEISLER, FELDMAN & McCORMICK
       Suzanne Garrow, Esquire
3      1145 Main Street, Suite 508
       Springfield, Massachusetts 01103
4      (413) 788-7988
       Representing Katie Millio, Irene Johnson,
5      Janine Heller and Tomayita Stevenson

6      MORGAN LEWIS & BOCKIUS LLP
       Edward S. Mazurek, Esquire
7      1701 Market Street
       Philadelphia, Pennsylvania 19103-2921
8      (215) 963-5000
       Representing Whitman Education Group, Inc.,
9      Career Education Corporation, and Ultrasound
       Diagnostic School
10
       TODD & WELD, LLP
11     Christopher R. O'Hara, Esquire
       28 State Street
12     Boston, Massachusetts 02109
       (617) 720-2626
13     Representing Louis Giannelli

14  ALSO PRESENT

15      Brian Clancy

16

17

18

19

20

21

22

23

24

119

1      A.   Yes.

2      Q.   With respect to policies and regulations of Whitman Education Group and UDS, was there a policy against the use of illegal drugs and controlled substances --

6      A.   Yes.

7      Q.   -- on school premises?

8      A.   Yes.

9      Q.   Were you ever aware of any employees using cocaine at UDS?

11     A.   Yes.

12     Q.   Who caused cocaine at UDS?

13     MS. GARROW: I'm going to object and instruct her not to answer.

15     MR. MAZUREK: On what possible basis?

16     MS. GARROW: On the basis that --

17     MR. O'HARA: Fifth amendment grounds?

18     MS. GARROW: Well, no. First of all, are you asking people who used it on campus? This is to the extent you want to ask about individuals, you can do that, but to the extent you want to go anywhere beyond that, like asking Ms. Heller with regard to what she's doing, you can only ask her with regard to felonies or with regard to misdemeanors.

120

1  This is not a case about her misconduct.
2          MR. MAZUREK: Let's get the judge on
3  the phone right now to see if we can resolve this
4  issue. I am clearly entitled to explore this area
5  for discovery purposes. If you want to have some
6  kind of confidentiality agreement, I'd be happy to
7  consider that. I'm entitled to find out about
8  Ms. Heller's own conduct and other employees who may
9  be witnesses or may be potential witnesses in this
10 case and what they're doing.
11         MR. O'HARA: If I may, I have not
12 heard a single word of privilege come from your mouth
13 and objection and instruction not to answer. Just so
14 we're crystal clear here, that's the only basis you
15 have a right to instruct a witness not to answer a
16 question. There's no privilege being asserted. We
17 have a right to the answer. So be clear that if we
18 go to the judge I have not heard a single assertion
19 of any privilege of any kind and so absent that I
20 think we're clearly entitled to the answer.
21         MS. GARROW: I understand that you
22 think you're entitled. Ms. Heller will testify with
23 regard to general questions regarding other
24 individuals. Ms. Heller will not testify with regard

121

1  to anything relating to herself on the grounds that
2  you are simply entitled -- this is not a case about
3  misconduct and you're simply entitled to five years
4  of misdemeanor, ten years of felony. You're not
5  entitled to general questions regarding her bad --
6  I'm going to instruct her not to answer. I'm happy
7  to get the judge on the phone if that's what you want
8  to do. I am going to instruct her not to answer with
9  regard to herself.
10         MR. MAZUREK: Let me ask you about
11  others.
12         MR. O'HARA: I take exception to that
13  instruction. I think it's grossly inappropriate. I
14  think it's violating the rules of discovery. I think
15  it's delaying the deposition. I've heard nothing
16  from you that indicates that there's any privilege.
17  It is directly relevant to not only credibility, to
18  her bias, to a whole host of issues that are live in
19  this case, whether you agree they are or not.
20         MR. MAZUREK: I would note for the
21  record that I join with Mr. O'Hara's exception.
22         Q.   Ms. Heller, were you aware of any
23  employees other than yourself at UDS using cocaine?
24         MS. GARROW: Are you asking generally?

                                                          122

1          MR. MAZUREK:  Yes.

2          MS. GARROW:  Are you asking on campus?

3          MR. MAZUREK:  Generally.

4          MS. GARROW:  Generally has nothing to
5    do again with this case.  Because you asked about the
6    code of conduct, and the code of conduct specifically
7    speaks to those doing drugs on the premises.

8          MR. MAZUREK:  I'm asking her a
9    different question now.

10         Q.   Ms. Heller, are you aware of any UDS
11   employees who use cocaine, I think you answered yes,
12   and I want to know who?

13         MS. GARROW:  I want to take a break to
14   confer with my client.

15         MR. MAZUREK:  I'm going to strongly
16   object to that.  It is inappropriate and I would not
17   agree with that.

18         MS. GARROW:  I'm a lawyer.  I'm
19   allowed to talk to my client.

20         MR. O'HARA:  Your client has not asked
21   to take a break.

22         THE WITNESS:  I would like to take a
23   break.

24         MR. O'HARA:  Also no assertion of

123

1   privilege here, and I think it's inappropriate that
2   there is a conference in the middle of a pending
3   question.  This is an inappropriate assertion.
4          MR. MAZUREK:  Absolutely
5   inappropriate.  I want the record to reflect that it
6   subjects the witness's testimony to high level of --
7   it undermines the integrity of any testimony to the
8   extent she purports to discuss with her attorney what
9   her answer ought to be while a question at a
10  deposition is pending.
11         MS. GARROW:  My client has taken an
12  oath to tell truth.
13         MR. O'HARA:  I think we're entitled to
14  have the answer first and you can go clarify like you
15  have during lunch, during one of the breaks.  I'd
16  like to hear the answer to the question.
17      A.   Can you repeat it one more time, I'm
18  sorry, just so I'm --
19      Q.   Yes, who at UDS used cocaine?
20         MS. GARROW:  I'm going to object to
21  the general question again and instruct you not to
22  answer.
23         MR. MAZUREK:  That's a different
24  question.  Now you are instructing this witness not

124

1   to answer without any basis of privilege?
2               MS. GARROW:  I would like to have a
3   conference with my client and then perhaps we can
4   short circuit a lot of this.
5        Q.   Who at UDS, which employee of UDS used
6   cocaine on UDS's premises?
7               MS. GARROW:  I'm going to object to
8   that as well.
9        A.   I would like to take a break and
10  conference.  I'm not comfortable right now.
11       Q.   Why aren't you comfortable?
12              MS. GARROW:  Because she's asked to
13  talk to her lawyer.
14       A.   I would like to talk to my lawyer.
15       Q.   Do you know the answer to the
16  question?
17       A.   I would like to talk to my lawyer.
18       Q.   Before you do that, do you know the
19  answer to the question even though you're not telling
20  me what the answer is at this point?
21       A.   I would like to talk to my lawyer.
22              MR. MAZUREK:  All right.  Record has
23  been established, the witness is refusing to answer
24  the question until she talks to her lawyer, so...

125

1    MR. O'HARA:  Are you instructing the
2  witness not to answer the question?  Is that your
3  instruction presently?
4    MS. GARROW:  My instruction is
5  presently not to answer.
6    MR. O'HARA:  You're instructing her on
7  the basis of what?
8    MS. GARROW:  On the basis that --
9    MR. O'HARA:  Is there any privilege
10  that you're using?
11    MS. GARROW:  I believe that this is
12  beyond the scope of discovery; that there is no basis
13  for this question; that he is only entitled to ask
14  her with regard to felonies or misdemeanors; felonies
15  for ten, misdemeanors for five; and that is not what
16  is pending.
17    MR. O'HARA:  You're citing to a rule
18  of admissibility.  We're in discovery, and we're
19  entitled to explore conduct that is highly germane to
20  the allegations at issue here and the veracity and
21  truthfulness of the allegations being lodged in this
22  complaint.  I can't possibly imagine that there's a
23  basis upon which you could assert a proper
24  instruction not to answer factual information that

1  pertains to this campus and witnesses that are
2  testifying in this case.
3          MS. GARROW:  We haven't established
4  that yet.
5          MR. O'HARA:  You haven't let us get an
6  answer.
7          MS. GARROW:  I understand what your
8  position is, Mr. O'Hara.  I just at this point do not
9  believe that this is appropriate for discovery at
10 this time and so I'm going to object and instruct her
11 not to answer at this time.
12         MR. MAZUREK:  Okay, well, let's take
13 your break.
14         MR. O'HARA:  We take exception.
15         MR. MAZUREK:  And subject to our
16 objections and exceptions to your course of conduct
17 at this deposition, you can confer so that we can
18 resume the deposition then.
19         MS. GARROW:  Thank you.
20         (Counsel conferred with witness)
21         MR. MAZUREK:  Is the witness now
22 prepared to answer my questions?
23         MS. GARROW:  Yes.
24         MR. MAZUREK:  All right.

127

1   Q.   Ms. Heller, who at UDS used cocaine?
2       MS. GARROW:   Ms. Heller is going to
3   take the fifth amendment privilege here to the extent
4   that it might implicate her.
5   Q.   Other than yourself, who at UDS used
6   cocaine?
7       MS. GARROW:   She's going to take the
8   fifth here as well to the extent there may be any
9   implication relating to her.
10      MR. MAZUREK:   Obviously the invocation
11  of the fifth amendment is against self-incrimination.
12  My question is directed toward the use of cocaine of
13  individuals at UDS other than Ms. Heller just to be
14  clear.
15  Q.   Subject to that clarification,
16  Ms. Heller, who other than yourself used cocaine at
17  UDS?
18      MS. GARROW:   To the extent that
19  there's any implication, Ms. Heller is going to take
20  the fifth amendment with respect to that question as
21  well.
22      MR. O'HARA:   Ms. Heller is going to
23  take or she's asserting?
24      MS. GARROW:   She's asserting.

MR. O'HARA: Are you asserting the fifth amendment privilege?

THE WITNESS: Yes.

MS. GARROW: Let me just say, you know, obviously you can do what you're going to do, and to the extent there is some protection proffered at some point or we can come to some agreement with the court, we would be potentially willing to change that assertion, but currently that is her assertion.

Q. Is Katie Millio one of the individuals who used cocaine at UDS?

MS. GARROW: Ms. Heller is going to assert the privilege to the extent there may might be any implication which relates to her.

MR. MAZUREK: She's asserting what privilege?

MS. GARROW: The fifth amendment privilege to the extent that anything implicates her and her involvement.

MR. MAZUREK: I'm not asking her about her or her involvement. I'm asking whether Katie Millio used cocaine at UDS.

MS. GARROW: She's going to assert the privilege; is that correct?

1          THE WITNESS: Yes.
2          MR. MAZUREK: The privilege against
3  self-incrimination?
4          MS. GARROW: To the extent there's any
5  further implication that relates to her, yes. You
6  can ask all your questions, she's going to do the
7  same with regard to questions in this capacity, but
8  you can keep trying different ones, and there may be
9  some that are on the outer limits that she's willing
10 to answer.
11         Q.    Is Irene Johnson one of the
12 individuals who used cocaine at UDS?
13         MS. GARROW: She's going to assert the
14 privilege to the extent that it may implicate her.
15         MR. MAZUREK: The privilege being?
16         MS. GARROW: The fifth amendment
17 privilege. These are all fifth amendment privileges.
18 I can say it each time if you'd like.
19         Q.    Is Tomayita Stevenson one of the
20 individuals who used cocaine at UDS?
21         MS. GARROW: Ms. Heller is going to
22 assert the fifth amendment privilege to the extent
23 there's any implication that might relate to her.
24         MR. MAZUREK: And therefore you're

130

1    instructing her not to answer that question?
2            MS. GARROW:  Yes.
3        Q.    Is Mary Biscaldi one of the
4    individuals at UDS who used cocaine?
5            MS. GARROW:  Fifth amendment
6    assertion, I'm instructing her not to answer, same
7    basis.
8            MR. MAZUREK:  Are you instructing her
9    not to answer any questions with respect to anyone at
10   UDS who used cocaine?
11           MS. GARROW:  Yes, to the extent that
12   there may be some implication that might relate to
13   her and the fifth amendment privilege, yes, and I
14   will instruct her not to answer those questions at
15   this time.
16           MR. MAZUREK:  My question of you,
17   counsel, then is I don't see, it's not apparent in
18   any way, shape, or form how my questions as they
19   relate to other employees would have any implications
20   to Ms. Heller and thereby give rise to even an
21   arguable basis for the assertion of privilege under
22   the fifth amendment's guard against
23   self-incrimination.  So can you state something on
24   the record in that regard if you're basing it on some

1  type of implication. That's what I'm very
2  uncomfortable and uncertain about to the extent
3  you're asserting this highly important privilege on
4  this very important matter in this litigation.
5           MS. GARROW: The basis of the
6  assertion of privilege here is to the extent that any
7  of -- and obviously I'm not saying that this is so,
8  but to the extent that any of these individuals might
9  have information that might lead to some sort of
10 self-incrimination, I would instruct Ms. Heller not
11 to answer, to her incrimination, I would instruct her
12 not to answer those questions in any regard because
13 of the potential for violation of her fifth amendment
14 rights.
15          MR. MAZUREK: Let me ask this
16 question.
17          MS. GARROW: Again as I said before,
18 to the extent the court has a different view or to
19 the extent we can get some protection at some point,
20 then the assertion may change.
21          MR. O'HARA: You've said that once
22 before. We have the witness here and now. This
23 isn't a privilege that can be shifted like the wind
24 to cut off discovery now and then only to be at your

132

1   whim waived at some future point.  We have the
2   witness here now.  If there is an assertion of fifth
3   amendment privileges, you're making it now and
4   preventing us from getting discovery in this case
5   now.  We will take exception to that and press the
6   issue at the appropriate place.
7          That said, it streaks me that the
8   invocation of the fifth amendment privilege here in
9   this civil suit has certain admissible evidentiary
10  overtones to it, so that the fact that she's invoking
11  her privilege here and now to the use of cocaine and
12  others will surely have some impact.
13         MS. GARROW:  I understand that.  At
14  this point I'm not comfortable instructing her to go
15  forward and answer.  Otherwise I would do so.  That's
16  where we are at this point.  And I understand what
17  you're saying and I understand your objection.  I
18  believe I've made ours as clear as I can on the
19  record, and that's where we are.
20         MR. MAZUREK:  All right.  Let me just
21  ask this question then for the record.
22         Q.    Ms. Heller, would you please identify
23  those individuals at UDS who used cocaine?
24         MS. GARROW:  Ms. Heller is going to

133

1  assert the privilege we have been discussing for the
2  record and once again we would make.
3          MR. MAZUREK:  And you're instructing
4  her not to answer on that basis.
5          MS. GARROW:  I'm instructing her not
6  to answer on this basis and we would perhaps, she
7  will perhaps waive that assertion at some other time,
8  but she is not at this time.
9       Q.   Okay.  Ms. Heller, which UDS employees
10 used cocaine on school premises?
11         MS. GARROW:  Same assertion, same
12 privilege and same reservation of rights, same
13 instruction not to answer.
14         MR. O'HARA:  And you're going to
15 follow that instruction?
16      A.   Yes.
17      Q.   Ms. Heller, which employees of UDS
18 used illegal drugs other than cocaine?
19         MS. GARROW:  Same objection, same
20 privilege, same instruction not to answer.
21      Q.   Which --
22         MS. GARROW:  I'm sorry, is that on UDS
23 premises?
24      Q.   That's my next question.  Which

134

1  employees of UDS used illegal drugs other than
2  cocaine on UDS premises?
3              MS. GARROW:  Same assertion of fifth
4  amendment and instruction not to answer.
5         Q.    Were you aware of other employees who
6  used illegal drugs other than cocaine?
7              MS. GARROW:  Same assertion and same
8  instruction not to answer.
9         Q.    Were you aware of other employees of
10 UDS who used illegal drugs on UDS's premises other
11 than cocaine?
12             MS. GARROW:  Same assertion, same
13 instruction not to answer.
14        Q.    Were you aware of any UDS employees
15 who used alcohol on UDS premises?
16        A.    No.
17        Q.    Did you ever use alcohol, drink
18 alcohol on UDS premises while you were employed
19 there?
20        A.    No.
21        Q.    Was there a time when you were
22 employed at UDS that you were under investigation for
23 improper conduct?
24        A.    No.